**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

MARK JOHNSON, on behalf of himself and all
others similarly situated,

                                        Plaintiff,

                v.                                          Civil Action No. 05-11058-MLW

MORTON'S RESTAURANT GROUP, INC.,
AND MORTON'S OF CHICAGO, INC.,

                                        Defendants.

---

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION TO FACILITATE § 216(b) NOTICE

Defendants Morton's Restaurant Group, Inc. and Morton's of Chicago/Boston,
Inc. (incorrectly identified as Morton's of Chicago Inc.) (collectively "Defendants" or
"Morton's"), submit this Opposition to Plaintiff's Motion to Facilitate § 216(b) Notice (the
"Motion to Facilitate").

## PRELIMINARY STATEMENT

On May 20, 2005, Plaintiff, a former server of a Morton's restaurant located in
Boston, Massachusetts, filed a Complaint alleging Defendants violated the Fair Labor Standards
Act, 29 U.S.C. § 201 et seq. ("FLSA") by (1) requiring Plaintiff to share tips with management,
who he claims are "employers" under the FLSA; and (2) improperly taking "tip credits" against
the minimum wage. (Amended Complaint, ¶ 4.)[1] Plaintiff alleges that both practices exist
nationwide (Id., at ¶ 1), and seeks to represent all waitstaff employees of Morton's throughout
the United States. (Id.)

In his Motion to Facilitate, Plaintiff requests (1) an order directing Defendants to
provide Plaintiff's counsel with a list of names and contact information for current and former

---

[1]    Plaintiff filed an Amended Complaint on June 2, 2005.

waitstaff for whom Defendants claimed a "tip credit" against the minimum wage in any state within the last three years immediately preceding the filing of the Complaint ("potential plaintiffs"); and (2) an order authorizing the issuance of a Court-approved notice to potential plaintiffs in the form annexed to Plaintiff's Motion to Facilitate as Exhibit 5.

Defendants deny they violated the FLSA and oppose Plaintiff's Motion to Facilitate on several grounds. First, since Plaintiff signed an agreement to arbitrate, _inter_ _alia_, any and all claims arising out of his employment including claims brought under the FLSA, Defendants have filed a separate Motion to Compel Arbitration and to Stay Further Proceedings ("Motion to Compel"). Defendants respectfully submit that it is appropriate for this Court to defer the Motion to Facilitate until it has decided Defendants' Motion to Compel, as the relief Plaintiff seeks would be moot if the Court granted Defendants' Motion to Compel.

Second, to prevail on his Motion to Facilitate, Plaintiff must make a factual showing that he is similarly-situated to other potential plaintiffs because he worked in a restaurant which followed the same tip-sharing and tip-credit practices of other Morton's restaurants. In his Motion to Facilitate, however, Plaintiff fails to make the requisite showing because: (1) the evidence he relies upon, his own conclusory allegations without first-hand knowledge, is insufficient; and (2) he fails to link the facts and circumstances surrounding the Boston restaurant to any Morton's restaurant outside of Boston. Plaintiff has not alleged any facts based on personal knowledge about any Morton's restaurant other than Boston, and did not provide any affidavits from or names of potential plaintiffs to establish the practices in other Morton's restaurants.

Moreover, in January 2001 the Boston restaurant advised its servers that tipping managers was voluntary. (Hoffmann Dec., ¶3).[2] Beginning September 2004, Defendants prohibited servers from sharing tips with anyone except those classified as "servers, bussers and bartenders." (Hoffmann Dec., ¶4). Consequently, the practices in the Boston restaurant during the relevant time period (May 20, 2002 to the present) are inconsistent with Plaintiff's allegations of nationwide mandatory tip-sharing practices. Thus, Plaintiff has not shown and cannot show similar tip sharing practices between waitstaff at the Boston restaurant and waitstaff outside of Boston. Therefore, § 216(b) notice is inappropriate.

Finally, Defendants respectfully submit that sanctions be awarded against Plaintiff for his failure to comply with Local Rule 7.1(a)(2), which requires the party filing a motion to confer with counsel prior to filing the motion.

## FACTUAL BACKGROUND

### A.    The Boston Restaurant's Relevant Practices.

Plaintiff alleges that Defendants operate restaurants throughout the United States. (Amended Complaint, ¶ 4.) During the relevant time period, Defendants operated only one restaurant in the Commonwealth of Massachusetts located in Boston. (Hoffmann Dec., ¶2.)[3] In January 2001, the Boston restaurant advised employees that tipping managers was voluntary. (Hoffmann Dec., ¶3.) Beginning in September 2004, the Boston restaurant prohibited waiters from sharing tips, even voluntarily, with employees other than those classified as "servers, bussers and bartenders." (Hoffmann Dec., ¶ 4.)

---

[2]    Paragraphs to the Declaration of Janet Hoffmann submitted herewith in opposition to Plaintiff's Motion to Facilitate ("Hoffmann Dec.) are cited herein as "Hoffmann Dec., ¶ ____."

[3]    The relevant time period connotes three years prior to the date Plaintiff filed his Complaint, i.e., May 20, 2002. While Defendants deny any violation of the FLSA, the longest period of time for the court to consider is a three-year statute of limitations, even assuming for purposes of Plaintiff's Motion a willful violation. See 29 U.S.C. § 255.

**B.** **Plaintiff's Employment With The Boston Restaurant.**

From in or about May 1998 to July 2002, Plaintiff was employed as a server at Morton's Boston restaurant. (Amended Complaint, ¶2.) As a condition of employment, Plaintiff voluntarily agreed to arbitrate all claims arising out of his employment with Morton's, including but not limited to claims arising under the FLSA. This agreement is evidenced by the Receipt for Mandatory Arbitration Procedure for Resolving Disputes Arising Out of the Employee's Employment or Termination of Employment ("Arbitration Procedure") signed by Plaintiff. (Hoffmann Dec., ¶5, Ex. A). The Arbitration Procedure in pertinent part provides that:

> "any dispute, claim or controversy … arising out of Employee's employment or the cessation of such employment with Morton's of Chicago/Boston, Inc. ("Morton's") … shall be submitted to final and binding arbitration. Such claims include … the Fair Labor Standards Act, as amended …"

Id. at ¶ 6). (A copy of the Arbitration Procedure is attached to the Hoffmann Dec. as Ex. B.)

**C.** **Arbitration Proceeding before the American Arbitration Association.**

In his Motion to Facilitate Plaintiff attaches arbitration testimony from various individuals. Counsel for Plaintiff represents a former server of the Morton's Boston restaurant in a proceeding filed with the American Arbitration Association, entitled David Bilbilian v. Morton's of Chicago/Boston, Inc., AAA Case No.: 11 160 00217 03 (hereinafter the "Arbitration"), before Arbitrator Mark Irving. In his Demand for Arbitration, Complainant alleges that he was terminated in retaliation for complaining about the tip-out policy in the Boston restaurant, in violation of G.L. c. 149, § 152A. The Arbitration proceeding relates only to Mr. Bilbilian and Morton's Boston restaurant. (Hoffmann Dec., ¶¶7-9).

**D.** **Procedural Background.**

On May 20, 2005, Plaintiff filed his Complaint with this Court, alleging Defendant Morton's Restaurant Group, Inc. violated the FLSA, and a Motion to Facilitate.

Plaintiff's counsel provided Defendants' counsel with a courtesy copy of both the Complaint and the Motion to Facilitate.  However, prior to filing the Motion to Facilitate, Plaintiff did not confer with Defendants pursuant to Local Rule 7.1(A)(2)  (Kerman Dec., ¶3), Nor has Plaintiff filed a certificate confirming compliance with Local Rule 7.1(A)(2).  (Id., at ¶4).[4]  On June 2, 2005, Plaintiff filed a First Amended Complaint ("Amended Complaint"), naming Morton's of Chicago, Inc. as a Defendant.

## ARGUMENT

## POINT I

## DEFENDANTS' MOTION TO COMPEL MAY RENDER PLAINTIFF'S MOTION TO FACILITATE MOOT.

Simultaneously with the filing of their Opposition to Plaintiff's Motion, Defendants have filed their Motion to Compel.  The basis for the Motion to Compel is that Plaintiff executed a lawful agreement to arbitrate claims arising out of his employment with Morton's, including the claims he asserts in the instant Amended Complaint.  Consequently, Defendants request in that motion that proceedings in this matter be stayed and this case be referred to arbitration under the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.

If Defendants' Motion to Compel is granted, as Defendants believe it should be, Plaintiff's Motion to Facilitate would not be properly before this Court and § 216(b) notice would be inappropriate.  As such, Plaintiff's Motion to Facilitate should be deferred until Defendants' Motion to Compel is resolved.

---

[4]     Paragraphs to the Declaration of David J. Kerman, submitted herewith in opposition to Plaintiff's Motion to Facilitate ("Kerman Dec.") are cited herein as "Kerman Dec. ¶__."

## POINT II

## EVEN IF THE COURT CONSIDERS PLAINTIFF'S MOTION TO FACILITATE, § 216(b) NOTICE IS NOT WARRANTED.

### A.    Plaintiff Has Not Demonstrated That Potential Class Members Are "Similarly Situated."

In "appropriate circumstances" district courts have discretion to authorize a plaintiff to send notice to potential class members. Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335 (2nd Cir. 1978); Hoffman v. Sbarro, Inc., 982 F. Supp 249, 261 (S.D.N.Y. 1997). See also Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed. 2d 480 (1989) (in "appropriate cases" district courts have discretion). The court has a "responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266-267 (D. Minn. 1991); Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d. 941, 944 (W.D. Ark. 2003).

To determine whether "appropriate circumstances" exist, the threshold issue, according to Section 216(b) of the FLSA, is whether the named plaintiffs have demonstrated that potential class members are "similarly situated." See 29 U.S.C. § 216(b); Hoffman, 982 F. Supp. at 261.[5] Neither the FLSA nor the Department of Labor regulations define the phrase "similarly situated." In general, however, courts have required plaintiffs to make a showing sufficient to demonstrate that there is a "factual nexus between the [named plaintiffs] situation and the situation of other current and former [employees]." Hoffman, 982 F. Supp. at 262; Richards v. Computer Sciences Corp., No. 3:03 CV 630(DJS), 2004 U.S. Dist. Lexis 19638, * 8, n.3 (D.

---

[5]    "The requirement that proposed class members be 'similarly situated' to the named plaintiffs ensures that the collective action promotes the 'efficient resolution of common issues of law and fact arising from the same alleged discriminatory activity.'" Hunter v. Sprint Corp., 346 F. Supp.2d 113, 119 (D.D.C., 2004) (citing Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989)); Mike v. Safeco Ins. Co. of America, 274 F. Supp.2d 216, 220 (D.Conn. 2003) ("the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case").

Conn. September 28, 2004) (plaintiff bears the burden of establishing that he is "similarly situated" with the class he wishes to represent). [6]

In FLSA collective actions where plaintiffs allege an unlawful common practice, they must demonstrate that they were subject to single decision, policy or plan. Sperling, 118 F.R.D. at 403-406; Hoffman, 982 F.Supp. at 261.  For instance, in Basco v. Wal-Mart Stores, Inc., Civil Action No. 00-3184 Section "K" (4), 2004 U.S. Dist. LEXIS 12441 (E.D. La. 2004), plaintiffs alleged that the employer (1) required employees to work off the clock; (2) locked employees in the building and had them to wait for management to let them out; and (3) required employees to work through meal and rest breaks.  Plaintiffs filed a motion to pursue their rights through a collective action.  They alleged the unlawful practices applied to all of the company's employees in Louisiana. Id., at * 17.  The court denied the requested notice because it found the alleged practices were not homogeneous; plaintiffs did not demonstrate the policies were evenly enforced or systematically implemented. Id., at * 22.  See also Baum v. Shoney's Inc., Case No. 98-423-CV-ORL-198, 1998 U.S. Dist. LEXIS 21484 (M.D. Fla. 1998) (denial of notice for potential plaintiffs in eleven states at 175 restaurants whose only evidence is plaintiffs' (who worked in Orange County, Florida) own affidavits that make general statements about employees outside Orange County; Torres v. CSK Auto, Inc., Civil No. EP-03-CA-113(KC), 2003 U.S. Dist. Lexis 25092, at *10-11 (W.D. Tex. 2003) (court limited collective action notice to employees in El Paso, despite plaintiff's request for multi-state notice, because affidavits of plaintiffs only attested to practice in El Paso operations); Flores v. Lifeway Foods, Inc., 289 F. Supp. 2d 1042, 1046 (N.D. Ill. 2003) (court found "a demonstration of [the employer's] payment

---

[6] Copies of unreported decisions cited herein are attached as Exhibit "A."

practice concerning two out of fifty employees (four percent of defendant's workforce) does not rise to the level of a common policy or plan").[7]

"Courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified...; whether affidavits of potential plaintiffs were submitted ...; and whether evidence of a widespread discriminatory plan was submitted ..." Derrin Basco, et al. v. Wal-Mart Inc., Civil Action No. 00-3184 Section "K"(4), 2004 U.S. Dist. LEXIS 12441, *16 (E.D.La. July 2, 2004) (citing H&R Block v. Housden, 186 F.R.D. 399 (E.D. Tex. 1999)).

Unsupported assertions of widespread violations are not sufficient to meet the burden of showing Plaintiff is "similarly situated." Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983); Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d. at 945; H&R Block, Ltd. v. Houden, No. 1:97-CV-0646, 186 F.R.D. 399 (E.D. Tex. 1999). Reliance upon pleadings and affidavits that make no more than conclusory allegations is insufficient. See Torres, 2003 U.S. Dist. LEXIS 25092 ("to the extent the affidavits attest to facts for which the affiant lacks personal knowledge, they are not considered as supporting plaintiffs case for a national collective action or for expansive notice to potential plaintiffs"); Bernard v. Household Intern, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002) ("Mere allegations will not suffice"). See, e.g., Hall v. Burk, Civil No. 3:01-CV-2487-H, 2002 U.S. Dist. LEXIS 4163, at *8 (E.D. Tex. 2002) (dismissal of motion seeking class notice and limited discovery where plaintiff made unsupported assertions of widespread violations yet did not submit affidavits or names of any potential plaintiffs).

When plaintiffs fail to submit sufficient factual allegations to justify the extraordinary use of judicial power, courts have denied the request for notice. For example, in

---

[7] See also Reeves v. Alliant Techsystems, Inc., 77 F.Supp.2d 242 (D.R.I. 1999) (court granted the employer's motion to decertify certain members of the class because they worked in a different facility from the one covered by the alleged unlawful policy).

Bernard v. Household Intern, Inc., 231 F. Supp. 2d 433, 436 (E.D. Va. 2002), the court denied plaintiffs' motion to send a nationwide notice because the plaintiffs' affidavits were not based on facts, but upon unsupported beliefs lacking first-hand knowledge. The pleadings also did not contain specific allegations regarding practices in other locations or declarations from employees in locations other than the one where plaintiff worked. Id. Similarly, in Madrid v. Minolta Business Solutions, Inc., 02 CV 2294 (CBD), 2002 U.S. Dist. Lexis 18539 (S.D.N.Y. 2002) (modified on other grounds), the court denied plaintiffs' motion seeking approval of a nationwide notice because plaintiffs only submitted one affidavit from an employee who stated "it was her understanding that the same payroll practices were followed nationwide." Id., at * 8. Burns v. Village of Wauconda, No. 99 E 0800, 1999 U.S. Dist. Lexis 11230, * 8 (N.D. Ill. 1999) (denying motion to provide notice where plaintiff provided nothing more than broad unsupported allegations of widespread violations); Torres, 2003 U.S. Dist. LEXIS 25092, at *9.

B. **Plaintiff's Complaint and Affidavit Do Not Establish That He is Similarly Situated.**

In the instant case, the allegations in Plaintiff's Complaint, Amended Complaint and his affidavit do not warrant issuance of the requested nationwide notice. Plaintiff's Complaint, Amended Complaint and Affidavit contain nothing but vague assertions regarding Defendants' alleged nationwide tip-sharing and tip-credit practices. Such generalizations are not sufficient to warrant nationwide notice or the notice Plaintiff seeks. See Haynes.

As an example of Plaintiff's unsubstantiated and vague allegations, Paragraph 8 of the Amended Complaint states "Morton's employees have not been permitted to retain all of their tips." The Amended Complaint does not provide the name of, or reference a declaration from, a single employee in support of that contention. Paragraph 7 of Plaintiff's Affidavit, which appears to be the basis for this allegation, states "other servers expressed to me dissatisfaction

with the company's requirement that servers share their tips with managers among other employees. These servers have included servers outside of Massachusetts, including friends in California." Conspicuously absent is the name or declaration from any such servers. Moreover, although Plaintiff seeks authorization to issue nationwide notice, other than the state of California, Plaintiff fails to identify any other states where the alleged unlawful practices occur.

Similarly, Plaintiff's Affidavit is replete with speculative allegations, not based on any first-hand knowledge. For instance, Paragraph 3 states in part, "Throughout my employment with Morton's, I, like all servers, received a base pay at the 'service minimum wage,' which is less than the standard federal minimum wage …" Paragraph 4 states in part "Instead, under a formula devised by management, tipped employees, including myself, were expected to hand over to various other employees percentages of the tips we received from customers." Plaintiff, however, who did not work in any Morton's restaurant outside of Boston, provides no basis for his conclusions as to how other employees were treated, especially those outside of Boston, and provides no other support for his claims of a nationwide practice. To the extent Plaintiff makes these representations concerning employees other than himself – particularly those who did not work in the Boston restaurant – they are mere speculation. See Torres, supra. Significantly, Plaintiff failed to submit an affidavit or even provide the name of any other server in or outside of Boston as a potential plaintiff. See Hall, supra.

Plaintiff instead relies entirely upon testimony from a private arbitration proceeding brought by one former individual employee of the Boston restaurant.[8] The Complainant in that Arbitration worked at the Morton's in West Palm Beach from in or about

---

[8]    Plaintiff annexes to the Motion to Facilitate transcripts of testimony from the Arbitration, which involves a single litigant asserting a claim of retaliation for allegedly opposing the tip-out. That matter is a private proceeding between the Complainant and Morton's of Chicago/Boston, Inc. Plaintiff should be precluded from relying upon evidence adduced in that proceeding since it involves a different legal issue unrelated to Plaintiff or his claims herein.

August 1996 to September 1998 and in the Boston restaurant from September 1998 to November 2002. (Hoffmann Dec., ¶7). Even if the West Palm Beach Morton's had a similar practice to what Plaintiff alleges occurred at the Boston restaurant, the Complainant's employment in West Palm Beach was outside the applicable limitations period. Moreover, the Vice President of Human Resources, Janet Hoffmann, testified in that unrelated and private arbitration that the tip-out practices in several Morton's restaurants outside of Massachusetts differed from the Boston restaurant's practices. (Motion to Facilitate, Ex. 4, transcript pp. 815-816.) For example, Morton's restaurants in Minnesota, consistent with the relevant state statutes, do not allow for a tip-out. (Id., at 815-816). Significantly, Ms. Hoffmann excepted Boston out of any purported tip practice in the majority of the restaurants. (Id. at pp. 815-16).

*     *     *     *     *

The dearth of pleadings and of evidence in this matter is far less than that which courts typically find sufficient to warrant a notice. See, e.g., Hoffman v. Sbarro, Inc., 982 F.Supp. 249, 261 (S.D.N.Y. 1997) (notice found appropriate where plaintiff alleged employer had a unlawful company-wide cash control policy, and employer did not dispute it existed for all employees); Belcher v. Shoney's, Inc., 927 F.Supp. 249, 252 (M.D. Tenn. 1996) (notice found appropriate where plaintiff submitted affidavits from 24 employees in 9 different states, over 400 individuals filed consents to join action and who worked in 22 states and over 200 cities); Sperling v. Hoffmann-LaRoche, Inc., 118 F.R.D. 392, 403-406 (D.N.J. 1988) (notice found appropriate where plaintiffs submitted numerous affidavits (alleging age discrimination) and contended that up to 600 victims of age discrimination exist and about 200 are unknown), aff'd, 493 U.S. 165 (1989).

In the absence of substantial allegations and pleadings, Plaintiff's Motion to Facilitate is nothing but an attempt to launch a "fishing expedition." Plaintiff's conclusory

11

representations concerning the alleged tip-sharing and tip credit practices with no credible support based on actual knowledge are insufficient to conclude that questions common to the group ultimately would prevail in deciding the merits in this case.

**C.    The Tip-Sharing Practice Changed In Boston Over Time And Is Inconsistent With Plaintiff's Allegations.**

In his Complaint, Plaintiff makes no reference to the time period when the alleged unlawful tip-out and tip-credit practices occurred. Significantly, during the statute of limitations period the tip-sharing policy for Boston changed. At the arbitration hearing relied upon by Plaintiff, Ms. Hoffmann testified that tip-sharing at the Boston restaurant was voluntary during the limitations period. (Motion to Facilitate, Ex. 4, pp. 818). Further, commencing September 2004, the Boston restaurant prohibited all tip-sharing – even when voluntary – with employees who are not classified as "servers, bussers, and bartenders." (Hoffmann Dec., ¶ 4.) Plaintiff's omission concerning the relevant time period is significant for several reasons.

Claims based on practices that existed more than three years before the filing of the Complaint i.e., prior to May 20, 2002, are time-barred. Since no tip-sharing was required at the Boston restaurant after January 1, 2001, Plaintiff's claims of mandatory tip-sharing in Boston are outside the limitations period. Further, based upon the Boston restaurant's practice during the relevant time period of voluntary tip-sharing, Plaintiff cannot show that during the limitations period he was similarly situated to waitstaff at Mortons' restaurants who allegedly followed a nationwide practice of mandatory tip-sharing.

**D.    Sanctions Are Appropriate For Plaintiff's Failure To Confer.**

Local Rule 7.1(a)(2) provides that:

No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue.

Counsel's failure to comply with the Rule 7.1(a)(2) warrants sanctions.  See Converse, Inc. v. Reebok International Ltd., 328 F. Supp.2d 166 (D. Mass. 2004) (sanctions ordered in the amount of $15,000.00).   The fact that the party seeking sanctions did not suffer any prejudice is irrelevant. Id., at 170.

Here, Plaintiff failed to meet and confer with Defendants prior to filing the instant Motion to Facilitate.  Defendants need not make any additional showing for the Court to impose sanctions.   Accordingly, Defendants are entitled to sanctions for Plaintiff's failure to comply with Rule 7.1(a)(2).

**CONCLUSION**

For the foregoing reasons, Defendants submit that Plaintiff's Motion to Facilitate § 216(b) notice nationwide be denied, and that Defendants should be awarded sanctions for Plaintiff's failure to meet and confer prior to filing the instant Motion.

Respectfully submitted,

MORTON'S RESTAURANT GROUP, INC.
AND MORTON'S OF CHICAGO INC.

By their attorneys,

/s/ David J. Kerman
David J. Kerman (BBO #269370)
JACKSON LEWIS LLP
75 Park Plaza
Boston, Massachusetts 02116
(617) 367-0025; (617) 367-2155 (fax)

Elise M. Bloom, *pro hac vice pending*
Diane Windholz, *pro hac vice pending*
JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038-4502
Dated: June 20, 2005          (212) 545-4000

# **EXHIBIT A**

2004 U.S. Dist. LEXIS 12441

DERRIN BASCO, ET AL. VERSUS WAL-MART STORES INC., ET AL.

CIVIL ACTION NO. 00-3184 SECTION "K"(4)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA

2004 U.S. Dist. LEXIS 12441

July 1, 2004, Decided
July 2, 2004, Filed, Entered

**PRIOR HISTORY:** *Basco v. Wal-Mart Stores, Inc.,*
*2004 U.S. Dist. LEXIS 4655 (E.D. La., Mar. 19,*
*2004)*

**DISPOSITION-1:** **[*1]** Plaintiffs' Motion for FLSA
Class Certification and to Approve Notice to All Sim-
ilarly Situated Employees in Louisiana DENIED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, employees,
sued defendants, an employer, managers, and unnamed
individuals, alleging claims under the Fair Labor Stan-
dards Act (FLSA), *29 U.S.C.S. § 201* et seq. The
employees moved for FLSA class certification and to
approve notice to all similarly situated employees in
Louisiana.

**OVERVIEW:** The employees alleged that the employer
pursued a pattern of conduct in which (1) employees
worked off the clock, (2) employees were "locked-in"
at night off-clock while waiting for management to
let them out, (3) and employees missed rest and meal
breaks. The employees asserted that these practices
resulted in violation of the minimum wage and over-
time provision of the FLSA. The court found that the
employees failed to present evidence of a policy or
practice by the employer to require the employees to
work off the clock; furthermore, the evidence appeared
to extremely anecdotal. The employees failed in their
burden of proof to demonstrate identifiable facts or
legal nexus that bound the claims so that hearing the
cases together would promote judicial efficiency. The
employer's potential defenses to any alleged FLSA
overtime violations would require highly individual-
ized evidence that concerned each of the employees.
A collective action of this nature presented enormous
manageability problems because there was no single
decision, policy, or plan at issue. It would have been
an exercise in gross mismanagement of judicial and
litigant time and money to certify the class.

**OUTCOME:** The employees' motion for FLSA class
certification and to approve notice to all similarly sit-
uated employees in Louisiana was denied.

**CORE TERMS:** similarly situated, manager, discov-
ery, overtime, clock, collective action, notice, certi-
fication, opt-in, judicial economy, hourly, disparate,

off-clock, two-step, wage, meal, bind, class certifi-
cation, deposition testimony, certify, Fair Labor Stan-
dards Act, class action, procedural history, action to
proceed, decertification, identifiable, anecdotal, de-
certify, nexus, situated

### LexisNexis(TM) Headnotes

*Labor & Employment Law > Wage & Hour Laws >*
*Overtime & Work Period*

*Labor & Employment Law > Wage & Hour Laws >*
*Coverage & Definitions*
[HN1]*29 U.S.C.S. § 207(a)* of the Fair Labor Stan-
dards Act, *29 U.S.C.S. § 201* et seq., requires covered
employers to compensate non-exempt employees at
overtime rates for time worked in excess of statutorily-
defined maximum hours. *29 U.S.C.S. § 207(a).* An
employee is authorized to bring an action on behalf of
himself and other "similarly situated" employees. *29*
*U.S.C.S. § 216(b).* This type of action is meant to
serve the interest of judicial economy and to aid in the
vindication of plaintiffs' rights. The judicial system
benefits by efficient resolution in one proceeding of
common issues of law and fact arising from the same
alleged discriminatory activity.

*Labor & Employment Law > Wage & Hour Laws >*
*Coverage & Definitions*

*Labor & Employment Law > Discrimination > Age*
*Discrimination > Coverage & Definitions*
[HN2]The Age Discrimination in Employment Act, *29*
*U.S.C.S. § 621* et seq., explicitly incorporates § 16(b),
*29 U.S.C.S. § 216(b),* of the Fair Labor Standards Act,
*29 U.S.C.S. § 201* et seq.

*Labor & Employment Law > Wage & Hour Laws >*
*Coverage & Definitions*

*Civil Procedure > Class Actions > Prerequisites*
[HN3]With regard to the Fair Labor Standards Act,
*29 U.S.C.S. § 201* et seq., a trial court approaches
the "similarly situated" inquiry via a two-step analy-
sis. The first determination is made at the so-called
"notice stage." At the notice stage, the district court
makes a decision-usually based only on the pleadings
and affidavits-whether notice of the action should be
given to potential class members. Because the court
has minimal evidence, this determination is made using

a lenient standard, and typically results in "conditional certification" of a representative class. If the court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery. The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is complete and the matter is ready for trial. At this stage, the court makes a factual determination on the similarly situated question. If the claimants are similarly situated, the court allows the representative action to proceed to trial. If the claimants are not similarly situated, the court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives (the original plaintiffs) proceed to trial on their individual claims.

*Civil Procedure > Class Actions > Judicial Discretion*
[HN4]The United States Court of Appeals for the Fifth Circuit considers the following factors to reach its decision to decertify a class at the second stage: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) the apparent absence of filings required by the statute prior to instituting suit.

*Civil Procedure > Class Actions > Judicial Discretion*
[HN5]Because the aim of collective actions is to promote judicial economy, where substantial discovery has already been undertaken such that the court can make an educated decision as to whether certifying a matter as a collective action would survive the decertification process, the ends of judicial economy require the court to make that enquiry. To create a collective action class, including the cost associated with that when a court is convinced that there is insufficient support for same prior to its certification would be an exercise in futility and wasted resources for all parties involved.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions*
[HN6]With regard to an action brought under the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201* et seq., plaintiffs bear the burden of establishing that they are similarly situated to the proposed class. Similarly situated does not mean identically situated. Rather, an FLSA class determination is appropriate when there is a demonstrated similarity among the individual situations some factual nexus which binds the named plain-

tiffs and the potential class members together as victims of a particular alleged policy or practice. Thus, a court can foreclose a plaintiff's right to proceed collectively only if the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions*
[HN7]With regard to a proposed class action under the Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq., although the standard for satisfying the first step is lenient, the court still requires at least substantial allegations that the putative class members were together victims of a single decision, policy or plan infected by discrimination. Courts who have faced the question of whether movants have established substantial allegations have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread discriminatory plan was submitted. While a united policy, plan or scheme of discrimination may not be required to satisfy the more liberal similarly situated requirement, some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency.

*Civil Procedure > Class Actions > Judicial Discretion*
[HN8]It would be a waste of the court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.

**COUNSEL:** For WAL-MART STORES INC dba Wal-Mart dba Sam's Club, JAMES BANKS, CHRIS MARTIN, defendants: Robert K. McCalla, Lawrence Joseph Sorohan, II, Fisher & Phillips, LLP, New Orleans, LA.

**JUDGES:** STANWOOD R. DUVAL, JR., UNITED STATES DISTRICT COURT JUDGE.

**OPINIONBY:** STANWOOD R. DUVAL, JR.

**OPINION: ORDER AND REASONS**

Before the Court is Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana. Oral argument was held on March 18, 2004, with supplemental briefing ordered; the last memorandum was filed into the record on May 27, 2004. Having reviewed the extensive pleadings, memoranda, exhibits, deposition testimony and the relevant law, the Court finds that the motion is without merit.

## BACKGROUND

This case was originally filed on September 5, 2000 by Derrin Basco, Dorothy English and Colby Lagrue in Civil District Court for the Parish of Orleans, Louisiana, individually and on behalf of all other similarly situated class members ("original plaintiffs"), against Wal-Mart Stores, Inc. (including all Louisiana [*2] Wal-Mart stores, Supercenters and Sam's Clubs) ("Wal-Mart"). The petition also named Wal-Mart managers, James Banks, Chris Martin, Charles Lanclos, Charles Rinehart, Wayne Gordon and Pat Curan ("the individual defendants"), as well as all other store, club, district and regional managers for the past ten years. ("John Does"). The Louisiana claims against the individual employees were dismissed, and a Motion to Remand was denied on June 15, 2001. The procedural history of this case was discussed at length in Magistrate Judge Roby's order allowing the Sixth Amended Complaint to be filed in this matter, *Basco v. Wal-Mart Stores, Inc., 2004 U.S. Dist. LEXIS 4655, 2004 WL 574279 (E.D.La. March 19, 2004)* and is incorporated herein. In addition, the factual and procedural history is further outlined in this Court's denial of a Motion for Class Certification on May 9, 2002. *Basco v. Walmart Stores, Inc., 216 F. Supp. 2d 592 (E.D.La. 2002)* which is incorporated herein as well. The United States Court of Appeals for the Fifth Circuit denied plaintiffs leave to appeal the denial of class certification on July 25, 2002.

On August 23, 2002, this matter was set for trial to commence [*3] on April 28, 2003. On January 24, 2003, defendants filed a Motion for Summary Judgment seeking dismissal of certain of plaintiffs' remaining claims based on prescription and all unjust enrichment claims. While that motion was pending, on February 27, 2003, four plaintiffs filed a Fourth Amended Complaint which asserted for the first time federal minimum wage and overtime violations pursuant to the Fair Labor Standards Act of 1938, as amended, *29 U.S.C. §§ 201-219* ("FSLA").

A status conference was held on February 27, 2003, during which plaintiffs sought a continuance of the trial based on the new allegations. A proper motion was filed by plaintiffs on March 17, 2003, noting their desire to pursue their rights as a collective action under the FLSA which required discovery. The Court sought to have a conference to set this matter for trial; however, plaintiffs moved for continuance of the pretrial scheduling conference because "plaintiffs and defense counsel have agreed that there must be some discovery and motion practice undertaken in order to prepare the case for a hearing on Plaintiffs' motion to proceed as a collective action." (Doc. 103). Thus, the parties [*4] set out to do the necessary discovery to present to the Court the instant issue. Based on counsel's request,

the hearing on the certification of the collective action was set for January 15, 2004, with responses due on February 17, 2004 and a hearing on the matter set for March 4, 2004. No trial date was set at that time.

A Fifth Amended Complaint was filed on November 11, 2003 which added 15 additional plaintiffs to this suit to flesh out the FLSA claims. n1 The hearing on the Motion for Certification was continued to March 18, 2004. As previously noted, after that hearing counsel requested additional time to file briefing on representative testimony which was completed on May 24, 2004.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 By virtue of the Sixth Amended Complaint, two plaintiffs were dropped and nine new plaintiffs were added. The Court has focused on those plaintiffs that were named in the Fifth Amended Complaint, that is at the time of the filing of this motion. The new plaintiffs do not change the analysis of the matter before the Court.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*5]

Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana

## The Claims

Plaintiffs seek class certification to pursue claims under the Fair Labor Standards Act of 1938, *29 U.S.C. §§ 201-219* (hereinafter "FLSA"). Plaintiffs allege in the Fifth Amended Complaint that Wal-Mart pursues a pattern of conduct that results in (1) employees working off the clock, (2) employees being "locked-in" at night off-clock while waiting for management to let employees out, (3) and employees missing rest and meal breaks. Plaintiffs move the Court for an order (1) certifying this case as a collective action under § *216(b) of the FLSA*, (2) approving the "Notice to Current and Former Wal-Mart and Sam's Club Hourly Employees in Louisiana" (Exh. No. 21 to this motion) which would then be sent to the approximately 100,000 employees to be identified, by (3) compelling Wal-Mart to answer Interrogatory No. 2 of Plaintiffs' Fourth Set of Interrogatories (Exh. No. 22 to this motion).

The "class" is defined in plaintiffs' suggested "Notice" as:

> any and all employees who are or have been, at any time within the past [*6] three

(3) years: (a) Employed on an hourly basis at a Wal-mart or Sam's Club store that was owned and operated by Wal-Mart Stores, Inc. in the State of Louisiana; and (b) Did not receive minimum or overtime wages as a result of the practices described in Paragraph 2(a).

Paragraph 2(a) states:

> This lawsuit alleges that Wal-Mart Stores, Inc. has violated the Act with regard to hourly workers as follows: (1) after clocking out after a shift, employees are required to work beyond their regular hourly schedules and are not paid for the time worked off the clock; (2) after clocking out for meal breaks, employees are required to perform work duties and are not paid for the time worked off the clock during their unpaid meal breaks; (e) employees are not permitted to take rest and meal breaks; and (4) managers have manipulated time and wage records to reduce amounts paid to Wal-Mart employees, including overtime pay.

(Plaintiffs' Memorandum in Support, Exh. 21).

Contained in Exhibit A is a list of the named plaintiffs n2 in the Fifth Amended Complaint, the location of the relevant store where that person is employed, the time of employment, the job description and the claims [*7] made on behalf of that person.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 The claims of Teresa Buckner and Geneva Johnson-Heisler have been dismissed.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

The claims as noted vary; not each plaintiff complains of all "illegal" activities. Plaintiffs contend that these practices have resulted in the violation of the minimum wage and overtime provisions of the FLSA.

**The FLSA and Collective Action Status**

[HN1]*Section 207(a) of the FLSA* requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours. *29 U.S.C. § 207(a)*; *Freeman v. Wal-Mart Stores, Inc., 256 F. Supp.2d 941, 943 (W.D.Ark. 2003)*. An employee is authorized to bring an action on behalf of himself and other "similarly situated" employees. *28 U.S.C. § 216(b)*. n3 This type of action is meant to serve the interest of judicial econ-

omy and to aid in the vindication of plaintiffs' rights. *Id. citing Hoffman-LaRoche Inc. v. Sperling, 493 U.S. 165, 170, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989)* [*8] (judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity). Thus, the inquiry before the Court is to determine whether the class as defined is "similarly situated."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 [HN2]The Age Discrimination in Employment Act, *29 U.S.C. § 621*, also explicitly incorporates section 16(b) of the FLSA, *29 U.S.C. § 216(b)*. *Mooney v. Aramco Services Co., 54 F.3d 1207, 1212 (5th Cir. 1995)*. Thus, any discussion of this provision in the context of an ADEA claim is applicable to the case at bar.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

In the seminal case *Mooney v. Aramco Services Co., 54 F.3d 1207 (5th Cir. 1995)*, the United States Court of Appeals for the Fifth Circuit noted that are the two different tests that have been applied to make this determination-a two-step approach found in *Lusardi v. Xerox Corp., 122 F.R.D. 463, 465-66(D.N.J. 1988)* and the "Spurious Class Action" outlined [*9] in *Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990)*.

> [HN3]Under *Lusardi*, the trial court approaches the "similarly situated" inquiry via a two-step analysis. The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision-usually based only on the pleadings and any affidavits which have been submitted-whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.
>
> The second determination is typically precipitated by a motion for "decertification"

by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the **[*10]** claimants are similarly situated, the district court allows the representative action to proceed to trial. If th claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs-proceed to trial on their individual claims.

*Mooney at 1213-14.* Indeed, in *Lusardi*, [HN4]the court considered the following factors to reach its decision to decertify the class at the second stage:

> (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the defendant] which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) the apparent absence of filings required by the ADEA prior to instituting suit.

*Mooney, 54 F.3d at 1213 n.7, citing Lusardi v. Xerox Corp., 118 F.R.D. 351, 359; Thiessen v. GE Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001)* (using the first three criteria).

The second analysis is known as Spurious Class Action n4

> The second line of cases is typified by *Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990).* **[*11]** *Shushan* espouses the view that § *16(b) of the Fair Labor Standards Act (FLSA)* merely breathes new life into the so-called "spurious" class action procedure previously eliminated from *Fed. R. Civ. P. 23.* Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA and ADEA context, but merely desired to limit the availability of *Rule 23* class action relief under either Act. In application, the court determined that Congress intended the "similarly situated" inquiry to be co-extensive with *Rule 23* class certification. In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certi-

fied.

*Mooney, 54 F.3d at 1214.* n5 This approach has not been embraced as often as the one found in *Lusardi.*

> Given the direction of the Tenth and Eleventh Circuits and the great weight of district court authority, a consensus has been reached on how *section 216(b)* cases should be evaluated. It is clear that the two-step ad hoc approach is the preferred method **[*12]** for making the similarly situated analysis and that the similarly situated standard does not incorporate *Rule 23* requirements.

D. Bergen and L. Ho, "Litigation of Wage and Hour Collective actions under the Fair Labor Standards Act" *7 Employee Rts. & Emp. Pol'y J.* 129, 134 (2003). n6 The authors continue:

> While the recent court of appeals opinions have clarified the standards and procedure for making the 'similarly situated' determination, the district courts are still wrestling with the application of such standards. The similarly situated standard is evaluated differently depending on if the inquiry takes place when: (1) plaintiffs seek court-facilitated notice early in the litigation; or (2) discovery has closed or the defendant seeks to decertify a previously certified class propr to trial.

*Id.*

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 *Bayles v. American Medical Response of Colorado, 950 F. Supp 1053 (D. Col. 1996)* identified three other analyses-all variations using a *Rule 23* analysis; however, in light of *Mooney,* the Court need not examine these other methods. "Litigation of Wage and Collective Actions" at 132.

**[*13]**

n5 Both in *Mooney* and *Freeman,* the courts found it unnecessary to choose between the two tests. The courts found that based on the record before them that no matter which test was used a finding that the opt-in plaintiffs or potential opt-in plaintiffs were not similarly situated.

n6 *Rule 23,* which is generally considered a "stricter" rule, *Garza v. Chicago Transit Authority, 2001 U.S. Dist. LEXIS 6132,*

2004 U.S. Dist. LEXIS 12441

*2001 WL 504036 (N.D. III. May 8, 2001)* would require findings on numerosity, commonality, typicality and adequacy tests.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Based on the foregoing, the Court will employ the two-step approach found in *Lusardi*. However, in light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify this matter. At least one court has proceed directly to the second stage when "the parties do not dispute that discovery has been undertaken relating to the issues of certification of this action as a collective action." *Pfohl v. Farmers Ins. Group, 2004 U.S. Dist. LEXIS 6447, 2004 WL 554834 (C.D.Cal. March 1, 2004).* **[*14]** Indeed, in the instant matter substantial discovery has occurred; the Court has heard the video deposition testimony of a substantial number of plaintiffs at the hearing on this matter and has independently reviewed written deposition testimony as well. This case, as demonstrated by its long procedural history, is not in a nascent stages. Thus, an application of the second criteria is called for.

[HN5]Because the aim of collective actions is to promote judicial economy, and substantial discovery has already been undertaken such that the Court can make an educated decision as to whether certifying this matter as a collective action would survive the decertification process, the ends of judicial economy and require the Court to make that enquiry at this stage. To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for same prior to its certification would be an exercise in futility and wasted resources for all parties involved.

**Similarly Situated**

**The Standard Employed**

[HN6]Plaintiffs bear the burden of establishing that they are similarly situated to the proposed class. *Pfohl v. Farmers Ins. Group, 2004 U.S. Dist. LEXIS 6447, 2004 WL 554834 [*15] (C.D. Cal. March 1, 2004, citing White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1313 (M.D.Ala. 2002).* As stated by Judge Feldman in *Helmerich & Payne Intern'l Drilling Co., 1992 U.S. Dist. LEXIS 5367, 1992 WL 91946 (E.D.La. April 16, 1992):*

> Similarly situated does not mean identically situated. *See Heagney [v. European American Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)]; Palmer v. Reader's Digest Asso., 1986 U.S. Dist. LEXIS 19547,*

*42 Fair Empl. Prac. 212, 213 (S.D.N.Y. 1986); Riojas [v. Seal Produce, Inc. 82 F.R.D. 613, 617 (S.D. Tex. 1979).* Rather, an FLSA class determination is appropriate when there is "a demonstrated similarity among the individual situations ... some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged [policy or practice]." *Heagney, supra* ... Thus, a court can foreclose a plaintiffs right to proceed collectively only if "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Burt v. Manville Sales Corp., 116 F.R.D. 276, 277 (D. Colo. 1987).* **[*16]**

*1992 U.S. Dist. LEXIS 5367, [WL] at *2.* This standard has been restated and further refined in *H&R Block v. Housden, 186 F.R.D. 399 (E.D.Tex. 1999):*

> [HN7]although the standard for satisfying the first step is lenient, ..., the court still requires at least "substantial allegations that the putative class members were together victims of a single decision, policy or plan infected by discrimination." courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified ...; whether affidavits of potential plaintiffs were submitted ...; and whether evidence of a widespread discriminatory plan was submitted ...

*Id. at 400.* Another district court has concluded that "that while a united policy, plan or scheme of discrimination may not be required to satisfy the more liberal similarly situated requirement, some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency. *Barron v. Henry County School System, 242 F. Supp. 2d 1096 (M.D. Ala. 2003), citing Sheffield v. Orius Corp., 211 F.R.D. 411, 416 (D. Or. 2002).* **[*17]**

**First Step--Facts or Legal Nexus that Binds so as to Create Judicial Efficiency**

In essence, plaintiffs' argument of their being "similarly situated" as all to Louisiana Wal-Mart employees who are not paid overtime rests on the alleged "Wal-Mart mentality" of no overtime and strict budgeting of time and employee costs. To support this position, plaintiffs contend that Wal-Mart has engaged in a practice of limiting the amount of work its employees are allowed to perform on the clock during the week but

not the amount of work they are required to do. They claim it is the result of a "Customer Service Scheduling System" which is a computer network used to monitor hours worked and control payroll costs at its individual stores on a daily basis-department-by-department and employee-by-employee. Plaintiffs rely on (1) the Customer Service Scheduling System; (2) evidence that hourly employees are not compensated for all of their work; and (3) bonus incentives for Store Managers.

### (1) Customer Service Scheduling System

The Customer Service Scheduling System ("CSSS") is a computer program used to optimize the hours worked in relation to the historical needs of the business. It [*18] apparently creates "preferred hours" for each store which are determined as a percentage of historical and projected sales revenues. (Perrin Deposition pp. 5-10). These "preferred hours" are then used by store managers to create the "scheduled hours" for their stores. The store then tracks the "actual hours". Wal-Mart allegedly expects that payroll costs as a percentage of sales revenues be maintained at around 8%.

In addition there is a "Store Staffing Comparison by Day Report" to monitor Associates who may be working over or under their scheduled hours. There is also a "Associate Scheduling Review Report" which store managers can use to verify that the amount of wages scheduled is consistent with the budget.

Plaintiffs also provide evidence that they contend proves that (1) the computer prompts managers when they try to add shifts to obtain the District Managers approval for the addition, (2) the method by which the time clocks are "polled" and "finalized" shaved time off (which Wal-Mart vehemently denies), also (3) managers being "coached" on employee cost overruns.

### (2) Hourly Employees Not Compensated for All of Their Work

#### (a) Off the Clock

Plaintiffs' counsel contends [*19] that plaintiffs were "often" required to work "off the clock". Reviewing the deposition testimony of the seven plaintiffs n7 however does not overwhelm the Court as evidence of a policy or practice, it appears to be extremely anecdotal-one manager requiring it as oppose to all, perhaps once or twice during the course of a plaintiff's work.

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n7 Ferguson, Slaughter, Clark, McClain, Gauthreaux, Handy and Mayes.


- - - - - - - - - - - - - End Footnotes- - - - - -
- - - - - - - -

#### (b)working more than 40 hours-no overtime

Likewise, plaintiffs presented testimony of five employees complaining that they worked more than 40 hours without receiving overtime pay.

### (3) Bonus Incentives for Store Managers

In further support of this theory, plaintiffs contend that managers are awarded bonuses for keeping salary costs down and that as a result there is an added incentive for managers to have employees to work off the clock, contrary to Wal-Mart's written policies.

Based on these policies and procedures, plaintiffs rely on examples of the effect of the application of these alleged [*20] practices to demonstrate why this matter should proceed as a collective action. Plaintiffs focus on the fact that there is evidence of "wide-spread occurrence of off-the-clock-work and unpaid overtime" which they say they've uncovered without much discovery. Plaintiffs note that they've found nine more individuals that they've included in a Sixth Amended Complaint that have been deposed and have testified to working off the clock or not being paid overtime.

Plaintiffs point to the testimony of a former store manager for Wal-Mart Store No. 803, Mr. Mitchell, in Bogalusa from July 2000 to July 2002, who claims that six people worked off the clock to "protect him". He also claims he was instructed to delete overtime from employees' time records in April or May of 2002. Mitchell names Charles Reinhardt and Donna Turpirtz as district managers who were making decisions that led him to be understaffed.

Nonetheless, Wal-Mart contends that even using the lenient standard, plaintiffs' request should be denied as plaintiffs have not identified a "single decision, policy or plan" as set forth in *Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 n.8 (5th Cir. 1995)*. It contends [*21] that the anecdotal, that is to say individual instances cited are not enough to support a finding of being "similarly situated." To that end they have provided a number of affidavits from managers explaining the process of scheduling that they are instructed to use and they are not under any circumstances to have workers work "off-clock". Wal-Mart specifically counters each exhibit showing that the inferences promoted by plaintiffs are ill-founded.

Wal-Mart further contends that in order to prove plaintiffs' case, the facts are too individualized to warrant this kind of procedure. First, the plaintiffs themselves are responsible for punching in and out. Wal-Mart's policy requiring payment for all working time and any deviations for that policy occurs on a manager-by-manager and associate-by-associate basis involving particular circumstances and anecdotal testimony. The

Court notes that one of the most telling example of this principle was supported by the testimony of Mr. Gauthreaux who loved working in the meat department because he never was asked to be off-clock and had only been asked once to be off-clock; the testimony of Charles Ferguson supports the same conclusion.

Taking [*22] all of this into consideration, the Court must agree with Wal-Mart's characterization of the evidence presented. Simply put, plaintiffs seek to make a corporate policy to keep employee wage costs low sufficient proof to justify the creation of a class of all Wal-Mart employees that have not been properly paid overtime in the last three years. It is obvious from the discovery presented that this "policy" and its effects are neither homogeneous nor lend themselves to collective inquiry. The effects of the policy as alleged are anecdotal, that is to say particularized. Plaintiffs' own witnesses demonstrate that the "policy" was not even uniformly or systematically implemented at any given store. While it is true that this "lesser" standard should not preclude certification, and "similarly situated" does not mean identically situated, plaintiffs have failed in their burden of proof to demonstrate identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency. For this reason the Court would deny the Motion to Certify Collective Action. However, pretermitting that finding, the Court will now examine this matter using the more demanding [*23] second step. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n8 The Court is not unaware that the two "step" inquiry somewhat collapses into one when a Court is faced with the plethora of evidence that was presented in this matter. Certainly the first "step" analysis is colored by the facts demonstrated-disparate factual and employment settings of the individual-and perhaps the Court should simply start at the second step as was done in the *Pfohl* case. Nonetheless, for purposes of appeal, the Court will go through the complete analysis.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

## Second Step-Disparate Settings, Disparate Defenses and Procedural

Now, the Court will examine whether there are (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to Wal-Mart which appear to be individual to each plain-

tiff; and (3) fairness and procedural considerations that would make certification improper. [HN8]"It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that [*24] the matter should not proceed as a collective action because the class members are not similarly situated." *Freeman v. Wal-Mart Stores, Inc., 256 F. Supp.2d 941 (W.D. Ark. 2003)*.

The Court finds that the evidence presented and outlined above further underscores the disparate factual and employment settings of the individual plaintiffs. These facts demonstrate that it would not be in the interest of judicial economy to certify the state-wide class of employees. A store locate in Northern Louisiana faces different pressures and sales dynamics than a store in Southern Louisiana. Such variances would be equally possible even within the New Orleans area from store to store. Furthermore, the breadth of the type of employees and departments would also have to be placed into the equation. In addition, it is clear that even within a given store, one manager in one department would react to the "policy" differently than in another department. (e.g.--Mr. Gauthreaux--working in the meat department versus working as a cashier).

Furthermore, Wal-Mart's potential defenses to any alleged FLSA overtime violations will require highly individualized evidence concerning each associate. [*25] As stated in *Mooney, 54 F.3d 1213, n.7* "the disparate individual defenses asserted by [defendant] heightens the individuality of the claims and complicates the significant management problems." As Wal-Mart correctly noted, it would be entitled to:

> (1) contest whether any off-the-clock work occurred and whether it resulted in non-payment of FLSA overtime;
>
> (2) argue specific defenses available under the FLSA that seem to require individual testimony particularly in reference as to what constitutes "work" under the FLSA;
>
> (3) demonstrate its managers and supervisors did not know about the off-the clock work and that plaintiffs failed to take advantage of Wal-mart's system for reporting time;
>
> (4) demonstrate that plaintiffs' claims are barred by § 4 of the Portal to Portal Act, *29 U.S.C. § 254*, as to all hours during which plaintiffs were engaged in activities that were preliminary or post-liminary to their principal activities;

2004 U.S. Dist. LEXIS 12441

(5) demonstrate that any off-the-clock work falls within the *de minimus* exception to the FLSA;

(6) demonstrate associates claims are barred by statute of limitations or technical defaults; [*26] and

(7) demonstrate that each manager acted in good faith and that liquidated damages are not appropriate.

These factors also support the finding that a collective action of this nature presents enormous manageability problems because there is no single decision, policy or plan at issue. The findings decertifying the collective action in *Lusardi* are equally appropriate here. The members of the proposed class come from different departments, groups, organizations, sub-organizations, units and local offices within the Wal-Mart organization. The potential opt-in plaintiffs performed different jobs at different geographic locations and were subject to different managerial requirements which occurred at various times as a result of various decisions by different supervisors made on a decentralized employee-by-employee basis. This case should not be certified; it would be an exercise in gross mismanagement of judicial and litigant time and money to certify the class as requested given the overwhelming evidence brought before the court. n9 Accordingly,

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 In *Thiebes v. Wal-Mart Stores, Inc., 1999 U.S. Dist. LEXIS 18649, 1999 WL 1081357 (D. Oregon Dec. 1, 1999)*, the court allowed an FSLA action to proceed

against Wal-Mart based on its findings at the First Stage and allowed the action to proceed for notice and discovery purposes. Using the less stringent standard, the court held that there were sufficient identifiable factual and legal bases that the potential plaintiffs were a victim of a common policy. Although not reported, it is this Court's understanding that ultimately the liability questions went to a jury which found in favor of the plaintiffs. Moreover, it is the Court's understanding that approximately 425 employees oped-in. There is no reported case addressing a motion for decertification after discovery had been completed. Because there has been substantial discovery in this case, this Court's analysis is based on a stricter standard in this instance.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*27]

IT IS ORDERED that Plaintiffs' Motion for FLSA Class Certification and to Approve Notice to All Similarly Situated Employees in Louisiana is DENIED.

New Orleans, Louisiana, this 1st day of July, 2004.

STANWOOD R. DUVAL, JR.

UNITED STATES DISTRICT COURT JUDGE

Exhibit A

| Name | Store Locution | Time of Employment |
|---|---|---|
| Regina Geason | Sam's Club No. 8221, Harvey | Feb. 1995- Feb. 2000 |
| Betty Matthews | Wal-Mart No. 23, Ruston | June 1989-April 2001 |
| K. Busby-Dunn | Wal-Mart No. 1206 Baton Rouge | Nov. 1999-June 2001 |
| Janet Clay* | Wal-Mart No. 376 Bossier City | Nov. 1999-May 2001 |
| Merle Davis | Wal-Mart No. 839 Baton Rouge | Dec. 1992-July 2001 |
| A. Dixon-Clark | Wal-Mart No. 1169 New Roads | ?? |
| C. Edwards | Wal-Mart No. 489 Hammond | Oct. 2000-July 2001 |
| C. Ferguson | Wal-Mart No. 2132 Baton Rouge | Sept. 1999-Sept. 2001 |
| D. Gauthreaux | Wal-Mart No. 2132 Baton Rouge | April 1998-Feb. 2001 |
| Silas Handy* | Wal-Mart No. 376 Bossier City | 1997-2001 |
| Linus Mayes | Wal-Mart No. 376 Bossier City | Aug. 2000-2001 |
| Fannie McClain | Wal-Mart No. 428 Zachery | March 2001-May2001 |
| Alfred Scott | Wal-Mart No. 201 Plaquemine | Feb. 2000-Aug.2001 |
| Lee Slaughter | Sam's Club No. 8273 Shreveport | 1984 to present |
| Trimty Taylor | Wal-Mart No. 1206 Baton Rouge | Aug. 2000-June 2001 |

[*28]

2004 U.S. Dist. LEXIS 12441

| Name | Job Description |
|---|---|
| Regina Geason | audit/inventory control |
| Betty Matthews | overnight stocker, photo processor demo coordinator, zone manager, dept. manager |
| K. Busby-Dunn | lingerie dept. |
| Janet Clay* | cashier |
| Merle Davis | cashier |
| A. Dixon-Clark | pharmacy dept. |
| C. Edwards | receiving dept. |
| C. Ferguson | grocery dept. |
| D. Gauthreaux | stoker and cashier |
| Silas Handy* | ??? |
| Linus Mayes | receiving dept. |
| Fannie McClain | remodeling crew |
| Alfred Scott | overnight stocker |
| Lee Slaughter | grocery dept. |
| Trimty Taylor | hardware dept. |

| Name | Claims |
|---|---|
| Regina Geason | off clock/lock-in/rest and meals |
| Betty Matthews | off clock/lock-in/rest and meals |
| K. Busby-Dunn | off clock/lock-in/rest and meals |
| Janet Clay* | no overtime pay |
| Merle Davis | no overtime pay/lock-in/rest and meals |
| A. Dixon-Clark | off clock/rest and meals |
| C. Edwards | off clock/no overtime pay/rest and meals |
| C. Ferguson | off clock/no overtime pay |
| D. Gauthreaux | off clock/no overtime pay/rest and meals |
| Silas Handy* | off clock/rest and meals |
| Linus Mayes | off clock/rest and meals |
| Fannie McClain | off clock/rest and meals |
| Alfred Scott | off clock/no overtime pay/rest and meals |
| Lee Slaughter | off clock/rest and meals |
| Trimty Taylor | off clock/rest and meals |

[*29]

Page 23

1998 U.S. Dist. LEXIS 21484; 5 Wage & Hour Cas. 2d (BNA) 127

DEBORAH BAUM, JACK H. BAUM, ROSE MARIE CAMPBELL, CARLOS RIVERA, and LUCIA DESAMPER, Plaintiffs, v. SHONEY'S INC., f/k/a TPI, INC., Defendant,

Case No. 98-423-CV-ORL-19B

UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

1998 U.S. Dist. LEXIS 21484; 5 Wage & Hour Cas. 2d (BNA) 127

December 3, 1998, Decided
December 3, 1998, Filed

**DISPOSITION-1:** [*1] Plaintiffs' Motion for Expedited Court Supervised Notice (Doc No. 9, filed June 5, 1998) DENIED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs filed a motion for expedited court supervised notice, seeking approval of the court to send notice to all "similarly situated" individuals in accordance with § 16(b) of the Fair Labor Standards Act of 1938 (FLSA), as amended, *29 U.S.C.S. § 201* et seq., in their action brought under the FLSA. Defendant employer opposed the motion.

**OVERVIEW:** Plaintiffs, sued defendant employer under the Fair Labor Standards Act of 1938 (FLSA), as amended, *29 U.S.C.S. § 201* et seq., action on behalf of themselves and numerous others similarly situated. Plaintiffs filed a motion for expedited court supervised notice, seeking approval of the court to send notice to all "similarly situated" individuals in accordance with § 16(b) of the FLSA. Plaintiffs indicated that the class should have included all present and former employees of defendant who were paid on an hourly basis or under a fluctuating pay plan and who were employed by defendant at any time within the three year period preceding the filing of the complaint. The court denied the motion because plaintiffs failed to provide evidence, as they were required to do, that aggrieved individuals existed within the broad class they proposed, and failed to make the required showing that the potential class members were similarly situated to each other.

**OUTCOME:** Plaintiff's motion for expedited court supervised notice was denied because plaintiffs failed to provide evidence that aggrieved individuals existed within the broad class they proposed, and failed to make the required showing that the potential class members were similarly situated to each other.

**CORE TERMS:** similarly situated, restaurant, notice, age discrimination, former employees, aggrieved, 'authorize, fluctuating, non-server, franchise, hourly

LexisNexis(TM) Headnotes

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

[HN1] *29 U.S.C.S. § 216*(b) provides that a collective action may be maintained against any employer by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

[HN2]A court has the discretion to authorize notice to potential class members under the Fair Labor Standards Act of 1938, as amended, *29 U.S.C.S. § 201* et seq. Before authorizing such notice, the court must determine whether other employees exist who are "similarly situated" with respect to job requirements and pay provisions. In determining whether potential class members are similarly situated, the United States Court of Appeals for the Eleventh Circuit does not require a showing that potential class members were together the victims of a single decision, policy. However, such a showing is probative in determining whether potential class members are similarly situated.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

[HN3]Before a court authorizes notice to potential class members under the Fair Labor Standards Act of 1938, as amended, *29 U.S.C.S. § 201* et seq., plaintiffs, among other requirements, must also demonstrate that aggrieved individuals exist within the broad class they propose.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

[HN4]Plaintiffs may meet the burden of providing evidence to support their allegations by making substantial detailed allegations of class-wide violations of the Fair Labor Standards Act of 1938, as amended, *29 U.S.C.S. § 201* et seq., supported by affidavits.

**COUNSEL:** For DEBORAH BAUM, JACK H. BAUM, ROSE MARIE CAMPBELL, CARLOS RIVERA, LUCIA DESAMPER, plaintiffs: H. Clay Parker, IV, Daniel N. Brodersen, Parker, Burke, Landerman, & Parker, P.A., Orlando, FL.

For SHONEY'S INC., defendant: Michael J. Mueller, Joel M. Cohn, T. Cy Walker, Akin, Gump, Strauss, Hauer & Feld, Washington, DC.

For SHONEY'S INC., defendant: Tucker H. Byrd,

1998 U.S. Dist. LEXIS 21484; 5 Wage & Hour Cas. 2d (BNA) 127

Gregory W. Herbert, Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Orlando, FL.

**JUDGES:** PATRICIA C. FAWSETT, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** PATRICIA C. FAWSETT

**OPINION: ORDER**

This cause came before the Court on Plaintiffs' Motion for Expedited Court Supervised Notice and Memorandum of Law in Support Thereof (Doc. No. 9, filed June 5, 1998) and Defendant's Memorandum in Opposition to Plaintiffs' Motion for Expedited Court Supervised Notice (Doc. No. 28, filed September 4, 1998). Both parties have submitted a number of documents in support of their positions.

Plaintiffs have brought this action against Defendant Shoney's Inc, f/k/a TPI, Inc. n1 under the Fair Labor Standards Act of 1938 ("FLSA"), [*2] as amended, *29 U.S.C. § 201*, et seq.. Plaintiffs have brought this action on behalf of themselves and "numerous other similarly situated TPI employees" pursuant to *29 U.S.C. § 216(b)*. (Doc. No. 1 at P 20, filed April 13, 1998).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 According to the Defendant, the correct entity is TPI Restaurants, Inc. ("TPIR"), not TPI Inc.. Before September 1996, TPIR was a separately owned corporation that operated approximately 175 Shoney's concept restaurants in eleven states under franchise agreements. In September 1996, Shoney's Inc. acquired TPIR including all the Shoney's concept restaurants previously owned and operated by TPIR. (Doc. No. 28).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiffs allege three distinct claims. First, Plaintiffs allege that hourly employees were not compensated for all of the time they worked. Second, they contend Defendant used the fluctuating workweek method of overtime payment but violated the requirements for this method of payment. n2 Third, Plaintiffs allege Defendant required servers to perform non-server duties but [*3] failed to pay the corresponding non-server rate.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 See *29 C.F.R. § 778.114*.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Plaintiffs seek approval of the Court to send a notice to all "similarly situated" individuals in accordance with section 16(b) of the FLSA, *29 U.S.C. § 216(b)*. Plaintiffs indicate that the class should include "all present and former employees of Shoney's Inc. who were paid on an hourly basis or under a fluctuating pay plan and who were employed at a Shoney's Inc. /TPI, Inc. restaurant at any time within the three year period preceding the filing of the Complaint." (Doc. No. 9 at 4, filed June 5, 1998). After consideration of the motion and Defendant's response, the Court denies the motion.

[HN1]Section 16(b) of the FLSA provides that a collective action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *29 U.S.C. § 216(b)*. [HN2]The Court has the discretion to authorize notice to potential class members under the FLSA. See *Dybach* [*4] v. *State of Florida Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991)*.

Before authorizing such notice, the Court must determine whether other employees exist who are "similarly situated" with respect to job requirements and pay provisions. See *id. at 1567-68*. In determining whether potential class members are similarly situated, the Eleventh Circuit does not require a showing that potential class members were together the victims of a single decision, policy, or plan. See *Grayson, 79 F.3d 1086 at 1095* (interpreting § 216(b) in an age discrimination case). However, such a showing is probative in determining whether potential class members are similarly situated. See e.g. *Sperling v. Hoffman-La Roche, Inc., 118 F.R.D. 392, 406 (D.N.J.),* aff'd in relevant part, *862 F.2d 439 (3d Cir. 1988),* aff'd, *493 U.S. 165 (1989);* see *Brooks v. Bellsouth Telecomms. Inc., 164 F.R.D. 561, 566-67 (N.D. Ala. 1995),* aff'd, *114 F.3d 1202 (11th Cir. 1997)*.

[HN3]Before the Court authorizes notice, Plaintiffs must also demonstrate that aggrieved individuals exist within the broad class they propose. *Haynes v. Singer Co., Inc., 696 F.2d 884, 888 (11th Cir. 1983)*. In Haynes, [*5] the Eleventh Circuit held that notice should not have been authorized where the judge was only presented counsel's unsupported assertions that FLSA violations were widespread. See id.

Plaintiffs assert that the allegations in their Complaint are sufficient to demonstrate the existence of other potential class members who are similarly situated. This assertion is a misstatement and misunderstanding of the law. n3 The Eleventh Circuit has clearly indicated

1998 U.S. Dist. LEXIS 21484; 5 Wage & Hour Cas. 2d (BNA) 127

that Plaintiffs must provide evidence to support their allegations. See id. [HN4]Plaintiffs may meet this burden by making substantial detailed allegations of class-wide violations of the FLSA supported by affidavits. See generally *Grayson v. K Mart Corp., 79 F.3d 1086, 1097-99 (11th Cir. 1996)* (finding court authorized notice proper under *29 U.S.C. § 216*(b) in an age discrimination case where plaintiffs provided affidavits containing statistics and company executive statements that supported the allegations that the potential class members were "similarly situated").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 This argument calls into question whether Plaintiffs and their counsel are suitable representatives for their potential class.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*6]

In this case, Plaintiffs propose a class that includes all employees and former employees of Shoney's Inc./TPI, Inc.. This would include employees at approximately 175 Shoney's concept restaurants in eleven states that were under separate franchise agreements. (Doc. 29, filed September 4, 1998). In support of their motion, Plaintiffs have provided five affidavits that are almost identical to each other. (Doc. No. 18, Doc. No. 19, Doc. No. 20, Doc. No. 21, Doc. No. 22). The affidavits are limited to employees who work or have worked at Shoney's restaurants in Orange County, Florida. n4 Id. Plaintiffs have not provided any evidence that employees in restaurants outside of Orange County are similarly situated to Plaintiffs. Plaintiffs also have not provided evidence, other than gen-

eral statements within their own affidavits, that FLSA violations have occurred to employees at restaurants outside Orange County. Further, Plaintiffs have not shown that potential class members were together the victims of a single decision, policy, or plan.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Defendants note that the affidavits are also substantially similar to affidavits filed in a different case against Shoney's in Nashville, Tennessee. (Doc. 28, Exh. 3, filed September 4, 1998).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*7]

Based on the foregoing, the Court denies Plaintiffs' motion. Plaintiffs have failed to provide evidence, as they are required to do, that aggrieved individuals exist within the broad class they propose. See *Haynes, 696 F.2d at 888.* Plaintiffs also have failed to make the required showing that the potential class members are similarly situated to each other. See *Dybach, 942 F.2d at 1567-68.*

## CONCLUSION

Accordingly, Plaintiffs' Motion for Expedited Court Supervised Notice (Doc No. 9, filed June 5, 1998) is **DENIED.**

**DONE AND ORDERED** at Orlando, Florida this, 3rd day of December, 1998.

PATRICIA C. FAWSETT

UNITED STATES DISTRICT JUDGE

1999 U.S. Dist. LEXIS 11230

RICHARD BURNS, DAVID KRUGER, FRED VOYTOVICH, TODD SHERIDAN, JACOB MANN, TIM WERNER, TODD SCHMIDT, JAMES ZYGMUNT, JIM LUBENO, BRUCE FREEMAN and TERRY LUTZ on behalf of themselves and all other Plaintiffs similarly situated known and unknown, Plaintiffs, vs. THE VILLAGE OF WAUCONDA, JAMES ESCHENBACH, Mayor, and FRED DIERKER, Village Administrator, Defendants.

No. 99 C 0800

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1999 U.S. Dist. LEXIS 11230

July 14, 1999, Decided
July 15, 1999, Docketed

**DISPOSITION-1:** [*1] Defendants' motion for reconsideration (doc. # 29-1) granted and plaintiffs' request to send notice to plaintiffs' class denied without prejudice. Plaintiffs' second motion to begin notice to members of plaintiff class (doc. # 22-1) denied as moot.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants, village and officials, filed a motion to reconsider a ruling that it was appropriate to sent notice to potential class members, and plaintiff employees filed a second motion to begin notice to potential class member in a class action alleging that certain payment policies of defendants were in violation of the Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq., and the Portal-To-Portal Pay Act, *29 U.S.C.S. § 251* et seq.

**OVERVIEW:** Plaintiff employees, who worked for defendant village's public works department, filed a class action alleging that certain payment policies were in violation of the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201* et seq., and the Portal-To-Portal Pay Act, *29 U.S.C.S. § 251* et seq. The court denied without prejudice plaintiffs' first motion to authorize notice to potential class members. The court concluded that the complaint's allegations were sufficient to trigger broad notice to village employees outside the public works department, but the form plaintiffs proposed was defective. Parties consented to magistrate's jurisdiction. Defendants moved to reconsider the finding that court assisted notice was appropriate. Plaintiffs filed a second motion to begin notice. The court granted the motion to reconsider and denied the renewed motion to send class notice, holding that, considering the affidavit submitted by defendant stating that the policy complained of was not broadly applicable, the bare allegations in plaintiffs' complaint were insufficient to demonstrate that those to whom they sought to give notice were similarly situated, and plaintiffs' new notice was defective.

**OUTCOME:** The court granted the motion to reconsider and denied the renewed motion to send class notice, holding that the bare allegations in plaintiffs'

complaint were insufficient to demonstrate the potential class members were similarly situated in light of defendants' affidavit stating that the policy complained of was not broadly applicable.

**CORE TERMS:** notice, opt, putative, class action, class certification, similarly situated, reconsideration, affirmatively, commonality, typicality, authorize, discovery, moot, motion to reconsider, first motion, et seq, court-facilitated, overtime, trigger

### LexisNexis(TM) Headnotes

*Civil Procedure > Class Actions > Judicial Discretion*

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions*
[HN1]The Fair Labor Standards Act (FLSA) authorizes a plaintiff to bring an action on behalf of himself and other employees similarly situated. *29 U.S.C.S. § 216*(b). This language has been recognized as authorizing representative, or "class," actions to enforce rights under the FLSA. However, *29 U.S.C.S. § 216*(b) goes on to specify that no person may be included in an FLSA class action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. District courts have discretion, in appropriate cases, to implement *29 U.S.C.S. § 216*(b), as incorporated by *29 U.S.C.S. § 626*(b), in ADEA actions, by facilitating notice to potential plaintiffs.

*Civil Procedure > Class Actions > Judicial Discretion*

*Labor & Employment Law > Wage & Hour Laws > Coverage & Definitions*

*Civil Procedure > Class Actions > Prerequisites*
[HN2]In order to warrant court-facilitated notice, the court as a threshold issue must make some determination that the case is one in which an Fair Labor Standards Act, *29 U.S.C.S. § 216*(b), class may be certified -- that is, that the case is appropriate for class treatment.

**COUNSEL:** For RICHARD BURNS, DAVID KRUGER, FRED VOYTOVICH, TODD SHERIDAN, JACOB MANN, TIM WERNER, TODD SCHMIDT, JAMES ZYGMUNT, JIM LUBENO, BRUCE FREEMAN, TERRY LUTZ, plaintiffs: John William Billhorn, John W. Billhorn, P.C., Chicago, IL.

For VILLAGE OF WAUCONDA, THE, JAMES ESCHENBANCH, FRED DIERKER, defendants: Lawrence R. Moelmann, Hinshaw & Culbertson, Chicago, IL.

For VILLAGE OF WAUCONDA, THE, JAMES ESCHENBANCH, FRED DIERKER, defendants: Rudolph F. Magna, Jr., Magna and Johnson, Gurnee, IL.

**JUDGES:** SIDNEY I. SCHENKIER, United States Magistrate Judge.

**OPINIONBY:** SIDNEY I. SCHENKIER

**OPINION: MEMORANDUM OPINION AND ORDER**

Plaintiffs, all of whom are employees of the Public Works Department of the Village of Wauconda ("the Village"), have initiated this lawsuit alleging that certain payment policies implemented within that department are in violation of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. § 201, et seq.*, [*2] and the Portal-To-Portal Pay Act, *29 U.S.C. § 251, et seq.* By an order dated May 18, 1999, the district court denied without prejudice plaintiffs' first motion to authorize notice to potential class members. In its order, the district court concluded that the allegation in the complaint that defendants have "applied the policy of compensation complained about herein on a general employee-basis" was sufficient to trigger broad notice to Village employees outside of the Public Works Department, on the view that after discovery the Court would revisit the issue and be in a position to make a meaningful determination of who should be in the class. The Court nonetheless denied without prejudice plaintiffs' motion to send notice, because the form plaintiffs proposed to use was defective.

On June 25, 1999, the parties, pursuant to *28 U.S.C. § 636*(c), consented to the jurisdiction of this Court for all purposes, including the entry of final judgment. Presently pending before the Court are two motions. Plaintiff has filed a second motion to begin notice to the plaintiff class, attempting to correct the defects which led to the denial of [*3] the first motion (doc. # 22-1); and (2) defendants have moved to reconsider the district court's ruling that it is appropriate at this time to send notice to potential class members (doc. # 29-1). For the reasons set forth below, defendants' motion to reconsider is *granted*; plaintiffs' renewed motion to send class notice is *denied*.

**I.**

[HN1]The FLSA authorizes a plaintiff to bring an action on "behalf of himself and other employees similarly situated." *29 U.S.C. § 216*(b). This language has been recognized as authorizing representative, or "class," actions to enforce rights under the FLSA. *Woods v. New York Life Insurance Co., 686 F.2d 578 (7th Cir. 1982).*

However, Section 216(b) goes on to specify that no person may be included in an FLSA class action "unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." In *Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 169, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989),* the Supreme Court held that "district courts have discretion, in appropriate cases, to implement *29 U.S.C. § 216*(b) (1982 ed.), as incorporated [*4] by *29 U.S.C. § 626*(b) (1982 ed.), in ADEA actions, by facilitating notice to potential plaintiffs." n1 In so doing, the Supreme Court expressly stated that it confirmed "the existence of the trial court's discretion, not the details of its exercise." *493 U.S. at 170.*

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 *Hoffman-LaRoche* presented a claim under the Age Discrimination in Employment Act ("ADEA"). However, because the ADEA incorporates the FLSA enforcement provisions of the FLSA, cases decided under the ADEA are relevant to the issue before the Court in this case.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The question of *when* court-facilitated notice should be sent is one such detail, albeit a fundamental one. [HN2]In order to warrant court-facilitated notice, the Court as a threshold issue must make some determination that the case is one in which an FLSA class may be certified -- that is, that the case is appropriate for class treatment. Courts have taken two distinct approaches to determining whether an FLSA class should be certified (and notice given [*5] to the prospective class). *See generally Mooney v. Aramco Services Co., 54 F.3d 1207, 1212-1216 (5th Cir. 1995).*

One approach is to employ the elements required for class certification in *Rule 23 of the Federal Rules of Civil Procedure* to the extent that those elements do not conflict with Section 216. *E.g., Shushan v. University of Colorado at Boulder, 132 F.R.D. 263, 265 (D. Colo. 1990).* This approach is based on the assumption that "Congress did not intend to create a com-

pletely separate class action structure for the FLSA and ADEA context." *Mooney, 54 F.3d at 1214.* This approach recognizes that certain features of an FLSA class action are incompatible with Rule 23 (the "opt in" characteristic of a FLSA action, which binds only those who affirmatively desire to be class members, is the diametric opposite of the "opt out" provisions of Rule 23(b)(3), in which putative class members are included unless they affirmatively request exclusion). Nonetheless, under this approach, courts examine the elements required for class certification under Rule 23(a) -- numerosity, commonality, typicality, and adequacy of representation -- in determining [*6] whether to certify an FLSA class.

Rather than applying these standards of Rule 23 to FLSA actions, some courts have used a "two step analysis" to determining class certification of an FLSA action: (a) the first step, the "notice stage," involves an analysis of whether the pleadings and any affidavits which have been submitted show that notice should be given to potential class members, and (b) the second step, which usually occurs after discovery has largely been completed, presents the Court with an opportunity to determine whether the class should be decertified or restricted because various putative class members are not in fact similarly situated as required by the statute. *Mooney, 54 F.3d at 1213-14.* An example of this approach is found in *Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987).* Courts employing this approach have offered various rationales for reviewing the issue of certification of an FLSA class independent of Rule 23: (1) that the "opt out" procedure of Rule 23 is irreconcilably in conflict with the "opt in" procedure of Section 216; (2) that the failure of Congress to reference Rule 23 when discussing the class action mechanism [*7] under the FLSA shows an intent not to apply Rule 23; and (3) that the procedural safeguards of Rule 23 are unnecessary, since the FLSA class consists of only those people who affirmatively choose to "opt in." *See Shushan, 132 F.R.D. at 266-68.*

Having reviewed and considered these competing approaches, the Court is skeptical that Congress intended to render Rule 23 wholly irrelevant to the question of class certification under the FLSA. The Court agrees with the analysis in *Shushan* that the fact that one provision of an FLSA class action (the "opt in" feature) is plainly inconsistent with Rule 23 does not render all other requirements of Rule 23 automatically inapplicable. Indeed, the requirement of an FLSA class action that all putative class members be "similarly situated" to the representatives is, on its face, entirely consistent with the requirements of commonality and typicality under Rule 23(a)(2) and (3). Moreover, the fact that Congress did not refer to Rule 23 in the text of the FLSA does not necessarily reflect an intent to render Rule 23 irrelevant. Other statutory schemes (such as

the Truth In Lending Act, *15 U.S.C. § 1640,* [*8] and the Fair Debt Collection Practices Act, *15 U.S.C. § 1692)* routinely refer to the availability with class actions without specific reference to Rule 23, and yet courts have not thought that class actions under those statutory schemes may proceed independent of Rule 23 scrutiny. Finally, whether for an "opt in" or "opt out" class, the Court believes that there is merit to the argument that compliance with the elements of Rule 23 help ensure more effective case management. *Shushan, 132 F.R.D. at 267.*

While the Court believes that application of Rule 23 to FLSA class actions has much to commend it, as was true with the Fifth Circuit in *Mooney,* the Court finds it unnecessary to decide here which of the competing approaches should be employed in determining FLSA class certification. *54 F.3d at 1216.* The Court finds that under either analysis, the unverified assertion in the complaint that defendants have "applied the policy of compensation complained about herein on a general employee-wide basis" (Compl.  P 6) is insufficient to trigger a broad notice to putative class members where, as here, the defendant has offered an affidavit [*9] from a knowledgeable person indicating that the overtime policy that is applied to the Public Works Department is not broadly applicable outside that department. In the face of this sworn affidavit evidence offered by the Village, it is incumbent upon plaintiffs to offer something beyond the mere allegation of the complaint in order to warrant the broad court-assisted notice that they seek to give. In the absence of such evidence, the Court finds that plaintiffs cannot satisfy either the commonality or typicality elements of Rule 23(a), or make some separate demonstration that the employees to whom they seek to give notice are "similarly situated" to the named plaintiffs. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 In *Sperling v. Hoffman-LaRoche, Inc., 118 F.R.D. 392, 407 (D.N.J. 1988),* affirmed in part and appeal dismissed in part, *862 F.2d 439 (3d Cir. 1988), affirmed and remanded, 493 U.S. 165 (1989)* the district court ordered the issuance of notice to putative class members in a case where both the representative plaintiffs and the other putative class members all had been subject to the same alleged wrongful conduct -- a reduction in force that allegedly violated the ADEA. Thus, *Sperling* dealt with a situation where there was no dispute that all putative class members were subject to the same alleged conduct; by contrast, plaintiffs have offered no evidence at this point

to indicate that is the case here.

- - - - - - - - - - - - End Footnotes- - - - -
- - - - - - - -

[*10]

At bottom, the Court agrees with the observation in *Shushan, 132 F.R.D. at 268:* "I cannot accept the extraordinary assertion that an agreed party can file a complaint, claiming to represent a class whose preliminary scope is defined by him, and by that act alone obtain a court order which conditionally determines the parameters of the potential class and requires discovery concerning the members of that class." For the foregoing reasons, the Court grants defendants' motion to reconsider the May 18, 1999 order authorizing dissemination of class notice and, upon reconsideration, denies the motion without prejudice as premature.

## II.

Although this ruling renders moot plaintiffs' second motion to begin notice to the plaintiff class, the Court notes its agreement with defendants that the form of the notice is defective. The proposed notice states that the Village "admits that certain federal laws regarding compensation were not complied with," despite the fact that in its answer to the complaint, the Village denied the allegation that Village employees were or

are being denied overtime as required by the FLSA (Ans. to Compl., P 6). The proposed notice asks for responses [*11] to be sent to plaintiffs' counsel and not the Court, as the Court has found in the past to be more appropriate. *See Garcia v. Elite Labor Service, Ltd., 1996 U.S. Dist. LEXIS 9824,* at *15-16 (N.D. Ill., 7/12/96). And, the proposed notice should state more clearly that in some circumstances, the Court in its discretion may award damages in an amount *up to* double the amount of wages found due and owing. For these reasons, even if the motion to send notice were not moot, the Court would decline to authorize distribution of the current form of plaintiffs' proposed notice.

## CONCLUSION

Defendants' motion for reconsideration (doc. # 29-1) is granted and, upon reconsideration, the Court denies without prejudice plaintiffs' request to send notice to the plaintiffs' class. In light of this ruling, plaintiffs' second motion to begin notice to members of the plaintiff class (doc. # 22-1) is denied as moot.

**ENTER:**

**SIDNEY I. SCHENKIER**

**United States Magistrate Judge**

**Dated: July 14, 1999**

2002 U.S. Dist. LEXIS 4163; 147 Lab. Cas. (CCH) P34,632

LAURA D. HALL, On Behalf of Herself and Others Similarly Situated, Plaintiff, v. LINDA L. BURK, M.D., Defendant.

Civil No. 3:01-CV-2487-H

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

2002 U.S. Dist. LEXIS 4163; 147 Lab. Cas. (CCH) P34,632

March 11, 2002, Decided
March 11, 2002, Filed; March 12, 2002, Entered

**DISPOSITION-1:** [*1] Plaintiff's Motion for Notice and for Limited Discovery DENIED. Plaintiff's Motion to Void Releases, for Corrective notice and for Limited Discovery DENIED. Plaintiff's Motion for a Protective Order DENIED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employee alleged a violation of the Fair Labor Standards (FLSA), *29 U.S.C.S.* §§ *201* et seq., on behalf of herself and other similarly situated former and current employees of defendant employer. The employee also moved for notice and limited discovery, to void releases, for corrective notice and for a protective order.

**OVERVIEW:** The employee worked for the employer for a period of years. She asserted that other employees did not receive overtime payments in accordance with the FLSA. The employer argued that the employee did not make the requisite showing that this suit was proper for class treatment under the FLSA. The court found that the employee failed to present sufficient evidence that similarly situated employees existed. Her unsupported assertions of widespread violations were not sufficient to meet the employee's burden. The employee did not submit affidavits or even names of potential employees. The employer provided that she underpaid her employees, but also explained that she has reimbursed almost all of them after realizing her errors. Therefore, it was unclear whether there existed potential plaintiffs that satisfy the similarly situated requirement for class action suits. The employee completely failed to make a showing under substantial similarity test, except for the conclusory allegations provided in the complaint and therefore failed the test. Furthermore, the court found that the employee lacked standing to assert a claim of the putative plaintiffs.

**OUTCOME:** The employee's motions were denied.

**CORE TERMS:** notice, similarly situated, discovery, protective order, fluctuating, workweek, salary, overtime, class action, opt-in, former employees, corrective, hourly rate, calculated, void, putative, regulations provide, sufficient evidence, current employees, time and a half, failed to pay, hours worked, certification, conclusory, one-half, owed, reasons stated, settlements, learning, approve

## LexisNexis(TM) Headnotes

*Labor & Employment Law > Wage & Hour Laws > Overtime & Work Period*
[HN1]See *29 C.F.R.* § *778.114(a)*.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Civil Procedure > Class Actions > Prerequisites*
[HN2]The Fair Labor Standards Act, specifically *29 U.S.C.S.* § *216*(b), provides that a suit may be instituted by one or more employees for or in behalf of himself or themselves and other employees similarly situated. This type of class action, also called a collective or representative action, is different from a *Fed. R. Civ. P. 23* class action in that the members of the class are permitted to opt-in rather than opt-out of the class. Rule 23 and *29 U.S.C.S.* § *216*(b) class actions are mutually exclusive and irreconcilable and those who choose not to opt-in to an class action under § 216(b) are not bound by and may not benefit from the judgment.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Civil Procedure > Class Actions > Prerequisites*
[HN3]In Sperling, the United States Supreme Court provides that district courts have discretion to authorize notice to similarly situated employees that they may opt-in to a class, but that notice is by no means mandatory. The relevant inquiry then is not whether a court has discretion to facilitate notice, but whether the case is an appropriate case in which to exercise discretion. Although Sperling addresses whether district courts have this discretion in Age Discrimination in Employment Act (ADEA), *29 U.S.C.S.* § *621* et seq., cases, the ADEA incorporates § 216(b) of the Fair Labor Standards Act (FLSA), *29 U.S.C.S.* § *201* et seq., In addition, other courts have held that the analysis in Sperling and other ADEA cases involving questions of the opt-in process should be applied to cases solely based on the FLSA.

*Civil Procedure > Class Actions > Judicial Discretion*

2002 U.S. Dist. LEXIS 4163; 147 Lab. Cas. (CCH) P34,632

[HN4]The determination of whether a court should exercise its discretion to authorize notice to similarly situated employees in a potential class action, involves the analysis of two tests, neither one of which carries more weight than the other. The first test involves a two prong analysis. First, a court must make an initial inquiry into whether a plaintiff has provided sufficient evidence that similarly situated potential plaintiffs exist. At this stage, a court uses a lenient standard to determine whether similarly situated persons exist, and if a court determines that certification is appropriate, then it usually conditionally certifies the class. Second, a court reexamines the class after notice, time for opting-in, and discovery have taken place. If a court finds that the class is no longer made up of similarly situated persons, then it may decertify the class. This inquiry is usually conducted upon a motion filed by a defendant.

*Civil Procedure > Class Actions > Judicial Discretion*
[HN5]Unsupported assertions of widespread violations are not sufficient to meet a plaintiffs burden that similarly situated plaintiffs exist in the class action context. Courts have found class certification appropriate where potential plaintiffs are identified. Other courts have looked to affidavits of potential plaintiffs.

*Civil Procedure > Class Actions > Prerequisites*
[HN6]The requirements for class actions under *Fed. R. Civ. P. 23(c)* are numerosity, commonality, typicality, and adequacy of representation.

*Governments > Courts > Judicial Precedents*
[HN7]A court has a responsibility to avoid the stirring up of litigation through unwarranted solicitation.

*Civil Procedure > Justiciability > Standing*
[HN8]To establish standing, first, a plaintiff must have suffered an injury in fact: an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of: the injury has to be fairly traceable to the challenged action of a defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Civil Procedure > Class Actions*

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Affirmative Defenses*
[HN9]Courts have voided releases where signatories of the releases are plaintiffs in the class action.

*Civil Procedure > Pleading & Practice > Service of Process*
[HN10]A court has authority to intervene in the notice process.

**COUNSEL:** For LAURA D HALL, plaintiff: Brady Edwards, Attorney at Law, Edwards & George, Houston, TX USA.

For LINDA L BURK, MD, defendant: Keith Clouse, Attorney at Law, Clouse & Associates, Lisa Greenwood Duffee, Attorney at Law, McClure Duffee & Eitzen, Dallas, TX USA.

**JUDGES:** BAREFOOT SANDERS, SENIOR JUDGE, UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF TEXAS.

**OPINIONBY:** BAREFOOT SANDERS

**OPINION: MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff's Expedited Motion for Notice to Potential Plaintiffs and Limited Expedited Discovery, filed February 7, 2002; and Defendant's Response thereto, filed February 19, 2002. Also before this Court is Plaintiff's Expedited Motion to Void Releases, for Corrective Notice, for Protective Order, and for Limited Expedited Discovery, filed February 12, 2002; and Defendant's Response thereto, filed February 22, 2002. Upon review of the pleadings, briefs, and relevant authorities, the Court is of the opinion for the reasons stated below that [*2] Plaintiff's Motion for Notice and for Limited Discovery should be **DENIED**, that Plaintiff's Motion to Void Releases, for Corrective notice and for Limited Discovery should also be **DENIED**, and that Plaintiff's Motion for a Protective Order should be **DENIED**.

**I. BACKGROUND**

Plaintiff alleges a violation of the Fair Labor Standards Act of 1938 ("FLSA"), *29 U.S.C. §§ 201*, et seq., on behalf of herself and other similarly situated former and current employees of the Defendant. (Compl. at 1). Defendant is an ophthalmologist who maintains two offices in Dallas, Texas. (Resp. Mot for Notice at 2). Plaintiff states that she began working for the Defendant in April 2000 and that the Defendant failed to pay her and other similarly situated employees the required time and a half for hours worked in excess of forty hours per week. (Compl. at 2). Plaintiff states that she and others were employed on a fluctuating workweek basis. *See 29 C.F.R. § 778.114(a)* (2001). [HN1]The requirements for a "fixed salary for fluctuating hours" plan are: (1) the employee's hours of work fluctuate from week to week; (2) there is a mutual understanding [*3] between the employee and employer that the salary will constitute straight time pay for the hours worked; and (3) the amount of salary is sufficient to provide compensation to the employee at a rate not

2002 U.S. Dist. LEXIS 4163; 147 Lab. Cas. (CCH) P34,632

less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he or she works is greatest. *Id.* The regulations provide that overtime pursuant to a fluctuating workweek plan is calculated at one-half the rate in addition to salary. *See 29 C.F.R. § 778.114(a)* (2001). Plaintiff alleges that pursuant to the agreement she had with the Defendant, her salary should have been $ 13 per hour or $ 520 per week. n1 Plaintiff states, however, that Defendant failed to pay this base salary and therefore, she should have received overtime payments calculated at one and one-half times her "hourly" rate because Defendant failed to comply with the requirements for a fluctuating workweek plan.

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - - -

n1 Plaintiff's statement that she was paid $ 13 per hour is puzzling. The regulations provide that under the fluctuating workweek plan, the hourly rate would change from week to week depending on the number of hours an employee worked. For example, an employee whose salary is $ 250 per week and "during the course of 4 weeks [] works 40, 44, 50, and 48 hours, [would have a] regular hourly rate of pay in each of these weeks [of] approximately $ 6.25, $ 5.68, $ 5, and $ 5.21." *29 C.F.R. § 778.114(b)* (2001). Therefore, if Plaintiff was truly a fluctuating workweek employee, she would not have an hourly rate. Nevertheless, Defendant does not contest Plaintiff's assertions and admits that Plaintiff is owed overtime. (Resp. at 3).

- - - - - - - - - - - - End Footnotes- - - - - -
- - - - - - - - -

[*4]

Plaintiff asserts that other employees did not receive overtime payments in accordance with the FLSA. In furtherance of this claim, Plaintiff requests (1) the Court order that notice be provided to similarly situated employees under *29 U.S.C. § 216*(b); (2) Court approval of the dissemination notice; and (3) limited discovery of the name, address, telephone number, date of birth, and social security number of all similarly situated employees. Defendant argues that Plaintiff has not made the requisite showing that this suit is proper for class treatment under the FLSA.

In addition, after learning of Plaintiff's claims, Defendant alleges that she paid and obtained overtime releases from other employees to whom she owed overtime pay. (Resp. Mot. to Void Releases at 3). Plaintiff contends that (1) the releases are void; (2) that the Court must

approve corrective notice; (3) that a Protective Order issue to prevent Defendant from contacting putative members; and (4) that the Court permit limited discovery. Defendant contends that Plaintiff lacks standing to pursue voiding the releases and that corrective notice is unnecessary in this case.

## II. ANALYSIS

### A. Motion [*5] for Notice and Limited Discovery

[HN2]The FLSA provides that a suit may be instituted "by one or more employees for or in behalf of himself or themselves and other employees similarly situated." *29 U.S.C. § 216*(b). This type of class action, also called a collective or representative action, is different from a *FED. R. CIV. P. 23* class action in that the members of the class are permitted to "opt-in" rather than "opt-out" of the class. *See Mooney, et al. v. ARAMCO Servs. Co., et al., 54 F.3d 1207, 1212 (5th Cir. 1995)*. Rule 23 and § 216(b) class actions are "mutually exclusive and irreconcilable" and those who choose not to opt-in to an class action under § 216(b) are not bound by and may not benefit from the judgment. *LaChapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288-89 (5th Cir. 1975)*.

[HN3]The Supreme Court has provided that District Courts have discretion to authorize notice to similarly situated employees that they may opt-in to a class, but that notice is by no means mandatory. *See Hoffman - La Roche, Inc. v. Sperling, 493 U.S. 165, 169, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989); see also Camper, et al. v. Home Quality Mgmt., Inc., 200 F.R.D. 516, 519 (D. Md. 2000)* [*6] ("The relevant inquiry then is not whether the Court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise discretion."). Although *Sperling* addressed the issue of whether District Courts have this discretion in Age Discrimination in Employment Act ("ADEA") cases, the ADEA incorporates § 216(b) of the FLSA. *See 493 U.S. at 167*. In addition, other courts have held that the analysis in *Sperling* and other ADEA cases involving questions of the opt-in process should be applied to cases solely based on the FLSA. *See H & R Block, Ltd. v. Housden & Beard, 186 F.R.D. 399, 400 (E.D. Tex. 1999); see also Garner v. G.D. Searle Parmaceuticals & Co., 802 F. Supp. 418, 422 (M.D. Ala. 1991)*.

[HN4]The determination of whether this Court should exercise its discretion involves the analysis of two tests, neither one of which carries more weight than the other. *See Mooney, 54 F.3d 1207, 1216 (5th Cir. 1995)*. The first test derives from *Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987)* and involves a two prong analysis. First, the Court must make an initial inquiry into whether the Plaintiff [*7] has pro-

Page 45

2002 U.S. Dist. LEXIS 4163; 147 Lab. Cas. (CCH) P34,632

vided sufficient evidence that similarly situated poten-
tial Plaintiffs exist. *See Mooney, 54 F.3d at 1213-14.*
At this stage, the Court uses a lenient standard to de-
termine whether similarly situated persons exist, and if
the Court determines that certification is appropriate,
then it usually "conditionally certifies" the class. *See
id at 1214.* Second, the Court reexamines the class
after notice, time for opting-in, and discovery have
taken place. *See id.* If the Court finds that the class is
no longer made up of similarly situated persons, then
it may decertify the class. *See id.* This inquiry is usu-
ally conducted upon a motion filed by the Defendant.
*See id.*

In pursuit of the first inquiry, this Court finds that
Plaintiff failed to present sufficient evidence that sim-
ilarly situated Plaintiffs exist. [HN5]Unsupported as-
sertions of widespread violations are not sufficient to
meet Plaintiffs burden. *See Haynes v. Singer Co.,
Inc., 696 F.2d 884, 887 (11th Cir. 1983).* Some
Courts have found class certification appropriate where
potential Plaintiffs were identified. *See Garner &
Karn v. G.D. Searle Pharmaceuticals, 802 F. Supp.
418, 422 (M.D. Ala. 1991).* [*8] Other Courts have
looked to affidavits of potential plaintiffs. *See Belcher
v. Shoney's, Inc., 927 F. Supp. 249, 252 (M.D. Tenn.
1996).* Here, however, Plaintiff has not submitted affi-
davits or even names of potential Plaintiffs. Plaintiff's
only proof of a widespread violation of the FLSA is
the conclusory allegation that all the employees "were
subjected to improper deductions from what should be
their fixed salaries." (Resp. Mot. for Notice at 2).
Defendant provides that she underpaid her employees,
but also explains that she has reimbursed almost all of
them after realizing her errors. n2 Therefore, it is un-
clear whether there exist potential Plaintiffs that satisfy
the "similarly situated" requirement. Plaintiff fails to
address this issue and the Court cannot approve even
conditional certification without more of a showing.

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n2 Defendant asserts that:

> Upon learning of Hall's claim
> that she was improperly paid,
> Dr. Burk's office administra-
> tor conducted an audit of the
> practice's payroll records and
> calculated the amount each cur-
> rent and former employee should
> have been paid with overtime
> paid at time and a half. All
> current employees have received
> payment for the full difference
> between what they were paid
> and what they should have been
> paid. With respect to former

> employees, notices were sent
> to all of them and as of the date
> of this Response, checks have
> been mailed to seven (7) of the
> eleven (11) former employees.
> Two more have signed for the
> letter but not yet requested checks.
> Two others have either not claimed
> their letters or they have been
> returned for forwarding. The
> total amount paid to all cur-
> rent and former employees is
> approximately $ 11,500.

(Resp. Mot. for Notice at 3).

- - - - - - - - - - - - - End Footnotes- - - - -
- - - - - - - -

[*9]

The second test used by the Court in *Shushan v. Uni-
versity of Colorado, 132 F.R.D. 263, 265 (D. Colo.
1990)* is composed of [HN6]the requirements of *FED.
R. CIV. P. 23(c),* i.e. "numerosity," "commonality,"
"typicality," and "adequacy of representation." Plain-
tiff has completely failed to make a showing under this
test, except for the conclusory allegations provided in
the Complaint and therefore fails this test. *See H & R
Block, Ltd., 186 F.R.D. at 401.*

[HN7]This Court has a "responsibility to avoid the
'stirring up' of litigation through unwarranted solicita-
tion." *Severtson v. Phillips Beverage Co., 137 F.R.D.
264, 266-67 (D. Minn. 1991).* At this time, Plain-
tiff has failed to provide factual evidence in support
of either test and therefore Plaintiff's Motion for No-
tice should be **DENIED without prejudice.** Given
the Court's reasons as stated above, it is unnecessary
to reach the merits of Plaintiff's request for limited
discovery and it is also **DENIED.**

**B. Motion to Void Releases, for Corrective Notice,
and for Limited Expedited Discovery**

Subsequent to filing the Motion for Notice and Limited
Discovery, Plaintiff filed an [*10] Expedited Motion
to Void Releases, for Corrective Notice, for Protec-
tive Order, and for Limited Expedited Discovery. This
Motion addresses the validity of "releases" signed by
current and former employees of the Defendant in ex-
change for receipt of back pay. Without addressing
the merits of Plaintiff's argument that the releases are
void, this Court finds that Plaintiff lacks standing to
assert a claim of the putative Plaintiffs' (i.e. the other
employees) settlements. [HN8]To establish standing,

> First, the Plaintiff must have suffered an
> 'injury in fact' -- an invasion of a legally
> protected interest which is (a) concrete and
> particularized (citations omitted); and (b)

Page 46

2002 U.S. Dist. LEXIS 4163; 147 Lab. Cas. (CCH) P34,632

'actual or imminent, not 'conjectural' or 'hypothetical' (citations omitted). Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the Court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1991).* **[*11]** In this case, Plaintiff has not established an injury caused by the putative Plaintiffs' settlements. [HN9]Courts have voided releases where signatories of the releases were Plaintiffs in the class action, but the only Plaintiff here has not signed a release. *See O'Brien v. Encotech Constr. Servs., Inc., 203 F.R.D. 346, 349 (N.D. Ill. 2001)* ("Plaintiffs assert that two named Plaintiffs . . . have signed releases, and both wish to be part of the current action. Therefore, standing and ripeness are not impediments to the filing of a motion to declare their releases void."). The Court finds that Plaintiff does not have standing to contest the releases and therefore, Plaintiff's Motion to Void Releases is **DENIED.**

Given this ruling, the Motion for Corrective Notice and for Limited Discovery is also **DENIED.**

### C. Motion for Protective Order

Plaintiff's two-sentence, conclusory request for a protective order should be denied. [HN10]This Court has authority to intervene in the notice process, see *O'Brien, 203 F.R.D. at 348,* but the reasons cited by the Plaintiff are insufficient to warrant issuing a Protective Order at this time. Plaintiff's Motion for Protective **[*12]** Order is hereby **DENIED without Prejudice.**

### III. CONCLUSION

Given the Court's reasons stated above, Plaintiff's Motion for Notice and for Limited Discovery is **DENIED,** Plaintiff's Motion to Void Releases, for Corrective notice and for Limited Discovery is also **DENIED,** and Plaintiff's Motion for a Protective Order is **DENIED.**

SO ORDERED.

DATED: March 11, 2002.

BAREFOOT SANDERS, SENIOR JUDGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF TEXAS

186 F.R.D. 399; 1999 U.S. Dist. LEXIS 10468

H&R BLOCK, LTD., PLAINTIFF vs. BRENDA HOUSDEN AND KAREN K. BEARD, DEFENDANTS

No. 1:97-CV-0646

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, BEAUMONT DIVISION

186 F.R.D. 399; 1999 U.S. Dist. LEXIS 10468

June 23, 1999, Decided
June 23, 1999, Opinion Filed

**DISPOSITION-1:** [**1] Counter-plaintiffs' Motion for Approval of Notice of Pending Action and Right to Participate DENIED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant employees, who sought to bring a collective action against defendant employer under the Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq., moved for approval of notice of pending action and right to participate under *29 U.S.C.S. § 216*(b).

**OVERVIEW:** Plaintiff employer filed suit against two defendant employees for violation of non-competition and non-solicitation clauses in their employment contracts. Defendants counterclaimed for failure to pay overtime in violation of the Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq. Defendants moved for approval of notice of pending action and right to participate under *29 U.S.C.S. § 216*(b). Under this motion, defendants sought to bring a collective action on behalf of themselves and other employees similarly situated. The court denied the motion. Defendants had not satisfied the requirements of either of two methods for certifying class actions pursuant to *29 U.S.C.S. § 216*(b). Under the "two-step" method, defendants failed to present sufficient evidence that similarly situated employees existed. Defendants had only submitted affidavits making conclusory allegations. They had not identified potential plaintiffs, submitted affidavits of potential plaintiffs, or submitted any other evidence to show that widespread discrimination existed. Defendants also failed under the "spurious" method to present evidence of numerosity, commonality, typicality, or adequacy of representation.

**OUTCOME:** The court denied defendants' motion for approval of notice of pending action and right to participate in their proposed class action against plaintiff employer. Defendants had failed under both the "two-step" method and the "spurious" method to present sufficient evidence that similarly situated employees existed.

**CORE TERMS:** movants, class action, two-step, similarly situated, first step, counter-plaintiff, spurious, opt-in, Fair Labor Standards Act, failed to present, unsupported, putative

**LexisNexis(TM) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Civil Procedure > Class Actions > Prerequisites*
[HN1]Under the "two-step" method of class certification under *29 U.S.C.S. § 216*(b), there are two phases a court considers. First, the court must decide whether a party has presented significant evidence that similarly situated potential plaintiffs exist. This decision is made after the plaintiff has petitioned for judicially-certified notification of putative class members and come forward with competent evidence suggesting that such class members exist. Second, the court must provide adequate time for other parties to opt-in and for discovery to be conducted, at which point the court considers, generally upon defendant's motion, whether the action should be decertified. If the court decides that a collective class action is inappropriate, then it dismisses the opt-in plaintiffs and the case proceeds on the named plaintiffs' individual claims.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Civil Procedure > Class Actions > Prerequisites*
[HN2]Although the standard for satisfying the first step of the "two-step" method of class certification under *29 U.S.C.S. § 216*(b) is lenient, a court still requires at least substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination. Courts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread discriminatory plan was submitted.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*
[HN3]Unsupported assertions of widespread Federal Labor Standard Act (FLSA) violations do not satisfy the movant's burden under § 216(b) of the FLSA.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Civil Procedure > Class Actions > Prerequisites*

186 F.R.D. 399; 1999 U.S. Dist. LEXIS 10468

[HN4]Under the "spurious" method of class certification under *29 U.S.C.S. § 216*(b), a court considers factors similar to those considered in *Fed. R. Civ. P. 23(c)* cases, that is, "numerosity," "commonality," "typicality," and "adequacy of representation," to determine whether a class should be certified.

COUNSEL: For PLAINTIFF: STEPHANIE DONEAN SURRATT, JOHN W. NEWTON III, J.HOKE PEACOCK II, HOWARD L. CLOSE, ORGAIN BELL & TUCKER, BEAUMONT, TX.

For DEFENDANT: WILLIAM H. YOES, BEAUMONT, TX.

JUDGES: HOWELL COBB, UNITED STATES DISTRICT JUDGE.

OPINIONBY: HOWELL COBB

OPINION: [*399] MEMORANDUM OPINION

Before this Court is a Motion for Approval of Notice of Pending Action and Right to Participate. This is essentially a motion to alert potential class members of the ongoing suit pursuant to *29 U.S.C. § 216*(b)(hereinafter Section 216(b)). Unlike the standard form of bringing a class action, namely *Federal Rule of Civil Procedure 23(c)*, Section 216(b) provides parties bringing a claim under the Fair Labor Standards Act (FLSA) with an opt-in, rather than an opt-out, procedure.

[*400] BACKGROUND

In March 1997, Plaintiff H&R Block filed suit in state court against Defendants Karen K. Beard and Brenda Housden for violation of non-competition and non-solicitation clauses contained in their respective employment contracts. In October 1997, Beard and Housden brought a counterclaim against plaintiff [**2] alleging failure to pay overtime in violation of the Fair Labor Standards Act, codified at *29 U.S.C. § 201 et seq.* Beard and Housden now seek to maintain a Section 216(b) collective action on behalf of "themselves and other employees similarly situated" as provided by § 216(b) of the FLSA.

ANALYSIS

The circuits have developed two approaches to certifying class actions brought pursuant to § 216(b). The Fifth Circuit has expressly refused to endorse either method over the other. *Mooney v. Aramco Services, 54 F.3d 1207, 1216 (5th Cir. 1995).* This Court will therefore look at plaintiff's claim from within the context of both.

[HN1]According to the first method, developed in *Lusardi v. Xerox Corp., 118 F.R.D. 351 (D. N.J. 1987)* and known as the "two-step" method, the court considers certification in two phases. First, the court must decide whether the plaintiff has presented significant

evidence that similarly situated potential plaintiffs exist. This decision is made after the plaintiff has petitioned for judicially- certified notification of putative class members and come forward with competent evidence suggesting that such [**3] class members exist. *Mooney, 54 F.3d at 1213-14.*

Second, the court must provide adequate time for other parties to opt-in and for discovery to be conducted, at which point the court considers, generally upon defendant's motion, whether the action should be decertified. If the court decides that a collective class action is inappropriate, then it dismisses the opt-in plaintiffs and the case proceeds on the named plaintiffs' individual claims. *Id. at 1214.*

Following the two-step approach, this court finds that counter-plaintiff has failed to present sufficient evidence that similarly situated plaintiffs exist, and therefore failed to pass the first step of the test. [HN2]Although the standard for satisfying the first step is lenient *(see Id. at 1214)*, the court still requires at least "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Id. at 1214 n.8* (citing *Sperling v. Hoffmann-La Roche, Inc., 118 F.R.D. 382 at 407).* Courts who have faced the question of whether movants established substantial allegations have [**4] considered factors such as whether potential plaintiffs were identified ( *Garner v. G.D. Searle Pharmaceuticals, 802 F. Supp. 418 (M.D. Ala. 1991)*); whether affidavits of potential plaintiffs were submitted ( *Belcher v. Shoney's, Inc., 927 F. Supp. 249, 252 (M.D. Tenn. 1996)*); and whether evidence of a widespread discriminatory plan was submitted ( *Klegerman v. F.G. Apparel Inc., 1986 U.S. Dist. LEXIS 29447, 1986 WL 2531, *5 (N.D. Ill. Feb. 10, 1986)*). In this case, movants have failed to do all of the above. They have failed to identify potential plaintiffs, submit affidavits of potential plaintiffs or submit any other evidence that might show a widespread plan of discrimination existed.

All movants have done is submit affidavits making conclusory allegations. They present, for example, affidavits of the two counter-plaintiffs which simply state that they believe other workers were discriminated against in similar ways (see Affidavit of Karen Beard, p. 2 and Affidavit of Brenda Housden, p. 2). In 1983, the 11th Circuit ruled that [HN3]unsupported assertions of wide-spread FLSA violations, such as the ones made here, did not satisfy the movant's 216(b) burden. *Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir. 1983).* [**5] Likewise, in 1995 a district court in Maryland determined that even where potential plaintiffs were listed, a factual showing suggesting that they were similarly situated was required. *D'Anna*

186 F.R.D. 399; 1999 U.S. Dist. LEXIS 10468

*v. M/A-Com, Inc., 903 F. Supp. 889, 894 (D. Md. 1995)*. Movants in this case make no such factual showing, nor do they go beyond the level of making unsupported factual assertions. Consequently, under the "two-step" approach, their petition fails to satisfy the requirements of the first step.

Apart from the "two-step" approach, there is one other method by which Section 216(b) class actions can be certified. This method, employed by the district court in *Shushan v.* **[*401]** *University of Colorado, 132 F.R.D. 263 (D.Colo. 1990)*, derives from the "spurious" class action procedure previously eliminated from *Fed.R.Civ.P. 23*. *Mooney, 54 F.3d at 1214*. [HN4]Under this approach, the court considers factors similar to those considered in Rule 23(c) cases, i.e. "numerosity," "commonality," "typicality," and "adequacy of representation," to determine whether a class should be certified. *Id.* Movants in this case have completely failed to present a factual showing on

**[**6]** these matters and, consequently, fail the "spurious" class action test.

In deciding whether the movants of this case have met the requirements of either the "spurious" class action procedure or the "two-step" approach, this court is mindful that it, like practicing attorneys, has a responsibility to refrain from stirring up unwarranted litigation. *D'Anna, 903 F. Supp. at 894*. Further, "employers should not be unduly burdened by a frivolous fishing expedition conducted by the plaintiff at the employer's expenses." *Id.* For this reason, and for the reasons set forth above, counter-plaintiffs' Motion for Approval of Notice of Pending Action and Right to Participate should be DENIED.

SIGNED this 23rd day of June, 1999.

HOWELL COBB

UNITED STATES DISTRICT JUDGE

2002 U.S. Dist. LEXIS 18539

OSCAR MADRID and EWART JOHNNY, Individually, On Behalf of All Others Similarly Situated and as Class Representatives, Plaintiffs, -against-MINOLTA BUSINESS SOLUTIONS, INC., Defendant.

02 CV 2294 (GBD)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2002 U.S. Dist. LEXIS 18539

October 1, 2002, Decided
October 2, 2002, Filed

**NOTICE:** THIS OPINION WAS WITHDRAWN BY THE COURT

**SUBSEQUENT HISTORY:** Opinion withdrawn by, 11/26/2003

**DISPOSITION-1:** [*1] Plaintiffs' motion for permission to distribute notice of class action denied without prejudice.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, technicians employed by defendant employer, instituted an action alleging they were denied compensation for overtime work performed by them in violation of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C.S. §§ 201 et seq., and state labor laws. They moved for an order granting them permission to serve notices of the pendency of the collective action and opt-in consent forms to potential plaintiffs.

**OVERVIEW:** The technicians submitted an affidavit from a dispatcher for the employer who worked with them. She maintained that technicians regularly had meetings before the start of the day, ordinarily worked through lunch, and were given assignments that could not be completed without incurring overtime. They also alleged the employer's vice-president had stated in a deposition that the same pay practices and policies were followed at all offices. However, the employer filed contrary affidavits. The court found the dispatcher lacked any basis for knowledge of the technicians' pay scale, and that the vice-president's statement was not submitted in deposition excerpt form, and was not persuasive. It held the technicians had not met the light burden to serve notice to the potential class.

**OUTCOME:** The motion to serve notice on potential plaintiffs was denied without prejudice.

**CORE TERMS:** technician, overtime, similarly situated, overtime compensation, nationwide, collective action, dispatcher, sheets, compensated, premium, region, lunch, customer, opt-in, notice, overtime pay, hours worked, supervisors, inaccurate, paralegal, putative, manager, payroll

**LexisNexis(TM) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Overtime & Work Period*
[HN1]Section 216(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.S. § 201 et seq., authorizes an employee to bring an action against his or her employer for unpaid overtime compensation and liquidated damages on behalf of themselves and other employees similarly situated. 29 U.S.C.S. § 216(b). In order for an employee to opt-in to the lawsuit, he or she must file a written consent to become a party plaintiff. The court is vested with the discretionary authority, in appropriate cases, to permit such notice to potential plaintiffs. To warrant the exercise of the court's discretion, it is incumbent upon the plaintiffs to demonstrate that the potential members in the collective action are similarly situated. To meet this burden of proof, plaintiffs must make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. Plaintiffs' burden is not a stringent one. The court must merely be satisfied that there is a factual nexus between the named plaintiffs' situation and the situation of the other former and current employees.

**COUNSEL:** For OSCAR MADRID, EWART JOHNNY, plaintiffs: Robert D. Lipman, David A. Robins, Lipman & Plesur, L.L.P., Jericho, NY.

For MINOLTA BUSINESS SOLUTIONS, INC., defendant: Marc S. Wenger, Paul J. Siegel, Jackson Lewis LLP, Woodbury, NY.

**JUDGES:** GEORGE B. DANIELS, United States District Judge.

**OPINIONBY:** GEORGE B. DANIELS

**OPINION:** MEMORANDUM DECISION & ORDER

GEORGE B. DANIELS, District Judge:

Plaintiffs Oscar Madrid and Ewart Johnny commenced this action, on behalf of themselves and all those similarly situated, against their employer, Minolta Business Solutions, Inc., claiming, inter alia, they were denied compensation for overtime work performed by

them in violation of the Fair Labor Standards Act of 1938 (FLSA), *29 U.S.C. §§ 201 et seq.,* and New York State labor laws. Plaintiffs are now seeking an order granting them permission to send out notices of the pendency of the collective action and opt-in consent forms to potential plaintiffs, i.e., all persons employed by defendant as customer technicians or in a similarly situated capacity.

The complaint alleges that plaintiffs worked as customer technicians **[*2]** who were paid on an hourly basis. Plaintiffs allegedly were not paid overtime premium pay for all work hours in excess of forty hours in the workweek. Specifically, they claim that they were not compensated and/ or paid premium pay for certain meetings, work time improperly designated as non-compensable lunch hours, time worked after 5:00 P.M., and time spent on the weekends to purchase supplies, tools, etc.

**[HN1]**Section 216(b) of FLSA authorizes an employee to bring an action against his or her employer for unpaid overtime compensation and liquidated damages on behalf of themselves and other employees "similarly situated." *29 U.S.C. § 216(b).* In order for an employee to "opt-in" to the lawsuit, he or she must file a written consent to become a party plaintiff. Id. The court is vested with the discretionary authority, in appropriate cases, to permit such notice to potential plaintiffs. *Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169-70, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989); Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335 (2d Cir. 1978).* To warrant the exercise of the court's discretion, it is incumbent **[*3]** upon the plaintiffs to demonstrate that the potential members in the collective action are similarly situated. *Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).* To meet this burden of proof, plaintiffs must make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Realite, 7 F. Supp. 2d at 306;* see also, *Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995).* Plaintiffs' burden is not a stringent one. *Realite, 7 F. Supp. 2d at 306; Jackson, 163 F.R.D. at 431.* The court must merely be satisfied that there is a factual nexus between the named plaintiffs' situation and the situation of the other former and current employees. *Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997).*

In support of their application, plaintiffs submitted an affidavit from Zoraida Soto, a dispatcher employed by defendant at the Lexington Avenue office who worked with the named plaintiffs. She maintained that technicians regularly had meetings before the start **[*4]** of the business day, that they ordinarily worked through

lunch, and were given assignments that could not be completed by 5:00 P.M. Ms. Soto further asserted that she was not paid for all hours worked. She claimed that plaintiff Oscar Madrid frequently complained to her that he was not getting paid overtime, and she advised him "to complain to a manager, that [she was] only a dispatcher." Soto Aff. P 9. Ms. Soto alleged in a conclusory fashion that the technicians were not compensated for all the hours they worked and that the time sheets were often inaccurate. Ms. Soto contended that she complained to management about the time sheets, but that corrections were rarely made. It is unclear, however, whether Ms. Soto voiced her objections regarding her own time sheets or those belonging to the technicians. Finally, Ms. Soto alleged that it was her "understanding that the same payroll practices were followed nationwide." Soto Aff. P 12.

In further support of the motion, plaintiffs' attorney, in a letter dated August 15, 2002, sets forth his representation of the deposition testimony of Joseph Flynn, defendant's Vice President of Service. Counsel contends that Mr. Flynn testified that **[*5]** the defendant follows the same pay practices and policies at all forty-one of its branches nationwide. It is further alleged that Mr. Flynn "admitted that defendant did not properly calculate overtime premium pay because defendant excluded commissions from overtime calculations." Letter from Lipman of 8/15/02 at 2.

Defendant has submitted an affidavit of Mr. Flynn explaining the defendant's organization. Defendant is comprised of five regions, with each region having branch offices. Within each branch office there is a Branch General Manager and also a manger in charge of service. There is a Regional Vice President of Service as well. The operation of each branch is within the discretion of the management team assigned to that branch of that region. Mr. Flynn indicated that the named defendants worked at the Manhattan branch located in the Northeast Region. There are approximately 69 technicians at the Manhattan branch and Ms. Soto was responsible for dispatching only five to eight technicians. Mr. Flynn further explained that technicians, who received the requisite authorization from their supervisors to work overtime, received additional compensation. He also contended that overtime **[*6]** compensation was paid to technicians in 2000, 2001 and 2002, and attached those records as exhibits.

An affidavit from defense counsel's paralegal, Alfonse Pirozzi, was also submitted. Based on his review of the March, 1999 through September, 2000 call reports of twenty-six technicians who worked outside Manhattan, he concluded that, even assuming no technician ever had a lunch break, more than forty hours was worked in only eight weeks of the 1886 weeks reported, i.e., .42%. Mr. Pirozzi, without indicated the

source of his knowledge, claimed that for five of these eight weeks, defendant paid excess time and overtime compensation to three of the four employees who performed the overtime work. He maintained there are a total of three weeks in which payment may not have been properly paid. Mr. Pirozzi did a similar analysis with respect to twenty-one technicians who worked on Long Island for the period of April, 2002 through June, 2002. He concluded that more than forty hours was worked in only one of the 236 weeks reported, i.e., .43% and that he was informed that extra pay was not provided to that employee.

After reviewing the allegations in the complaint and the submissions [*7] of the parties n1, the Court finds that the plaintiffs fail to demonstrate that the putative members of the collective action are similarly situated. Ms. Soto's claims, that technicians in the Lexington Avenue office worked before and after their regular scheduled work day and during their lunch breaks, has no bearing on the question whether these employees received overtime compensation for the additional time worked. Moreover, it is of no consequence that Ms. Soto complained that she herself did not receive the appropriate pay. Plaintiffs seek only to join technicians as party plaintiffs, and therefore the circumstances surrounding Ms. Soto's employment as a dispatcher is irrelevant. Ms. Soto's bald assertions that technicians were not appropriately compensated for overtime performed, that time sheets were inaccurate, and that these same payroll practices were utilized nationwide merits little weight. As Ms. Soto concedes she "was only a dispatcher" and complaints regarding overtime pay should have been brought to a manager's attention.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Defendant's affidavit focusing on the actual merits of the named plaintiffs' individual claims is immaterial to the Court's determination of this motion. *Hoffmann, 982 F. Supp. at 262; Jackson, 163 F.R.D. at 432; Krueger v. New York Telephone Co., 1993 U.S. Dist. LEXIS 9988, 1993 WL 276058,* *2 (S.D.N.Y. 1993)

- - - - - - - - - - - End Footnotes - - - - - - - - - - - - -

[*8]

Similarly unpersuasive is plaintiffs' counsel's account of Mr. Flynn's deposition. Having not been provided with the relevant excerpts of the deposition transcript, the Court is unable to determine the context in which the isolated remarks were made. Mr. Flynn's alleged testimony that defendant has the same pay practices and policies at all of its branches nationwide is of no significance. This general statement must be analyzed in conjunction with Flynn's specific representation in his affidavit that the defendant's pay practice and policies include providing additional compensation to the technicians who, with their supervisor's approval, worked overtime. Moreover, plaintiffs do not indicate how Flynn's testimony regarding employees' "commissions" is at all related to calculating technicians' overtime pay. Furthermore, the analysis performed by defense's paralegal failed to disclose a nationwide or otherwise widespread policy of the defendant not to pay its technician for overtime hours worked.

In light of the foregoing, there has been no showing that defendant has a policy or practice which deprives its technicians of appropriate overtime compensation. Based on the record presently [*9] before the Court, plaintiffs have failed to demonstrate that the putative members of the collective action are similarly situated. Accordingly, plaintiffs' motion is denied without prejudice. Should further discovery disclose additional facts to support plaintiffs' application, they may renew it upon a proper showing.

Dated: New York, New York

October 1, 2002

SO ORDERED:

GEORGE B. DANIELS

United States District Judge

2004 U.S. Dist. LEXIS 19638; 9 Wage & Hour Cas. 2d (BNA) 1825

MARIO RICHARDS, on behalf of himself and all others similarly situated, Plaintiffs, v. COMPUTER SCIENCES CORP., Defendant.

No. 3:03CV630(DJS)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2004 U.S. Dist. LEXIS 19638; 9 Wage & Hour Cas. 2d (BNA) 1825

September 28, 2004, Decided

**PRIOR HISTORY:** *Richards v. Computer Scis. Corp., 2004 U.S. Dist. LEXIS 19637 (D. Conn., Sept. 28, 2004)*

**DISPOSITION-1:** Richards's motion to proceed as a collective action was granted. Motion to serve notice was granted. Motion on consent for an extension of time was denied as moot.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff, a computer "help desk" analyst, filed an action against defendant employer for nonpayment of overtime under the Fair Labor Standards Act (FLSA), *29 U.S.C.S. § 201* et seq., and moved to proceed as a collective action and to serve notice on other potential class members under *29 U.S.C.S. § 216*(b). The employer argued the analysts were exempt under *29 U.S.C.S. § 213*(a)(1), (17), and that each analyst's job was unique and different.

**OVERVIEW:** There was a sufficient showing that common questions would predominate among class members. The affidavits alleged a substantial similarity in the work situations of both of the first levels of analysts; they appeared to perform essentially the same trouble-shooting tasks, although with differing levels of responsibility, and the pre-shift and post-shift requirements of the job seemed relatively uniform. Discovery could proceed on the issue of a collective action. The employer argued that the variations in applications, components, industry, and secrecy as to each client mandated that each analyst had a job unique and different from all other analysts not assigned to the same client. But, all level one analysts were engaged in a job that was essentially the same, as were level two analysts. The time a job took, alone was insufficient to exempt a job from FLSA's requirements. The court reserved the issue of exemption as to computer-related professionals under *29 C.F.R. § 541.401*. A particularized showing of individual activity was not necessary. The duties, responsibilities, and salaries of the potential class members were fairly uniform.

**OUTCOME:** The analyst's motion to proceed as a collective action was granted, as was the motion to serve notice.

**CORE TERMS:** collective action, exempt, similarly situated, staff, duties, regulations, discovery, desk, work done, overtime, wages, substantially similar, trouble-shooting, assigned, manager, solving, phone, present action, predominate, non-exempt, performing, password, spend, class certification, job description, serve notice, particularized, exemption, authorize, one-half

**LexisNexis(TM) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Overtime & Work Period*

*Labor & Employment Law > Wage & Hour Laws > Exemptions*
[HN1]The Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq., states that no employer within the meaning of the Act shall employ any of his employees for a workweek longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. *29 U.S.C.S. § 207*(a)(1). This general mandate, however, does not apply to persons employed in a bona fide executive, administrative, or professional capacity. *29 U.S.C.S. § 213*(a)(1). A further exception exists for certain sub-classes of computer employees. *29 U.S.C.S. § 213*(a)(17).

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*
[HN2]The Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq., allows one or more employees to pursue an action in a representative capacity for other similarly situated employees. *29 U.S.C.S. § 216*(b). This type of action allows potential class members who are similarly situated to the named plaintiff to "opt in" the case.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*
[HN3]See *29 U.S.C.S. § 216*(b).

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*
[HN4]District courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to *29 U.S.C.S. § 216*(b) of the Fair Labor Standards Act, *29 U.S.C.S.*

2004 U.S. Dist. LEXIS 19638; 9 Wage & Hour Cas. 2d (BNA) 1825

§ *201* et seq.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

[HN5]The court should engage in a two-step inquiry under *29 U.S.C.S. § 216*(b) of the Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq. First, the court should allow a plaintiff to proceed on a provisional basis upon a minimal evidentiary showing that the plaintiff can meet the substantive requirements of *29 U.S.C.S. § 216*(b). Second, the court should render a final decision regarding the propriety of proceeding as a collective action with the benefit of all evidence gathered in discovery including any additional plaintiffs.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

[HN6]The threshold issue in deciding whether to authorize class notice in a Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq., action is whether the plaintiff has demonstrated that potential class members are "similarly situated." Courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. The plaintiff bears the burden of establishing that he is similarly situated with the class he wishes to represent. The burden is not heavy and may be met by making substantial allegations of violations supported by affidavits. In other words, the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Labor & Employment Law > Wage & Hour Laws > Exemptions*

[HN7]Although the time a job takes can be a factor in determining whether something is professional or administrative, time alone is insufficient to exempt a job from the requirements of the Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq.

*Labor & Employment Law > Wage & Hour Laws > Overtime & Work Period*

*Labor & Employment Law > Wage & Hour Laws > Exemptions*

[HN8]The exemption status of any employee in the context of overtime pay must be determined on the basis of whether his duties, responsibilities, and salary meet all the requirements of the appropriate section of the regulations. 29 C.F.R. § 542.201(b)(2). Determining whether an employee is exempt is extremely individual and fact-intensive, requiring a detailed analysis of the time spent performing administrative duties and a careful factual analysis of the full range of the

employee's job duties and responsibilities. Applying the regulations interpreting the Fair Labor Standards Act, *29 U.S.C.S. § 201* et seq., an employee may be exempt if he or she spends more than 50 percent of his or her time performing executive, administrative, or professional work, or if he or she spends less than 50 percent of his or her time on these tasks, but these tasks nevertheless predominate or define his or her job. *29 C.F.R. § 541.103*.

**COUNSEL:** **[\*1]** For Mario Richards, o/b/o himself & all others similarly situated, Plaintiff: Michael J. Melly, Bartinik Gianacoplos Bartinik Bartinik & Grater, Groton, CT.

For Computer Sciences Corp, Defendant: Lisa A. Schreter, Jackson Lewis, Atlanta, GA; Tasos C. Paindiris, William Joseph Anthony, Jackson Lewis, Hartford, CT.

**JUDGES:** DOMINIC J. SQUATRITO, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** DOMINIC J. SQUATRITO

**OPINION: MEMORANDUM OF DECISION AND ORDER**

Plaintiff, Mario Richards, brings this action against defendant Computer Sciences Corporation ("CSC") alleging a violation of the Fair Labor Standards Act ("FLSA"), *29 U.S.C. §§ 201 et seq.* Richards purports to bring claims on behalf of similarly situated CSC employees as a collective action pursuant to the FLSA. See *29 U.S.C. § 216(b)*. Now pending is Richards's motion to proceed as a collective action and to serve notice on other potential members of the class **[doc. # 26]**. For the reasons set forth herein, Richards's motion is **GRANTED.**

## I. BACKGROUND

The plaintiff, Mario Richards, is a Customer Support Analyst ("CSA") Level I for CSC in Norwich, Connecticut. CSC provides **[\*2]** information technology services-including consulting, systems integration and outsourcing-to companies around the world. Clients of CSC receive comprehensive technology support services, including access to "help desk" services that are geared toward the specific business needs of individual clients. Typically, a CSC client will contact the help desk assigned to provide services n1 and speak to a CSA Level I about the problem. The testimony of Richards and the affidavits of Amos Daniels, the manager of the help desk group in Texas, and Stephen Fenter, the manager of the group in Norwich, establish that a CSA Level I will handle simple problem solving tasks for a client over the phone. CSA Level I staff have limited access to a "knowledge base" which seems

2004 U.S. Dist. LEXIS 19638; 9 Wage & Hour Cas. 2d (BNA) 1825

to be a central computer database that includes tips and instructions on solving routine and complex problems encountered by CSC's clients. A CSA Level I will consult the knowledge base and his or her own notes regarding a particular client's needs and then apply the available information to solving a client's problems. The tasks performed by a CSA Level I might involve setting up an email account, providing a re-placement password, [*3] resolving conflicts between software programs such as Microsoft Word or Excel, or navigating a client's employee through a computer or system crash or minor networking problem. The services provided by CSA Level I staff will no doubt be easily envisioned by almost any home computer user or employee at a large office with a busy computer network.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 CSC has help desk services in Norwich and Las Colinas, Texas. The company has, in the past, operated a third help center in San Diego, California, but that center is now closed.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

CSAs Level I are restricted in their duties. They are not empowered by CSC to solve all problems a client may have. CSAs Level I have limited access to the knowl-edge base and to client sensitive information such as passwords and administrative programs. A problem that is too complex or requires sensitive information not available to a CSA Level I will be referred to a CSA Level II. The CSAs Level II perform a function very similar to the CSA Level I, only with more access to information and [*4] client materials. Services are again provided over the phone and the CSA Level II is again limited to off-site instructions and tasks involv-ing a limited level of access to client and knowledge base information, although the Level II has more ac-cess and authority than the Level I. A CSA Level II will periodically encounter problems that he or she is not empowered to resolve, often for the same rea-sons of access and knowledge that prevent Level I staff from solving a client's problem. When such difficul-ties arise, a CSA Level II will contact a CSA Level III. A Level III staff person will usually be on-site with the customer and will have a greater level of access and knowledge of client-sensitive systems than the Level II. All parties acknowledge that a CSA Level III has a qualitatively different function than the Level I and Level II CSAs, both of whom operate solely via tele-phone calls.

The CSC model of support requires the CSAs to be dedicated to a particular client. CSAs learn and work with the programs and systems used by a specific client or group of clients. CSAs may need to learn new or dif-ferent programs and systems if they switch clients for any reason. The client-specific [*5] knowledge does not, however, bear any relation to the actual trouble-shooting services provided by either the CSA Level I or Level II staff. No matter what programs or sys-tems are used by a particular client, the CSA Level I and Level II employees are always engaged as problem solvers or trouble-shooters via phone consultation as described herein.

Richards alleges, essentially, that he has been denied overtime wages in contravention of the *Fair Labor Standards Act*. According to Richards, he is required to serve a full shift of eight and one-half hours on the phone handling customer problems. Prior to this shift, Richards must boot his computer, answer com-pany e-mails and log on to the various applications and components that are used by the client he is as-signed to assist during his shift. Upon completion of his shift, Richards claims that he must break down his computer and complete basic, routine maintenance on his equipment. Richards seeks regular and over-time wages for time he allegedly works beyond forty hours during each week. Specifically, he seeks over-time wages for the set-up and break-down tasks he per-forms each day. Richards claims that he is a salaried, non-exempt employee [*6] under the FLA and its im-plementing regulations. Richards also claims that his duties and activities reflect the work done by all other CSA Level I and Level II staff, both in Norwich and Las Colinas, and he seeks permission of the court to proceed as a class action representative on behalf of all similarly situated employees of CSC.

CSC insists that Richards is an exempt employee be-cause he is a trained professional engaged in decision-making tasks that require technical knowledge and dis-cretionary authority. Further, CSC alleges that Richards is exempt by virtue of his status as an employee en-gaged in computer-related work. Defendant contends, finally, that a collective action is inappropriate because Richards has no knowledge of the work habits or ex-pectations of all other CSAs and therefore cannot meet the required minimal legal burden.

## II. DISCUSSION

[HN1]The FLSA states that no employer within the meaning of the Act "shall employ any of his employ-ees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. [*7] " *29 U.S.C. § 207(a)(1)*. This general mandate, however, does not

2004 U.S. Dist. LEXIS 19638; 9 Wage & Hour Cas. 2d (BNA) 1825

apply to persons employed in a bona fide executive, administrative, or professional capacity. See *29 U.S.C. § 213(a)(1)*. A further exception exists for certain sub-classes of computer employees. See *29 U.S.C. § 213(a)(17)*.

Richards moves for certification of a "collective action" under *§ 216(b) of the FLSA*. n2 [HN2]The FLSA allows one or more employees to pursue an action in a representative capacity for other similarly situated employees. See *29 U.S.C. § 216(b)*. This type of action allows potential class members who are similarly situated to the named plaintiff to "opt in" the case. Id.

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n2 *Section 216(b) of the FLSA* provides in pertinent part:

[HN3]An action . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*29 U.S.C. § 216(b)*.

- - - - - - - - - - - - End Footnotes- - - - -
- - - - - - - -

**[\*8]**

"It is well settled that [HN4]district courts have the discretionary power to authorize the sending of notice to potential class members in a collective action brought pursuant to *§ 216(b) of the FLSA*." *Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)* (citing *Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989)*; *Braunstein v. Eastern Photographic Laboratories, Inc., 600 F.2d 335, 336 (2d Cir. 1978)*).

The issue presently before this court is whether the "appropriate circumstances" exist for the court to exercise its discretion and allow this action to proceed as a collective action. Id. The weight of authority from other jurisdictions appears to hold that [HN5]the court should engage in a two-step inquiry: first, the court should allow plaintiff to proceed on a provisional basis upon a minimal evidentiary showing that plaintiff can meet the substantive requirements of *29 U.S.C. § 216(b)*; and, second, the court should render a final

decision regarding the propriety of proceeding as a collective action with the benefit of all evidence gathered in discovery including any additional **[\*9]** plaintiffs. n3 See *Hipp v. Liberty Nat'l. Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001)*.

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n3 There is no decision by the Court of Appeals for the Second Circuit regarding the proper procedure for determining whether appropriate circumstances exist to allow a plaintiff to proceed as a collective action. For the purpose of this decision, the court will apply this analysis.

- - - - - - - - - - - - End Footnotes- - - - -
- - - - - - - -

[HN6]The threshold issue in deciding whether to authorize class notice in an FLSA action is whether the plaintiff has demonstrated that potential class members are "similarly situated." Id. (citing *29 U.S.C. § 216(b)*). "Courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Hoffman, 982 F. Supp. at 261* (citing cases); see *Roebuck v. Hudson Valley Farms, Inc., 239 F. Supp. 2d 234, 238 (N.D.N.Y. 2002)*; **[\*10]** *Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)*. The plaintiff bears the burden of establishing that he is similarly situated with the class he wishes to represent. *Grayson v. K-Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996)*. The burden is not heavy and may be met by making substantial allegations of violations supported by affidavits. Id. In other words, the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case.

The evidence provided by Richards in his briefs and the accompanying affidavits, coupled with the information provided by the defendant, is sufficient to show that common questions would predominate among the members of the proposed class. The affidavits provided by other CSAs employed at Norwich allege a substantial similarity in the work situations of all CSAs Level I and II. CSAs appear to perform essentially the same trouble-shooting tasks, although with differing levels of responsibility, and the pre-shift and post-shift requirements of the job seem relatively uniform. The court finds **[\*11]** that enough evidence exist to permit discovery to proceed on the issue of a collective action.

CSC argues at length that the facts of the present ac-

2004 U.S. Dist. LEXIS 19638; 9 Wage & Hour Cas. 2d (BNA) 1825

tion are similar to a series of decisions rendered by this court holding that class certification under the FLSA must be denied where the proofs required to show that an employee is exempt are specific to the individual. See, *Mike v. Safeco, 274 F. Supp. 2d 216 (D.Conn. 2003)*; *Mike v. Safeco, 223 F.R.D. 50, 2004 WL 1774833 (D.Conn. 2004)*; *Dean v. Priceline.com Inc.., No 3:00CV1273 (DJS), 2001 U.S. Dist. LEXIS 24982 (D.Conn. June 5, 2001)*. See also, *Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941 (W.D.Ark. 2003)*; *Morisky v. Public Service Electric and Gas Co., 111 F. Supp. 2d 493 (D.N.J. 2000)*. CSC points to the differences in the needs of the various clients served by individual CSAs as proof that no generalized determination of their duties can be achieved. According to the defendant, the variations in applications, components, industry and secrecy that exist among CSC's clients mandate that each CSA has a job unique and different [*12] from all other CSAs not assigned to the same client. The court is unpersuaded by this argument.

Richards' testimony, taken together with the affidavits submitted by CSC and the descriptions provided of CSA job requirements, is sufficient to show that every CSA Level I is engaged in a job that is essentially the same as the job performed by all other CSAs Level I. Similarly, all CSAs Level II are engaged in functions substantially similar to all other CSAs Level II. The arguments of CSC amount to little more than proof that every CSA uses a different tool to accomplish the same task. An appropriate analogy would be to a team of floor cleaners, each assigned by a cleaning service to a different building. One building might have carpet, another tile and a third polished stone floors. Each floor cleaner would need a different skill set and tool set to accomplish his given task-but the essential task remains the same. Just as the first cleaner would require a vacuum and the second a waxing machine, so would one CSA need to create email passwords and another be able to resolve conflicts with various word processor programs. Yet, the essential nature of the task-floor cleaning, or computer [*13] troubleshooting-remains the same. The testimony of the plaintiff and the CSC managers makes plain that all CSAs spend their days resolving application and network problems for their clients. The nature of the clients served and the specific applications used by each CSA are irrelevant to the court's determination of whether Richards and other CSA's are similarly situated. n4 CSC may show, when the court revisits the issue of class certification with the benefit of materials produced in discovery, that the various CSA's perform substantially different functions (i.e., not merely troubleshooting on different applications and components), but that showing has not yet been made.

- - - - - - - - - - - - - - Footnotes - - - - - - -

- - - - - - -

n4 CSC also claims that the amount of time it takes CSAs to troubleshoot shows that they engage in dissimilar tasks. The court is not persuaded that the issue is relevant. [HN7]Although the time a job takes can be a factor in determining whether something is professional or administrative, etc, time alone is insufficient to exempt a job from the requirements of the FLSA.

- - - - - - - - - - - - - End Footnotes- - - - - -

- - - - - - - -

[*14]

CSC argues that there is not enough similarity between the CSAs Level I and Level II for purposes of this action. Both parties to the case admit that CSAs Level II have a different level of authority and responsibility from CSAs Level I. The court finds that Richards has made allegations sufficient to proceed as a collective of both the CSAs Level I and Level II. The affidavits of a sampling of Norwich CSAs provides some evidence that CSAs Level II are merely a more expansive version of CSAs Level I and not a unique or more skilled class of employee. A CSA Level I could, it seems, become a Level II without enhanced education or computer programming skills. CSAs Level II continue to rely on the knowledge base for their work and, despite having greater integration with the individual clients, do no more than advanced troubleshooting, as opposed to the basic trouble-shooting performed by CSA Level I staff. Again, the issue is whether the trouble-shooting functions performed by both CSA Level I and Level II staff are properly exempt from the requirement to pay overtime wages. There is, at present, no basis for distinguishing the issues that will arise for CSAs Level I from those that [*15] will arise for CSAs Level II. n5

- - - - - - - - - - - - - - Footnotes - - - - - - -

- - - - - - - -

n5 The same basic analysis applies to CSC's claim that CSAs perform different duties in Texas and Connecticut. The defendant does not state that CSAs have different job or work requirements in Texas when compared with CSAs in Norwich. Instead, CSC relies on the differences in clients and the company's need to satisfy those clients as proof that the CSAs are not similarly situated. The only direct evidence of the work done by Texas CSAs is the affidavit of Amos Daniels, manager of the help desk in Las Colinas. Daniels's statements lead

the court to conclude that CSAs in Las Colinas are engaged in substantially similar work under substantially similar conditions as the CSAs in Norwich. Again, as with the alleged differences between CSAs Level I and II, the court will benefit from a more complete record compiled through discovery before rendering a final ruling on this issue.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[HN8]The exemption status of any employee must "be determined on the basis of whether his duties, responsibilities [*16] and salary meet all the requirements of the appropriate section of the regulations." 29 C.F.R. § 542.201(b)(2). Determining whether an employee is exempt is extremely individual and fact-intensive, requiring "a detailed analysis of the time spent performing administrative duties" and "a careful factual analysis of the full range of the employee's job duties and responsibilities." *Cooke v. General Dynamics Corp., 993 F. Supp. 56, 59-61 (D. Conn. 1997).* Applying the regulations interpreting the FLSA, an employee may be exempt if he or she spends more than 50% of his or her time performing executive, administrative, or professional work, or if he or she spends less than 50% of his or her time on these tasks, but these tasks nevertheless predominate or define his or her job. See *29 C.F.R. § 541.103*; see also 29 C.F.R. § 541.206 (applying *29 C.F.R. § 541.103* to the administrative exemption). n6 Although this court has, in Mike and Dean, determined that this legal standard would require too particularized an inquiry to permit a class to move forward, [*17] the facts of both cases differ from the present action.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n6 Defendant also raises as a defense the possibility that Richards and all other CSAs are exempt computer-related professionals. See *29 C.F.R. § 541.401.* The court has not yet determined the appropriate standard for application of these regulations and presumes that the parties will brief this issue more fully at a later stage of the litigation. At present, Richards's allegations do not suggest to the court that he is exempt pursuant to the plain language of the regulations. The court, however, will reserve analysis of this issue until the record and the parties' arguments are more fully developed.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

The claim in *Mike* was necessarily unique to that case and is not replicated here. The Mike plaintiff argued to the court that he was required by his employer to perform only some of the tasks listed in his job-description, specifically the non-exempt tasks. The court reviewed the claims and determined that forming a class [*18] was impracticable. Every member of a potential class in Mike would have been required to show both that he or she was not performing all of the tasks listed in his or her job description and also that the tasks performed were non-exempt. There could be no unity in a class based on specific individual departures from the listed job description as the plaintiff's claim amounted to an allegation that every individual performed a discrete, and exempt, set of tasks within the same job class. The facts of the present action are such that Richards can prove that he and his fellow CSAs are engaged in the same tasks and that those tasks are not exempt. A particularized showing of individual activity is not necessary here on the same scale Mike would have required.

The plaintiff in Dean posed a similar problem for the court. There, the claim involved individuals with broad and often unrelated jobs. Here, the duties, responsibilities and salaries of the potential class members are more uniform than the class in Dean. Further, CSC's descriptions of the work done by all CSAs does not show the same level of creativity and discretion that was inherent in the work done by the plaintiff [*19] in Dean. The court finds that Dean is not persuasive when applied to these facts.

## III. CONCLUSION

Ultimately, Richards has offered sufficient proof to persuade the court to permit him to pursue this case as a collective action pursuant to *29 U.S.C. § 216(b)*. The CSAs Level I and Level II are all computer troubleshooters engaged in substantially similar functions and exercising related responsibilities. The court and the parties will benefit from further discovery aimed at establishing the facts necessary to a final determination that Richards may proceed as a collective action. Richards's motion to proceed as a collective action [doc. # 26] is **GRANTED**. The motion to serve notice [doc. # 26] is also **GRANTED**. Further, the motion on consent for an extension of time [doc. # 73] is **DENIED as moot**. The parties are ordered to submit a proposal for an amended scheduling order **no later than 30 days** after this decision is entered.

**IT IS SO ORDERED** at Hartford, Connecticut on this 28th day of September, 2004.

2004 U.S. Dist. LEXIS 19638; 9 Wage & Hour Cas. 2d (BNA) 1825

/s/DJS                                    **UNITED STATES DISTRICT JUDGE [*20]**

**DOMINIC J. SQUATRITO**

2003 U.S. Dist. LEXIS 25092

EDUARDO TORRES et al, Plaintiffs, -vs- CSK AUTO, INC., Defendant.

Civil No. EP-03-CA-113(KC)

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, EL PASO DIVISION

2003 U.S. Dist. LEXIS 25092

December 17, 2003, Decided

**DISPOSITION-1:** **[*1]** Plaintiffs' motion for judicially certified notification of potential plaintiffs granted in part. Defendant's motion to strike plaintiffs affidavits in support of petition for judicially certified notification denied. Plaintiffs' motion to vacate deadline to join additional parties granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff employees sued defendant employer for alleged violations of *29 U.S.C.S. § 201*(b) of the Fair Labor Standards Act of 1938 (FLSA). Seeking to proceed in a collective action under *29 U.S.C.S. § 216*(b), they moved for judicially certified notification of potential plaintiffs and to vacate the deadline to join additional parties. The employer moved to strike the employees' affidavits in support of their motions.

**OVERVIEW:** The employees alleged that the employer failed to pay them overtime as required by the FLSA. More specifically, they alleged that a software program used in the employer's stores discouraged stores from claiming unauthorized overtime hours, and as a consequence, employee time cards were edited to reflect fewer hours than actually were worked. Finally, the employees alleged that through conversations with other employees, they learned that similar violations were occurring in the employer's stores outside the El Paso, Texas, area. Thus, the employees sought to proceed in a collective action under *29 U.S.C.S. § 216*(b), to mail notice to potential plaintiffs, and to obtain from the employer personnel data to facilitate notice. The court granted the request only in part. The employee's conclusory allegations about violations outside the El Paso area were insufficient to justify nationwide action, but the employees established grounds for a collective action of the employees in the El Paso area. Rather than requiring the employer to produce confidential information, the court required the employer to mail a form notice approved by the employees' counsel.

**OUTCOME:** The court granted in part and denied in part the employees' motions. It authorized collection action and the mailing of a notice of such action to potential employees in the El Paso, Texas, area, but denied without prejudice to renewal the employees' request for nationwide action. The court granted the motion to vacate the deadline for joining additional

parties. The court denied the employer's motion to strike the employees' affidavits.

**CORE TERMS:** collective action, notice, opt-in, deadline, aff, personal knowledge, mailing, notification, attest, similarly situated, conditionally, motion to vacate, motion to strike, overtime, software, appropriate case, present action, computer-readable, certification, authorization, commonality, typicality, certifying, personnel, discovery, affiant, certify, suffice, matrix, date of mailing

**LexisNexis(TM) Headnotes**

*Labor & Employment Law > Wage & Hour Laws > Overtime & Work Period*
[HN1]See *29 U.S.C.S. § 207*(a)(1).

*Civil Procedure > Class Actions*

*Labor & Employment Law > Wage & Hour Laws > Overtime & Work Period*
[HN2]Unlike many class actions, collective actions under the Fair Labor Standards Act (FLSA) are not certified pursuant to the present version of Fed. R. Civ. P. 23. Unlike Rule 23's class "opt-out" provision, the FLSA follows an "opt-in" procedure, through which a subsequent judgment binds only those consenting to inclusion as a plaintiff, *29 U.S.C.S. § 256*(b). The "opt-in" procedure of the FLSA permits certification of a collective action under *29 U.S.C.S. § 216*(b), allowing one or more employees to pursue an action on behalf of others similarly situated. *29 U.S.C.S. § 216*(b).

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Civil Procedure > Class Actions*
[HN3]While the United States Court of Appeals for the Fifth Circuit has discussed two different procedures that may be employed in certifying collective actions in Fair Labor Standards Act lawsuits, it has not placed its imprimatur on any particular procedure. A review of the procedures employed in cases addressing whether to certify a collective action reveals that a two-tiered approach tends to be the method of choice. Under this approach, a court applies a fairly lenient standard, conditionally certifying a class based only on the pleadings and affidavits submitted, provided plaintiff can meet the substantive requirements of *29*

2003 U.S. Dist. LEXIS 25092

*U.S.C.S.* § *216*(b). Once conditionally certified, putative class members are afforded notice and an opportunity to "opt-in". Later, a final decision is made on proceeding as a collective action based on all evidence gathered through discovery.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Civil Procedure > Class Actions > Prerequisites*
[HN4]The threshold issue in deciding whether to conditionally certify a collective action in an Fair Labor Standards Act action is whether the plaintiff has demonstrated that potential class members are similarly situated. Courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. In other words, the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Civil Procedure > Class Actions*
[HN5]While the authority of federal district courts to authorize the sending of notice to potential class members in a collective action brought pursuant to *29 U.S.C.S.* § *216*(b) is not disputed, there is no requirement that a court order notification of potential plaintiffs, and a court should do so only in the appropriate case.

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Civil Procedure > Class Actions*
[HN6]Mere allegations will not suffice; some factual evidence is necessary to justify collective action under *29 U.S.C.S.* § *216*(b) on a national scale.

*Evidence > Witnesses > Personal Knowledge*

*Labor & Employment Law > Wage & Hour Laws > Civil Procedure & Remedies*

*Civil Procedure > Class Actions > Prerequisites*
[HN7]The principle that an affiant have personal knowledge of the facts to which he or she attests is neither inappropriate under the procedure for determining whether to allow a collective action under *29 U.S.C.S.* § *216*(b) nor inconsistent with general rules of evidence in federal proceedings, Fed. R. Evid. 602.

*Evidence > Witnesses > Personal Knowledge*
[HN8]See Fed. R. Evid. 602.

COUNSEL: For EDUARDO TORRES, HECTOR TOVAR, plaintiffs: Mike Milligan, Attorney at Law, El Paso, TX. David L. Kern, Peticolas, Shapleigh,

Brandys & Kern, P.L.L.C., El Paso, TX.

For CSK AUTO, INC., defendant: Charles C. High, Jr., Kemp, Smith, Duncan & Hammond, P.C., El Paso, TX. Walker F. Crowson, Kemp Smith, El Paso, TX USA.

JUDGES: Kathleen Cardone, United States District Judge.

OPINIONBY: Kathleen Cardone

OPINION: ORDER

Pending before this Court are plaintiffs' motion for judicially certified notification of potential plaintiffs (Doc. No. 12), defendant's motion to strike plaintiffs affidavits in support of petition for judicially certified notification (Doc. No. 18) and plaintiffs' motion to vacate the deadline to join additional parties (Doc. No. 42).

I. MOTION FOR JUDICIALLY CERTIFIED NOTIFICATION OF POTENTIAL PLAINTIFFS

The present action involves alleged [*2] violations of the Fair Labor Standards Act of 1938 (FLSA), 52 Stat. 1060, as amended, *29 U.S.C.* § *201*. n1 Plaintiffs' motion includes a tripartite request: (1) authorization to proceed as a collective action, (2) authorization for mailing of proper notice to all of defendants employees elsewhere whose hours of work were regulated by the matrix program over the past three years, and (3) issuance of an order to produce a computer-readable data file containing personnel data to facilitate notice.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 [HN1]The FLSA states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in ex-cess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *29 U.S.C.* § *207(a)(1)*. This prohibition does not apply to persons employed in a bona fide executive, administrative, or professional capacity. *29 U.S.C.* § *213(a)(1)*.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*3]

[HN2]Unlike many class actions, FLSA collective actions are not certified pursuant to the present version of *Federal Rule of Civil Procedure 23*. *Donovan v.*

2003 U.S. Dist. LEXIS 25092

*Univ. of Tex., 643 F.2d 1201, 1208 (5th Cir. 1981).* Unlike *Rule 23*'s class "opt-out" provision, the FLSA follows an "opt-in" procedure, *Mooney v. Aramco Servs., 54 F.3d 1207, 1212 (5th Cir. 1995),* through which a subsequent judgment binds only those consenting to inclusion as a plaintiff, *29 U.S.C. § 256(b).* The "opt-in" procedure of the FLSA permits certification of a collective action under *§ 216(b),* allowing one or more employees to pursue an action on behalf of others similarly situated. *29 U.S.C. § 216(b).*

[HN3]While the Fifth Circuit has discussed two different procedures that may be employed in certifying collective actions, it has not placed its imprimatur on any particular procedure. *Mooney, 54 F.3d at 1216* ("we find it unnecessary to decide which . . . of the competing methodologies should be employed in making [a] . . . class certification decision"). A review of the procedures employed in [*4] cases addressing whether to certify a collective action reveals that a two-tiered approach tends to be the method of choice. n2 *Accord Wynn v. NBC, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002).* Under this approach, a court applies a fairly lenient standard, conditionally certifying a class based only on the pleadings and affidavits submitted, provided plaintiff can meet the substantive requirements of *29 U.S.C. § 216(b). Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001).* Once conditionally certified, putative class members are afforded notice and an opportunity to "opt-in". *Id.* Later, a final decision is made on proceeding as a collective action based on all evidence gathered through discovery. *Id.*

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 The second procedure, discussed in *Mooney,* is the spurious class action procedure eliminated from *Rule 23. Mooney, 54 F.3d at 1214.* Through such procedure, a court considers the general *Rule 23* requirements of "numerosity", "commonality", "typicality" and adequacy of representation to determine whether a class should be certified, and the procedure is distinguishable from *Rule 23* class actions only by virtue of the non-binding effect of the judgment on those who elect not to "opt-in". *Id.* There appear also to be a variety of other procedures not discussed in *Mooney* representative of the variety of potential approaches available to a court in resolving *§ 216(b)*'s similarly situated requirement. *See, e.g., Bayles v. Am. Med. Response, 950 F. Supp. 1053, 1058 (D. Col. 1996); Krueger v. N.Y. Tel. Co., 163 F.R.D. 433, 445 (S.D.N.Y. 1995)* (limiting analysis to

commonality and typicality requirement of *Rule 23).* As this Court concludes that the ad hoc determination described in *Mooney* is the appropriate procedure in the present case, it need not analyze the facts under these alternative procedures.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*5]

[HN4]The threshold issue in deciding whether to conditionally certify a collective action in an FLSA action is whether the plaintiff has demonstrated that potential class members are similarly situated. *Id.* Courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *Jackson v. N.Y. Tel. Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995)* (at the preliminary notice stage, plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme). In other words, the court must be satisfied that there is a basis to conclude that questions common to a potential group of plaintiffs would predominate a determination of the merits in this case.

The gravamen of the present complaint is that plaintiffs were made to work in excess of 40 hours without receiving the overtime rate required by the FLSA. The consent forms of Hector Tovar and Eduardo Torres, attached to the complaint, and the later filed forms of Manuel Torres, Jr., and Maria Montenegro, [*6] indicate only that the plaintiffs "believe [they] are entitled to additional straight time and overtime wages [from defendant] for the hours [they] have worked in excess of forty hours per week." In their brief, plaintiffs indicate that 20 potential plaintiffs have been identified in El Paso. Pls Br. at 6. The affidavits submitted attest to the existence of a software based program known as "matrix", which authorizes work hours in proportion to sales volume and thereby discourages stores from claiming unauthorized overtime hours. Tovar aff. at 3; E. Torres aff. at 1. As such, time cards were edited to reflect fewer hours than actually were worked. Tovar aff. at 3; E. Torres aff. at 2. Furthermore, both Tovar and Eduardo Torres attest to nationwide violations, having been notified of such violations through encounters with other employees employed by defendant outside El Paso. Tovar aff. at 4; E. Torres aff. at 2.

Having considered the allegations in the complaint and supporting affidavits, this Court concludes that plain-

tiffs have adduced sufficient evidence to justify conditional certification of a collective action by defendants El Paso employees consistent with the FLSA violation [*7] alleged. As will be discussed below, the El Paso employee affidavits submitted do not justify a multistate collective action. Plaintiffs argument that the nature of the software itself tends to support a pervasive problem throughout the country is not well-founded. It could just as easily be said the allegations may be indicative of one or a few of defendants locations that flout working hour standards incorporated into distributed payroll software.

Plaintiffs second request is for notice to other potential litigants. Notice is hereby ordered for all of defendants El Paso employees. Plaintiffs have not carried their burden of justifying a national collective action. [HN5]While the authority of district courts to authorize the sending of notice to potential class members in a collective action brought pursuant to § 216(b) is not disputed, *Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 107 L. Ed. 2d 480, 110 S. Ct. 482 (1989)*, there is no requirement that a court order notification of potential plaintiffs and should do so only in the appropriate case, *id. at 169*.

Left to determine whether the present case is an appropriate case for a broader action, this Court must conclude that the [*8] affidavits of local employees who restate, without attribution, the concerns of distant employees and theorize that the problem is widespread will not suffice. [HN6]Mere allegations will not suffice; some factual evidence is necessary to justify an action on a national scale. *Bernard v. Household Int'l, Inc., 231 F. Supp. 2d 433, 435 (E.D. Va. 2002)*. While this Court does not necessarily agree with defendants reference to *Federal Rule of Civil Procedure 56(e)* for the contents of an affidavit outside the context of a motion for summary judgment, [HN7]the principle espoused therein, that an affiant have personal knowledge of the facts to which he or she attest, is neither inappropriate under the present procedure nor inconsistent with general rules of evidence in federal proceedings. [HN8]*See FED. R. EVID. 602* ("[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter")

With that said, the above collective action and order requiring notice to potential plaintiffs shall be limited to defendants El Paso employees. [*9] Plaintiffs are granted leave to move for reconsideration of the scope of the collective action and notice order within thirty days provided they can produce some evidence of the practices outside of El Paso, at which time this Court will determine whether the scope of the orders should be modified accordingly.

Plaintiffs third request is for a computer-readable data file containing the names, addresses, social security numbers and telephone numbers of potential "opt-in" plaintiffs. Plaintiffs argue that such is necessary to avoid extensive discovery. This Court is disinclined to grant this request as made, given privacy concerns implicit in information derived from personnel records, *Gehring v. Case Corp., 43 F.3d 340, 342 (7th Cir. 1994)*, and will instead require that defendant itself issue notice to its employees as follows.

Defendant shall send a letter to all El Paso employees employed since January 2000, notifying such employees of the specific FLSA violation alleged and providing that any affected employee may "opt-in" to the present action within forty-five days of mailing by contacting plaintiffs counsel at a designated address. The letter shall be a form [*10] letter approved by plaintiffs counsel, with form fields completing the name and address of employees and a respond deadline forty-five days beyond the date of mailing. Defendant will not be ordered to produce detailed information of its El Paso employees, but will instead provide a list of all employees to whom the letters were sent, the date of mailing, which should be the same day unless good cause is shown for a longer period and a certificate of mailing signed by counsel of record. This procedure should both avoid the promulgation of confidential information outside the office and preclude concerns inherent in the direct solicitation of prospective clients by attorneys through mass mailings.

Upon completion of the mailing, the parties shall notify this Court of the deadline date for response. At that time, the parties shall submit a revised scheduling order compliant with this Courts order on pretrial deadlines.

## II. DEFENDANT'S MOTION TO STRIKE PLAINTIFFS AFFIDAVITS

Defendant argues that the affidavits submitted in support of a collective action should be stricken for lack of personal knowledge. As stated in the above ruling, to the extent the affidavits attest to facts [*11] for which the affiant lacks personal knowledge, they are not considered as supporting plaintiffs case for a national collective action or for expansive notice to potential plaintiffs. Much of the remaining substance of the affidavits is, however, not improper and based on personal knowledge and thus the affidavits will not be ordered stricken *en toto*. The motion to strike is denied.

## III. PLAINTIFFS' MOTION TO VACATE DEADLINE TO JOIN ADDITIONAL PARTIES

In light of the scheduling issues discussed in Part I *supra*, plaintiffs' motion to vacate the deadline for

2003 U.S. Dist. LEXIS 25092

joining additional parties is hereby vacated.

## IV. CONCLUSION

Plaintiffs' motion for judicially certified notification of potential plaintiffs (Doc. No. 12) is **granted in part** consistent with the foregoing opinion. Defendant's motion to strike plaintiffs affidavits in support of petition for judicially certified notification (Doc. No. 18) is **denied.** Plaintiffs' motion to vacate the deadline to join additional parties (Doc. No. 42) is **granted.**

SO ORDERED.

Dated at El Paso, Texas, December 17, 2003.

Kathleen Cardone

United States District Judge