## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
------------------------------------------------------- x
```

MARK JOHNSON, on behalf of himself and
all others similarly situated,

                        Plaintiffs,

         -against-

MORTON'S RESTAURANT GROUP,
INC., and MORTON'S OF CHICAGO, INC.

                     Defendant.

Civil Action No.: 05 11058 MLW

```
------------------------------------------------------- x
```

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISMISS

        Defendants Morton's Restaurant Group, Inc. and Morton's of Chicago/Boston, Inc. (incorrectly identified as Morton's of Chicago, Inc.) (hereinafter referred to as "Defendants"), respectfully submit this Response to Plaintiff's Motion to Dismiss. Defendants do not oppose Plaintiff's motion that this case be dismissed so that it may proceed in arbitration. Defendants, however, respectfully submit that their Motion for Attorneys' Fees and their request for sanctions with regard to Plaintiff's failure to confer on his initial Motion to Facilitate §216(b) Notice should be granted.

## PRELIMINARY STATEMENT

### A.    Plaintiff's Complaint

On or about May 20, 2005 Plaintiff Mark Johnson (hereafter "Plaintiff") filed the instant action on behalf of himself and others, pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA") against Defendant Morton's Restaurant Group, Inc.

### B.    Plaintiff Signed An Arbitration Agreement

As a condition of his employment with Morton's, Plaintiff signed a "Receipt for Mandatory Arbitration Policy and Procedure for Resolving Disputes Arising out of the Employee's Employment or Termination of Employment." See Morton's Mandatory Arbitration Policy and Procedure for Resolving Disputes Arising out of Its Employees' Employment or Termination of Employment and Plaintiff's Receipt for Mandatory Arbitration Procedure for Resolving Disputes Arising out of the Employee's Employment or Termination of Employment (the "Receipt") attached as Exhibits "A" and "B," respectively, to the Windholz Declaration. The Arbitration Agreement expressly provides:

> In the event of any dispute, claim, or controversy including, but not limited to, any dispute, claim, or controversy seeking compensatory and/or punitive damages ("claims") arising out of any Employee's employment or the cessation of such employment with Morton's of Chicago/Boston, Inc. ("Morton's"), any such claims shall be submitted to final and binding arbitration. Such claims include . . . the Fair Labor Standards Act[.]

Exhibit "A" ¶ 1. In signing the Receipt, Plaintiff agreed to submit his disputes and claims to arbitration. Moreover, in signing the Receipt, Plaintiff is contractually bound to the terms and conditions of the Arbitration Agreement and, in particular, paragraph B.13, which provides for the award of attorneys' fees if a party is required to file a motion to compel arbitration and the

motion is subsequently granted by the court.  In filing his Complaint with this Court, however, Plaintiff attempted to circumvent the provisions of the Arbitration Agreement to which he is contractually bound.

C.    **Defendants Conferred With Plaintiff Before Filing Their Motion To Compel Arbitration.**

Defense counsel contacted Plaintiff's counsel and sought her concurrence in submission of this case to arbitration, consistent with the Arbitration Agreement. On June 10, 2005, defense counsel wrote to Plaintiff's counsel, asking whether Plaintiff consented to arbitration.  (See Exhibit "C" attached to the Windholz Declaration).  On June 16, defense counsel spoke with Plaintiff's counsel to inquire about their response.  At that time, Plaintiff's counsel indicated that they could not state what position Plaintiff intended to take with regard to the motion to compel arbitration.  As a result, on June 20, 2005, defense counsel filed a Motion to Compel Arbitration.  Plaintiff's opposition to Defendants' motion was due by July 5, 2005. Plaintiff did not oppose Defendants' motion.  Instead, on July 26, 2005, three weeks after the time for his opposition lapsed, Plaintiff filed his response to the motion.  In his response, Plaintiff agreed to submit his claim to arbitration.

D.    **After Plaintiff Filed A Demand For Arbitration And Agreed To Submit His Claims To Arbitration, Defendants Filed A Motion For Attorneys' Fees.**

On July 5, 2005, Plaintiff filed with the American Arbitration Association a demand for arbitration on behalf of himself and of a nationwide class of all those similarly situated.  On September 8, 2005, pursuant to paragraph B.13 of the Arbitration Procedure, Defendants filed a Motion for Attorneys' Fees based on Plaintiff's failure to comply with the terms of the arbitration agreement.   Paragraph B.13 in the Arbitration Agreement, titled

"Attorneys' Fees to Compel Arbitration," expressly provides:

> If any party is required to file a lawsuit to compel arbitration pursuant to this Policy, or defend against a lawsuit filed in court contrary to this Policy's mandatory arbitration provision, such party, if successful, shall be entitled to recover his, her or its reasonable costs and attorneys' fees incurred in such an action, including costs and attorneys' fees incurred in any appeal.

Exhibit "A" ¶ B.13. Defendants moved for an award of attorneys' fees for having to file a motion to compel arbitration that was subsequently essentially withdrawn by Plaintiff's counsel.

Plaintiff opposed Defendants' motion for fees on the grounds that: (1) a decision as to whether an award of fees is warranted under the arbitration agreement is a decision for the arbitrator, not the Court; and (2) it was unnecessary for Defendants to move to compel arbitration. Defendants respectfully submit that each of Plaintiff's arguments is meritless and Defendants are entitled to an award of fees and costs.

### E.    Plaintiff's Motion Facilitate §216(b) Notice.

Simultaneously with the filing of his Complaint, Plaintiff filed a Motion to Facilitate §216(b) Notice. Plaintiff failed to confer prior to filing the motion. Accordingly, Defendants submit that they are entitled to sanctions for Plaintiff's failure to confer on his Motion to Facilitate §216(b) Notice.

## POINT I

## UNDER THE CONTRACTUAL TERMS OF THE ARBITRATION AGREEMENT, DEFENDANTS ARE ENTITLED TO AN AWARD OF FEES FOR THEIR MOTION TO COMPEL ARBITRATION.

### A.    The Court May Retain Jurisdiction Over Defendants' Motion For Fees.

Plaintiff opposes Defendants' motion for fees on the grounds that a decision as to whether an award of fees is warranted under the arbitration agreement is a decision for the

arbitrator, not the Court.

The Court may properly retain jurisdiction to determine an award of fees. <u>See</u> <u>International Longshoremen's and Warehousemen's Union, Local 6 v. Cutter Laboratories</u>, 552 F.Supp. 979 (N.D. Cal. 1982). In <u>Cutter Laboratories</u>, the court granted the petitioner's motion to compel arbitration. The petitioner sought attorneys' fees for the costs incurred in obtaining the order to compel arbitration. After ordering further briefing on the issue of attorneys' fees, the court held that petitioner was entitled to an award of attorneys' fees. In so doing, the court held that: "[t]o compensate the petitioner for its unnecessary efforts and to signify the Court's displeasure with the respondent's conduct, an award of attorneys' fees is appropriate in this case." 552 F.Supp. at 982. <u>See also</u> <u>Ibrahim et al v. Morton's Restaurant Group, Inc., et al</u>, (unreported order awarding fees).

In the <u>Ibrahim</u> case, the defendants filed a motion for attorneys' fees after successfully moving to compel arbitration. The defendants moved to compel arbitration based on virtually the identical arbitration agreement at issue in this case. The Magistrate Judge in that matter issued a Report and Recommendation granting in part the defendants' motion for attorneys' fees. The Court, in an Order dated March 16, 2005, affirmed the Magistrate Judge's Report and Recommendation. (A copy of the Court's March 16, 2005 Order is attached as Exhibit "A").

In the instant case, after Defendants filed their motion to compel arbitration, Plaintiff agreed to arbitrate his claims. As in <u>Cutter Laboratories</u> and <u>Ibrahim</u>, this Court should retain jurisdiction over Defendants' motion for fees and should grant Defendants' motion.

**B.**    **The Court Should Award Fees Based On Plaintiff's Counsel's Conduct Throughout The Litigation Of This Matter.**

As in <u>Cutter Laboratories</u>, Defendants submit that an award of fees is appropriate to compensate Defendants for their "unnecessary efforts and to signify the Court's displeasure" with Plaintiff's conduct since the commencement of this action in federal court.    First, as explained above, Plaintiff filed this action with this Court well aware that Plaintiff had signed an arbitration agreement.    Second, when specifically asked whether Plaintiff would agree to dismiss his Complaint and file instead a Demand for Arbitration, Plaintiff's counsel represented that they could not state what position Plaintiff intended to take.    As a result, to avoid a default judgment, Defendants had no alternative but to file their motion to compel arbitration. Plaintiff's counsel's failure to dismiss the action before Defendants filed their motion to compel arbitration is particularly recalcitrant because she has: (1) filed another lawsuit against Morton's of Chicago/Boston, Inc. which she agreed to dismiss when presented with a motion to compel arbitration; and (2) filed over half a dozen other demands for arbitration against Morton's of Chicago/Boston, Inc.

Third, Plaintiff's counsel failed to check the Court's docket to learn whether Defendants had filed a responsive pleading to the Complaint or whether there had been any activity in the case she commenced on behalf of Plaintiff.    On July 26, 2005, twenty days after Plaintiff's response to the motion to compel arbitration was due, Plaintiff's counsel electronically filed Plaintiff's Response to Defendants' Motion to Compel Arbitration (hereafter "Plaintiff's Response").    In his Response, Plaintiff states that the "response is being filed late because Plaintiff's counsel only became aware of the filing of the motion last week."    Plaintiff's counsel represented that she did not receive the papers through electronic notification.    In fact, the

documents were forwarded to Plaintiff's counsel through the Court's Electronic Case Filing ("ECF") system. Plaintiff's counsel, Shannon Liss-Riordan, is registered as a filing user in the ECF system, with her name and e-mail address specifically identified as the Lead Attorney to be noticed. On June 20, 2005, at about 4:01 p.m., the Court's ECF system automatically generated and sent a Notice of Electronic Filing to Ms. Liss-Riordan and another individual at Ms. Liss-Riordan's firm with the e-mail address of mrex@prle.com, reflecting the filing of the motion to compel arbitration. (A copy of the Notice of Electronic Filing for the motion to compel arbitration filed on June 20, 2005 is attached as Exhibit "D" to the Windholz Declaration).

Finally, and most recently, Plaintiff's counsel failed to advise the Court that she objected to the transfer of this case to Magistrate Judge Bowler for all purposes. On July 6, 2005, the Court entered a Memorandum and Order directing the parties to inform the Court by July 27, 2005 whether they consented to the transfer of this case to the Magistrate Judge for all purposes. On July 26, 2005, Plaintiff filed his Response to Defendants' Motion to Compel Arbitration. At the conclusion of his Response, Plaintiff stated that he did not consent to the transfer of this case to the Magistrate Judge. On July 27, 2005, Defendants filed their Consent to Jurisdiction by the Magistrate Judge. On August 11, 2005, the Court entered an Order reassigning this case to Magistrate Judge Bowler for all purposes, including trial and entry of final judgment. On August 15, 2005, a notice was sent to all parties advising them of a status conference on September 22, 2005 before Magistrate Judge Bowler. Although Plaintiff did not consent to the transfer of this case to Magistrate Judge Bowler, he failed to file any objection to the Court's August 11, 2005 Order. In fact, Plaintiff's counsel did not raise any objection until the parties appeared at the conference before the Court on September 22, 2005. Plaintiff's

counsel had over one month since the Court entered its Order transferring the case, yet chose to do nothing until the conference.

Plaintiff's disregard of the express contractual terms of the arbitration agreement and subsequent conduct merit an award of fees.

### C. Since Plaintiff Did Not Agree To Submit His Claims To Arbitration When Defendants Conferred With Plaintiff Prior To Filing The Motion, Defendants Had No Alternative But To File The Motion.

Plaintiff claims that Defendants' motion to compel arbitration was unnecessary. This argument is simply nonsensical. Defendants' answer to Plaintiff's Complaint was due on June 20, 2005. If Defendants had failed to file a responsive pleading by that date, a default judgment could potentially have been entered against Defendants. Certainly, Plaintiff does not suggest that Defendants should have adopted such a cavalier attitude toward a federal court complaint, which asserted class action allegations, and allowed the time to answer to pass without filing any responsive pleading. Defendants suspect that if they had done so, Plaintiff would have advised the Court of Defendants' failure to file a timely response to his Complaint and Motion to Facilitate §216(b) Notice.

### D. Defendants Properly Conferred Prior To Filing Their Motion To Compel Arbitration.

Plaintiff contends that Defendants did not "properly confer with Plaintiff's counsel regarding the Motion to Compel before spending the time preparing it." (Plaintiff's Response to Defendant's Motion for Attorneys' Fees, page 2.) This argument is similarly unavailing. Defendants are unaware of any case which evaluates or describes in any way whether the parties "properly" conferred. Accordingly, Plaintiff's claim that Defendants failed properly to confer is entirely unilateral and subjectively determined by Plaintiff to avoid an award of fees.

Moreover, and more importantly, there is absolutely no basis for Plaintiff's claim that Defendants failed properly to confer.   As described above, defense counsel contacted Plaintiff's counsel and sought her concurrence in submission of this case to arbitration, consistent with the Arbitration Agreement. On June 10, 2005, defense counsel wrote to Plaintiff's counsel, asking whether Plaintiff consented to arbitration.  (See Exhibit "C" attached to the Windholz Declaration).  Defendants requested a response by June 13, 2005.  Plaintiff failed to respond by that date.  On June 16, defense counsel spoke with Plaintiff's counsel to inquire about their response.  At that time, Plaintiff's counsel indicated that they could not state what position Plaintiff intended to take with regard to the motion to compel arbitration.  As a result, on June 20, 2005, defense counsel filed a Motion to Compel Arbitration.

Plaintiff's counsel claims that Defendants provided insufficient time (three days) for her to consider whether to oppose the motion to compel arbitration. Plaintiff's counsel explains that she was on a maternity leave at the time and defense counsel should have been aware that she would be unable to provide a response within the time specified.  Defendants respectfully submit that Plaintiff's counsel's maternity leave does not excuse Plaintiff's failure to comply with the terms of the arbitration agreement he signed.  Furthermore, Plaintiff's counsel commenced this action only days before she began her maternity leave, and obviously should have known that, at a minimum, a responsive pleading would be filed before she returned from her leave.  Plaintiff's counsel brought this case as a national class action.  Simultaneously with the filing of the Complaint, Plaintiff filed a Motion to Facilitate §216(b) Notice.  Plaintiff's counsel should not be permitted simply to commence an action with such significant potential consequences, and then expect that her failure to monitor the case will be excused because of her

maternity leave.  Plaintiff's counsel could have and should have directed that another attorney in her office assume responsibility for this case in her absence.

**POINT II**

**PLAINTIFF WAS REQUIRED TO CONFER BEFORE FILING HIS MOTION TO FACILITATE §216(b) NOTICE.**

Local Rule 7.1(a)(2) provides that: "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue. Counsel's failure to comply with the Rule 7.1(a)(2) warrants sanctions." See Converse, Inc. v. Reebok International Ltd., 328 F. Supp.2d 166 (D. Mass. 2004) (sanctions ordered in the amount of $15,000.00). The fact that the party seeking sanctions did not suffer any prejudice is irrelevant. Id. at 170. As the Court in Converse stated: "[t]he purpose of Rule 7.1 is to conserve judicial resources by encouraging parties to narrow the contours of disagreement before bringing their dispute to the courts. Rule 7.1 does not have a 'no harm, no foul' escape clause." 328 F.Supp.2d at 170.

In the instant case, Plaintiff indisputably failed to meet and confer with Defendants prior to filing the Motion to Facilitate.[1] Defendants need not make any additional showing for the Court to impose sanctions. Notwithstanding the foregoing, Defendants submit that if Plaintiff had conferred prior to filing the Motion to Facilitate §216(b) Notice, he could have avoided filing the motion and burdening this Court. Defendants would have reminded Plaintiff of his agreement to arbitrate all claims arising from his employment and would have suggested that Plaintiff refrain from filing the motion until after agreement was reached, or an

---

[1] Defendants respectfully submit that the questions of sanctions based on Plaintiff's failure to confer can only be within the Court's jurisdiction since it does not even involve the parties' arbitration agreement.

-10-

order was entered, as to arbitration of Plaintiff's claims. Accordingly, Defendants are entitled to sanctions for Plaintiff's failure to comply with Rule 7.1(a)(2).

In his Motion to Dismiss, Plaintiff suggests that Defendants' request for sanctions based on Plaintiff's failure to confer on his Motion to Facilitate §216(b) Notice should be denied because the motion was filed before Defendants' counsel entered an appearance in the case. Plaintiff's counsel's argument against an award of sanctions attempts to create the erroneous impression that she was unaware who she could confer with regarding the motion.  This argument is grossly misleading to the Court.  Plaintiff's counsel neglects to advise the Court that she simultaneously filed and served a courtesy copy of the Complaint and Motion to Facilitate §216(b) Notice upon Defendants' counsel.  Consequently, Plaintiff's counsel's "explanation" for why she failed to confer regarding the motion to facilitate is nothing more than an after the fact manufactured attempt to excuse her noncompliance with court rules and fees should be awarded for Plaintiff's failure to confer.

## CONCLUSION

Accordingly, Defendants respectfully request that sanctions be awarded against Plaintiff for his failure to confer on the Motion to Facilitate §216(b) Notice and that Defendants' request for fees and costs associated with the filing of the motion to compel arbitration be granted.

Respectfully submitted,

MORTON'S RESTAURANT GROUP, INC.
AND MORTON'S OF CHICAGO INC.

By their attorneys,

/s/ David Kerman
David Kerman (BBO #269370)
JACKSON LEWIS LLP
75 Park Plaza
Boston, Massachusetts 02116
(617) 367-0025; (617) 367-2155 (fax)

Elise M. Bloom, admitted *pro hac vice*
Diane Windholz, admitted *pro hac vice*
JACKSON LEWIS LLP
59 Maiden Lane
New York, New York 10038-4502
(212) 545-4000

Dated: October 11, 2005

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 04-20554-CIV-UNGARO-BENAGES

EHAB IBRAHIM, MOSTAQUE KHAN
ANTHONY G. FASULO, et alt.,
     Plaintiff,

vs.

MORTON'S RESTAURANT GROUP, INC.,
MORTON'S OF CHICAGO, INC., et alt.,
     Defendants.

_____/

FILED by _____ D.C.
DKTG

MAR 1 6 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### ORDER AFFIRMING THE MAGISTRATE JUDGE'S REPORT AND GRANTING IN PART DEFENDANT'S MOTION FOR ATTORNEYS' FEES

THIS CAUSE is before the Court upon Defendants Morton Restaurant Group, INC. and

Morton's of Chicago, INC.'s (collectively referred as "Defendants") Motion for Attorneys' Fee

("Motion"), filed July 12, 2004. [DE #25]

THE MATTER was referred to the Honorable Stephen T. Brown, United States

Magistrate Judge. A Report and Recommendation dated January 27, 2005 was filed concluding

that the petition be granted in part. [DE #40] Plaintiffs Ehab Ibrahim, Mostaque Khan and

Anthony Fasulo (collectively referred as "Plaintiffs"), filed Objections ("Objections") to the

Report and, subsequently, Plaintiffs filed their Response ("Response") to Plaintiffs' Objections.

[DE #41, 42].

THIS COURT has made a *de novo* review of the entire file and record herein, and is

otherwise fully advised in the premises. The matter is ripe for disposition.

#### Factual Background

On March 9, 2004, Plaintiffs filed this action pursuant to the Fair Labor Standards Act, 29

U.S.C. § 201 *et seq* ,("FLSA"). At that time, Plaintiffs were waiters employed by Defendants, a



chain of restaurants, who claimed that they were entitled to overtime and owed monetary compensation for their professional services. On June 10, 2004 the Court entered an Order granting the Defendants' Motion to Compel Arbitration [DE #23] The Court found that the parties were bound by a valid and enforceable Arbitration Agreement, which includes a provision for the assessment of attorneys' fees in case a party has to litigate the entitlement to arbitration and prevails on this claim. The Magistrate Judge's Report and Recommendation concluded that Defendants should recover attorneys' fees and costs from Plaintiffs. Plaintiffs contest the Magistrate Judge's recommendation. Therefore, the issue before the Court is the entitlement of attorneys' fees and costs

## Legal Standard

The Federal Arbitration Act ("FAA") was enacted in 1925, 43 Stat. 883, and then reenacted and codified in 1947 as Title 9 of the United States Code. It has not been amended since the enactment of Title VII in 1964 The Supreme Court explained that its "purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA broadly provides that a written provision in "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract     shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Employment contracts similar as the one at issue in the present case are covered by the Act. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). In the case at bar, the Arbitration Agreement contains a clause awarding

2

attorneys' fees as follows:

### 4. Attorneys' Fees to Compel Arbitration

If any party is required to file a lawsuit to compel arbitration pursuant to this Policy, or defend against a lawsuit filed in court contrary to this Policy's mandatary arbitration provision, such party, if successful, shall be entitled to recover his, her or its reasonable costs and attorneys' fees incurred in such and action, including costs and attorneys' fees incurred in any appeal.

Defendants' Motion to Compel Arbitration at Ex. A, at ¶ 4, 5 ("Arbitration Agreement"). The Arbitration Agreement further provides "this Policy shall be governed by and shall be interpreted in accordance with the laws of the State of Florida." *Id.* at ¶ 6, 5. Additionally, "[t]he law is well settled in Florida . . . that matters bearing on the validity and interpretation of a contract are governed by the law of the state where the contract was made." *In re Sure-Snap Corp.*, 983 F 2d 1015, 1018 (11th Cir 1993). Also, it is well settled in Florida that "attorney's fees cannot be imposed in any cause unless provided for by contract or statute." *Keys Lobster, Inc. v. Ocean Divers, Inc.*, 468 So. 2d 360, 362 (Fla. 3rd DCA 1985). Finally, any fees to be awarded must comply with the Eleventh Circuit's guidelines that require, "[a] reasonable hourly rate [that] is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

### Analysis

Plaintiffs raise three objections to the Magistrate Judge's Report and Recommendation. First, Plaintiffs argue that no fees should be assessed in this case. Second, Plaintiffs state that if fees are awarded, Defendants are entitled to nothing for the preparation of the motion for

3

attorneys' fees. Third, Plaintiffs contest the hourly rate at which the Magistrate Judge awarded attorneys' fees. The Court will address Plaintiffs' arguments separately commencing with their contention that Defendants are not entitled to attorneys' fees.

### 1. Entitlement to Attorneys' Fees

In their Objections, Plaintiffs do not challenge the validity of the Arbitration Agreement and do not cite case law to support their contention that the attorneys' fee clause is not applicable to the present case. Plaintiffs argue that "the facts in this case militate against an award of attorney's fees in this action" Plaintiffs advance two reasons: (1) that since the year 2000, the Defendants have lost two arbitrations regarding their pay policies; and, (2) that a "change in circumstances" motivated Plaintiffs to file this lawsuit, as opposed to participating in arbitration as required by their agreements. Objections, at 5-7. However, the Magistrate Judge correctly concluded that the Court had found that the Arbitration Agreement was valid and Plaintiffs cite no legal reason why clause four, awarding attorneys' fees in litigation to compel arbitration, should be severed. Similarly, Plaintiffs do not explain what are the "change in circumstances" that would impede this Court from awarding attorneys' fees pursuant to the Arbitration Agreement. The FAA provides that agreements to arbitrate labor disputes are "enforceable to the same extent as other contracts." *Seus v. John Nuveen & Co.*, 146 F.3d 175, 178 (3d Cir. 1998) The enactment establishes a strong federal policy in favor of the resolution of disputes through arbitration and federal law presumptively favors the enforcement of arbitration agreements. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also Harris v. Green Tree Fin. Corp*, 183 F.3d 173, 178 (3rd Cir 1999) Therefore, the Court finds that under the terms of the Arbitration Agreement Plaintiffs are entitled to reasonable attorneys' fees.

4

## 2. Fees for Motion for Attorneys' Fees.

Plaintiffs' second argument is that Defendants should not be awarded a fee for the preparation of the motion for attorneys' fees. Plaintiffs argue that neither the Arbitration Agreement nor Florida law allow the award of fees for the time expended in preparing the motion for attorneys' fees. *See* Objections, at 2. The undersigned disagrees with this contention.

The Arbitration Agreement is silent with respect to this matter. Regarding Florida law, the Florida Supreme Court in *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 833 (Fla. 1993), held that while attorney's fees incurred for litigating the issue of entitlement to attorney's fees are normally recoverable, fees incurred for litigating the amount of attorney's fees cannot always be granted. Also, in *Palma* the Florida Supreme Court noted the contrary federal court practice of allowing recovery of attorney's fees for litigating both entitlement and amount issues, and it distinguished that practice based on different statutory purposes. The Florida Supreme Court explained that the purpose underlying most federal statutory fee authorizations is "to encourage attorneys to represent indigent clients," and allowing recovery for litigating the amount of fees comports with that purpose. *Id.* In contrast, the Florida statute involved in *Palma*, Fla. Stat § 627.428(2)(1983),[1] regulated insurance policy claims and had the purpose of "[discouraging] the contesting of valid claims . . . and to reimburse successful insureds for their attorney's fees," *Id.* The Florida Supreme Court concluded in *Palma* that the statute's purpose would not be furthered by permitting the award of attorney's fees incurred in litigating the amount due. *Id.* In *McMahan v. Toto*, 311 F.3d 1077 (11th Cir. 2002), this Circuit analyzed the holding

---

[1]Fla. Stat. § 627.428(2) (1983) mandated that no attorney's fees were allowed in suits based on claims arising under life insurance policies or annuity contracts "if such suit was commenced prior to expiration of 60 days after proof of the claim was duly filed with the insurer."

in *Palma* and stated that "[t]he Florida Supreme Court has explained that whether attorney's fees should be awarded for litigating the amount due depends on the purpose of the statute under which the fees are sought . . ." *McMahan*, 311 F.3d at 1086. Thus, in light of the Eleventh Circuit analysis of *Palma*, if a statute's intent is to promote the representation of the poor, attorneys would be permitted to recoup fees for litigating the amount of fees. In the instant case Plaintiffs filed suit seeking relief, including reasonable attorneys' fees and costs, under the FLSA. The purpose of the FLSA attorney fees provision is "to insure effective access to the judicial process by providing attorney fees for prevailing [parties] with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994); *see also Citibank Fed. Sav. Bank v. Sandel*, 766 So. 2d 302, 303 (Fla. 4th DCA 2000) (holding the award of fees on fees because Federal statute provided for it and it was not contrary to Florida law). Additionally, by operation of Fla. Stat. § 57.105(7) (2004), Florida creates a mutuality of obligation in contracts that contain provisions for attorneys' fees. The statute reads:"If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract . . ." § 57.105(7) This "[s]tatute was enacted in order to create mutuality of the attorney fee remedy in contract cases." *In re Maestrelli*, 172 B.R. 368, 370-71 (M.D. Fla. 1994) Accordingly, the undersigned finds that in the instant case the Arbitration Agreement entitles defendants to fees incurred for both the motion to compel arbitration and the motion for attorneys' fees.

### 3. Computation of Attorneys' Fees

Finally, in their third objection, Plaintiffs state that Defendants did not submit evidence

6

sufficient to support their claim for $2,656.50, the amount that the Magistrate Judge concluded was appropriate under the circumstances.[2] Specifically, Plaintiffs contend that the Magistrate Judge erred in recommending that the hourly fees for counsel Patrick Gerald DeBlasio III ("DeBlasio") be set at $275.00 per hour and that the hourly fee for Andrew A Seenath ("Seenath") be set at $150.00 per hour.

The undersigned has carefully reviewed the record and disagrees with Plaintiffs' arguments. The Court finds that the Magistrate Judge correctly followed the law set out by the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and the Eleventh Circuit in *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir.1988), and *Duckworth v. Whisenant*, 97 F.3d 1393 (11th Cir. 1996). The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This 'lodestar' may then be adjusted for the results obtained. *Id.* at 435-37. Although a district court has wide discretion in performing these calculations, *Id.* at 437, "[t]he court's order on attorney's fees must allow meaningful review--the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman v. Housing Auth.*, 836 F.2d 1292, 1302 (11th Cir.1988).

## A. Reasonable Hourly Rate

Thus, the first step is to ascertain a rate to charge for the attorney's representation. DeBlasio requested $315 per hour. Plaintiffs protest on the basis that Defendants provided the

---

[2]Plaintiffs submitted documentation supporting a claim for $8,257.80. *See* Motion at Ex. G, at, 2.

7

court with only one affidavit of Stanley Kiszkiel, an attorney familiar with FLSA litigation, "who stated that [$275.00] was the maximum amount that should be awarded." Objections, at 7. The Eleventh Circuit explained that "[a] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299. Contrary to Plaintiffs' submission, this circuit has recognized that a movant may meet his burden by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates. *Id.* at 1299. Additionally, while the Court is cognizant that some opinion evidence may be accorded less weight due to differences such as the affiant's type of casework or experience, Plaintiffs' attack upon the affidavit is unpersuasive. Based upon his experience in FLSA litigation, Stanley Kiszkiel estimated that the maximum amount that should be awarded to DeBlasio is $275.00 per hour.[3]

The Magistrate Judge also had ample opportunity to assess the quality of the lawyering for both Plaintiff and Defendants in this case. The Magistrate Judge described DeBlasio as an experienced practitioner who ably represented his client. *See* Report, at 7. Therefore, the undersigned agrees that Defendants clearly met their burden in providing evidence that $275.00 per hour is a reasonable fee for DeBlasio. Also, with regard to attorney Seenath, the Court agrees with the Magistrate Judge that an award of $150.00 per hour is reasonable.[4] Finally, the Magistrate Judge correctly concluded that the New York attorneys for Defendants should be

_____

[3]Patrick Gerald DeBlasio III was admitted to practice in Florida in 1990 and Andrew A. Seenath was admitted in 1995.

[4]In their Response, Defendants have submitted affidavits by DeBlasio, Seenath, David E. Block, Esq., and Jennifer M. Taylor, Esq. Plaintiffs did not submit any evidence pertaining to the matter of attorneys' fees.

8

awarded nothing, due to lack of information about their experience, backgrounds and prevailing rates in that market. In sum, the Court agrees with all of the Magistrate Judge's conclusions regarding the hourly rates.

## B. Reasonable Hours Expended

The second step requires a determination as to the number of reasonable hours expended by counsel. Plaintiffs claim 0.7 hours spent by DeBlasio and 16.4 hours spent by Seenath. The Magistrate Judge concluded that Defendants had submitted time sheets describing in detail the work performed by DeBlasio and Seenath, in compliance with the Eleventh Circuit requirement set forth in *Duckworth*, 97 F.3d at 1397. The undersigned has reviewed the record and concurs with the Magistrate Judge's finding. *See* Motion Ex. G, at 2. Consequently, it is hereby

ORDERED and ADJUDGED that the Magistrate Judge's Report and Recommendation is AFFIRMED. It is also

GRANTED AND ADJUDGED that Defendants' Motion for Attorneys' Fees is GRANTED IN PART and the Court AWARDS Defendants $2,656.50 in attorneys' fees.

DONE AND ORDERED in Chambers at Miami, Florida, this ⁄5 day of March, 2005.

URSULA UNGARO-BENAGES
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record.

9