**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARK JOHNSON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MORTON'S RESTAURANT GROUP, INC. and MORTON'S OF CHICAGO, INC.,<br><br>Defendants. | Case Nos. 05-11058-MLW &<br>07-11808-MLW |

**JOINT MOTION TO CONFIRM ARBITRATION AWARD APPROVING CLASS ACTION SETTLEMENT, APPROVE STOCK ISSUANCE UNDER SECTION 3(a)(10) OF SECURITIES ACT OF 1933, AND SCHEDULE CONFIRMATION HEARING FOR LATE JANUARY**[1]

On May 20, 2005, Plaintiff Mark Johnson, a former server at the Boston Morton's restaurant, filed an action in this Court alleging that Defendants had violated the "tip credit" provision of the FLSA, 29 U.S.C. § 203(m), and therefore were required to pay the full minimum wage to all employees nationwide for whom it had taken the "tip credit" against the minimum wage. Defendants moved to compel arbitration (Case No. 05-11058-MLW, Dkt. # 16) pursuant to a mandatory arbitration agreement, and by agreement, the lawsuit was dismissed without

[1] The parties respectfully request that the Court schedule a hearing on this motion, if possible during the last week of January 2010. Pursuant to the timeline in the parties' settlement agreement, the stock portion of the settlement is to be issued within 30 days of court confirmation of the arbitrator's order approving the settlement, and the payments from the cash portion of the settlement are expected to begin in March 2010. Thus, class members have been informed that they may expect to receive the stock portion of their settlement shares by March 2010 and the beginning of their cash payments shortly thereafter. If the Court were to schedule a hearing on this joint unopposed motion for the last week of January 2010, the parties would be able to implement these settlement distributions to class members on this anticipated timeline.

prejudice and the claims raised here were filed as a class arbitration before the American Arbitration Association, AAA Case No. 11 160 01513 05 ("Johnson Arbitration"). Roberta Golick, a prominent labor and employment arbitrator, was appointed arbitrator in that matter.

On June 27, 2007, Arbitrator Golick issued a national class certification award, which Defendants moved to vacate (Case No. 07-11808, Dkt. # 2). This Court denied the motion to vacate and confirmed the class certification award on November 25, 2008 (Case No. 07-11808, Dkt. # 25).

After four and a half years of litigation, the parties have now reached a settlement of this class action for a total of $12,000,000, to be distributed over a negotiated timeline, half in cash and half in Preferred Stock. Pursuant to the AAA Supplementary Rules for Class Arbitration, the parties obtained approval of the class action settlement from Arbitrator Golick. The parties now jointly request that the Court confirm this award, so that the settlement may be implemented and Plaintiffs and class members receive their shares of the settlement.

Attached to this motion as Exhibit 1 is a copy of Arbitrator Golick's Final Award of Dismissal, approving the class action settlement. As described in the Order, Arbitrator Golick gave her preliminary approval of the settlement on August 5, 2009, and authorized that notices be sent to the class informing them of the settlement and their right to claim their shares of the settlement, or opt-out of the settlement or object to the terms of the settlement. Attached here as Exhibit 2 is a copy of Claimants' Motion for Preliminary Approval of the Settlement, which has the Settlement Agreement attached to it (as Exhibit B). Attached here as Exhibit 3 is a letter from Claimants' Counsel to the Arbitrator describing the results of the notice process. And attached as Exhibit 4 is a declaration from the Settlement Administrator, Garden City Group, describing the notice process. Exhibit 4 has a sample Notice Packet attached to it (as Exhibit A),

which contains the Notice of Class Action Settlement, Claim Form, and Opt Out Statement mailed to class members.

Following the notice period, Arbitrator Golick held a live final approval fairness hearing on December 8, 2009. At the hearing, Arbitrator Golick approved the settlement as fair, reasonable, adequate, and in the best interests of the class. The parties hereby request that this Court confirm the Arbitrator's award approving the settlement.

The law is well established that the Federal Arbitration Act ("FAA") presumes that arbitration awards will be confirmed, and "federal courts should defer to an arbitrator's decision whenever possible." B.L. Harbert Int'l, LLC v. Hercules Steel Co., 441 F.3d 905, 909 (11th Cir. 2006). "[J]udicial review of an arbitration award is among the narrowest known to the law." Gupta v. Cisco Sys., Inc., 274 F.3d 1, 3 (1st Cir. 2001) (internal quotation marks omitted); U.S. Energy Corp. v. Nukem, Inc., 400 F.3d 822, 830 (10th Cir. 2005) (accord).[2] Since judicial review is both "extremely narrow and exceedingly deferential," Wonderland Greyhound Park, Inc. v. Autotote Sys., Inc., 274 F.3d 34, 35 (1st Cir. 2002) (internal quotation marks omitted), "arbitral awards are nearly impervious to judicial oversight," Bull HN Info. Sys. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000) (internal quotation marks omitted).

In any event, the settlement reached by the parties in this case is eminently fair. Notice was sent to more than 5,000 class members, and no objections were filed to the settlement (other than a procedural objection by four class members who later opted out of the class). Here, the request for confirmation of the Arbitrator's award is joint. Given the extremely narrow standard

---

[2] "[C]ourts 'do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.'" McCarthy v. Citigroup Global Markets Inc., 463 F.3d 87, 93-94 (1st Cir. 2006) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)).

of review of arbitration awards, and the fact that this request for confirmation is made by both parties, the Court should now approve the Arbitrator's award approving the class action settlement and dismiss this case with prejudice.

A more detailed description of the case proceedings and settlement is set forth below.

## I. FACTUAL BACKGROUND

1. On November 7, 2003, Kasey Esposito and Samantha Shewalter, former employees of Morton's Boston restaurant, individually and on behalf of a class of similarly situated persons filed an arbitration with the American Arbitration Association ("AAA"), AAA Case No. 11 160 02864 03 ("Esposito Arbitration") against Morton's of Chicago/Boston, Inc. By agreement, this case was consolidated with the Johnson case for settlement purposes.

2. On May 20, 2005, Mark Johnson, a former server at Morton's Boston restaurant, individually and on behalf of a class of persons similarly situated, filed in this Court (Case No. 05-11058-MLW) an action against Morton's Restaurant Group, Inc. and Morton's of Chicago, Inc. in the United States District Court for the District of Massachusetts ("Johnson Lawsuit"). By agreement, the Johnson Lawsuit was dismissed, and on July 5, 2005, Johnson filed a class arbitration before AAA, AAA Case No. 11 160 01513 05 ("Johnson Arbitration"). On January 13, 2006, the demand in the Johnson Arbitration was amended to add Kristin Aires, another former server who worked in Morton's Phoenix and Portland restaurants.

3. In the Johnson Lawsuit, the Johnson Arbitration, and the Esposito Arbitration (i.e., the actions consolidated for settlement purposes), Plaintiffs alleged, on behalf of themselves and on behalf of a class of similarly situated current and former employees across the United States, that Morton's violated federal and state laws regarding the payment of minimum wages, including claims that all employees in the United States for whom Morton's claimed a tip credit are owed restitution for tips and service charges that they were not permitted to retain, the

portion of the minimum wage they did not receive, liquidated damages, penalties, interest, attorneys' fees and costs, and any other relief to which they may be entitled.

4. On June 27, 2007, the Arbitrator in the Johnson Arbitration certified a nationwide class of individuals for whom Morton's had claimed a "tip credit" and thereby paid less than the applicable minimum wage since May 19, 2002.

5. Morton's subsequently filed a Motion to Vacate the Class Determination Award in this Court (Case No. 07-11808-MLW). On November 25, 2008, Morton's Motion to Vacate the Arbitrator's Class Determination Award was denied.

6. In early 2009, the Parties began to engage in settlement negotiations. After over four years of investigation, litigation, discussion, discovery, and a concerted effort to negotiate a settlement, which included extensive exchanges of documents and other information and a mediation session, the parties reached a Settlement Agreement in July 2009. A true and correct copy of the Settlement Agreement is attached as Exhibit B to Claimants' Motion for Preliminary Approval, which is attached hereto as Exhibit 2.

7. Pursuant to the Settlement Agreement, the parties agreed to the certification of a settlement class ("Settlement Class") comprised of the individuals contained within the class that the Arbitrator in the Johnson Arbitration certified on June 27, 2007 with some modifications. (See Settlement Agreement § 3.1).

8. Under the terms of the Settlement Agreement, Morton's has agreed to pay a maximum amount of twelve million dollars ($12,000,000.00) ("the Settlement Amount")—six million dollars ($6,000,000.00) of which will be cash ("Cash Portion of the Settlement Amount") and six million dollars ($6,000,000.00) of which will be Preferred Stock to be issued by Morton's ("Equity Portion of Settlement Amount"). (Id. at § 5.1). The Settlement Amount shall

cover, resolve, and fully satisfy any and all amounts owed to Plaintiffs, the Settlement Class, and Class Counsel in settlement of all claims asserted in the Litigation, or that could have been asserted in the Litigation, by Plaintiffs, on behalf of themselves and the Settlement Class they represent. (Id.)

9. On August 5, 2009, Arbitrator Roberta Golick preliminarily approved (a) the Parties' settlement as being fair, reasonable, adequate, and in the bests interests of the Class Representatives and the class pursuant to Rule 8 of AAA's Supplementary Rules for Class Arbitration and consistent with Rule 23 of the Federal Rules of Civil Procedure and (b) the form and content of the Notice of Class Action Settlement, Opt Out Statement, and Claim Form ("Settlement Notice"). Arbitrator Golick also found that Section 216(b) of the FLSA's "opt-in" procedure has been waived by the Parties' agreement to submit their disputes to arbitration before AAA. Further, Arbitrator Golick found that the mailing and distribution of the Settlement Notice constituted the best notice practicable under the circumstances, and constituted valid, due, and sufficient notice to all persons in the Settlement Class. Arbitrator Golick then directed that notice be sent to all persons in the Settlement Class advising them of the pendency of the action and the settlement as well as their opportunity to object to the settlement and to opt-out within 90 days of the mailing of the notice.

10. On September 3, 2009, the Claims Administrator sent the Settlement Notice to 5,457 Settlement Class Members. A true and correct copy of the Settlement Notice is attached as Exhibit A to the declaration from the Settlement Administrator, Garden City Group, which is attached hereto as Exhibit 4. The deadline to file claims or opt out of the settlement was December 2, 2009. As of December 16, 2009, 95 potential class members had filed timely and potentially valid requests for exclusion from the settlement, and 2,383 Settlement Class Members

had filed Claim Forms ("Qualified Settlement Class Members"). (Blair Decl. (Ex. 4) ¶¶ 8-9). One procedural objection to the settlement was filed by four class members who later excluded themselves from the class. (Id. ¶ 11). Thus, no class members objected in any substantive way to the terms of the settlement.

11. On December 8, 2009, the Arbitrator held a Final Fairness Hearing for the purposes of reviewing the settlement, evaluating any objections by class members, and determining whether to enter an order and award granting final arbitrator approval of the Settlement as fair, reasonable, and adequate, and approving the Claim Form to be signed by class members as fair under the FLSA. (Final Award – Approval of Settlement (Ex. 1) ¶ 25).

12. On December 22, 2009, the Arbitrator issued a Final Award – Approving Settlement, finding that the Settlement is "fair, adequate, reasonable, and in the best interests of the Claimants and the class pursuant to Rule 8 of AAA's Supplementary Rules for Class Arbitrations and consistent with Rule 23 of the Federal Rules of Civil Procedure," and finding that the release of FLSA claims by Plaintiffs and the Settlement Class was fair. (Id. ¶ 25).

## II. ARGUMENT

13. In order to effectuate the settlement, the Parties have agreed to seek and obtain court confirmation of the Arbitrator's Final Award – Approval of Settlement and seek and obtain court approval that the terms and conditions of Morton's issuance of Preferred Stock under the terms of the Settlement Agreement is fair under Section 3(a)(10) of the Securities Act of 1933.

14. Because the Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Class Representatives and the class, this Court should enter an order confirming the Arbitrator's Final Award – Approval of Settlement, approving of the settlement, and approving of the terms and conditions of Morton's issuance of Preferred Stock to class

counsel, Class Representatives, and Qualified Settlement Class Members as fair under Section 3(a)(10) of the Securities Act of 1933.

**A. This Court Should Confirm the Arbitrator's Award.**

15. The confirmation of arbitration awards is governed by the Federal Arbitration Act ("FAA"). Section 9 of this Act provides:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award. If no Court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. . . .

9 U.S.C. § 9. Proceedings under this provision are summary in nature. Cullen v. Paine, Webber, Jackson & Curtis, Inc., 863 F.2d 851, 854 (11th Cir. 1989); Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986). As the First Circuit Court of Appeals has recognized, "[T]he district court's review of arbitral awards must be 'extremely narrow and exceedingly deferential.'" Umass Mem'l Med. Ctr., Inc. v. United Food and Commercial Workers Union, 527 F.3d 1, 5 (1st Cir. 2008) (quoting Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 330 (1st Cir. 2000)). "We have found arbitral awards 'nearly impervious to judicial oversight." Id.

16. As set forth above, the Parties agreed to the terms of the Settlement Agreement, which the Arbitrator finally approved, after the best notice practicable was sent to the class in accordance with Rule 8 of AAA's Supplementary Rules for Class Arbitrations and Rule 23 of the Federal Rules of Civil Procedure. There were no substantive objections to the terms of the settlement by any class members, and because of the high level of participation by class members in the settlement, there will be no reversion of any of the Settlement Amount to Morton's. Rather, the entire amount will be distributed in accordance with the terms of the

Settlement Agreement. Accordingly, the Arbitrator's Final Award – Approval of Settlement should be confirmed.

**B. This Court Should Approve the Settlement as Fair.**

17. As found by the Arbitrator, the settlement of the Plaintiffs and the Class Members' claims is fair and reasonable, and the settlement should now be approved by the Court. First, settlement negotiations between the Parties were extensive and occurred at arms' length and included a mediation session before JAMS mediator Michael Loeb on March 8, 2009. Indeed, after over four years of investigation, litigation, discussion, discovery, and a concerted effort to negotiate a settlement, which included extensive exchanges of documents and other information, the parties reached a Settlement Agreement.

18. Second, a genuine, bona fide legal dispute exists between the parties regarding whether managers may participate in the tip out at Defendants' restaurants, thereby making it uncertain whether Plaintiffs will be successful in the event litigation continues.

19. Third, the settlement provides for a significant recovery to each Settlement Class member and is fair and reasonable when balanced against the risks and delay inherent in further litigation relating to damages, as well as the risk that class members would not receive any recovery in the event that the class *prevailed* on all of its claims due to Morton's current financial situation.

20. Fourth, the Settlement avoids the high costs to both parties of prosecuting and defending these cases. Settling now substantially reduces these costs and affords the Class significant and timely relief, while avoiding significant litigation risks. Absent settlement, Plaintiffs would have to establish liability and carry the burden of proof on a variety of complicated issues, including damages and penalties. Thus, even if the Class were to proceed to arbitration and prevail, a final resolution may not occur for several more months, and even years,

absent a settlement. By contrast, the Settlement affords the Settlement Class timely and substantial relief.

21. For these reasons, the Parties request that the Court issue an order finding the settlement to be a fair and reasonable settlement of a bona fide dispute.

**C. The Terms and Conditions of Morton's Issuance of Preferred Stock Under the Settlement Agreement Are Fair Under Section 3(a)(10) of the Securities Act of 1933.**

22. Section 3(a)(10) of the Securities Act of 1933 exempts from registration:

> [A]ny security which is issued in exchange for one or more bona fide outstanding securities, claims or property interests, or partly for cash, where the terms and conditions of such issuance and exchange are approved, after a hearing upon the fairness of such terms and conditions at which all persons to whom it is proposed to issue securities in such exchange shall have the right to appear, by any court, or by any official or agency of the United States, or by any State or Territorial banking or insurance commission or other governmental authority expressly authorized by law to grant such approval.

14 U.S.C. § 77(a)(10).

23. According to SEC Staff Legal Bulletin No. 3A (CF), the following conditions must be met before Morton's can rely on the section 3(a)(10) exemption with respect to the Preferred Stock it is issuing to Class Counsel, Plaintiffs, and Settlement Class Members pursuant to the Settlement Agreement:

> (1) a court or authorized governmental entity must approve the fairness of the terms and conditions of the exchange;
>
> (2) the reviewing court or authorized governmental entity must (a) find, before approving the transaction, that the terms and conditions of the exchange are fair to those to whom securities will be issued, and (b) be advised before the hearing that the issuer will rely upon the Section 3(a)(10) exemption based on the court's or authorized governmental entity's approval of the transaction;

(3) the court or authorized governmental entity must hold a hearing before approving the fairness of the terms and conditions of the transaction;

(4) a governmental entity (other than a court) must be open to everyone to whom securities would be issued in the proposed exchange;

(5) adequate notice of the hearing must be given to all those persons; and

(6) there cannot be any improper impediments to the appearance by those persons at the hearing.

24. In the instant case, the conditions listed above have, or will be, met. By virtue of this Motion, Morton's advises this Court that it intends to rely on the Section 3(a)(10) exemption based on this Court's approval of the transaction. Further, the Parties are requesting that a hearing be set in this Court that will be open to everyone to whom the Morton's Preferred Stock will be issued under the terms of the Settlement Agreement. Adequate notice will be provided to all individuals who are scheduled to receive Preferred Stock under the terms of the Settlement Agreement in a form that is substantially similar to the document attached hereto as Exhibit 5. There will not be any impediments to the appearance by those persons at the hearing.

25. Additionally, the terms and conditions of the issuance of the Preferred Stock in the Settlement are fair to those for whom the securities will be issued. As described above, in addition to a cash payment, the Settlement Agreement allows for the issuance of Preferred Stock as part of the consideration to be paid to Qualified Settlement Class Members and class counsel. Each Qualified Class Member will be receiving a settlement payment, half in stock and half in cash, that was calculated by taking the difference between the applicable minimum wage and the hourly wage that he or she was paid, subject to certain adjustments to account for certain unique employment situations and subject to a small reduction to account for the hours the Qualified Settlement Class Member worked in the Boardroom (and, thus, was compensated above the

minimum wage). Accordingly, each Qualified Settlement Class Members is eligible to receive a settlement payment that is worth, in Class Counsel's estimation, more than 100% of the back pay damages he or she could have received on their federal claims in the event they did not settle but rather proceeded to arbitrate their disputes, subject to a pro rata reduction because of the high level of participation in the settlement.

26. The Preferred Stock, which will have an aggregate liquidated preference of $6,000,000, will be issued within 30 days following court approval of such settlement and after two years from the date of its issuance may be converted into the Company's common stock. The Preferred Stock will be issued directly to each Qualified Settlement Class Member and to Class Counsel pursuant to Rule 3(a)(10) of the Securities Act so that it will be freely tradable upon issuance without any requirement to file a registration statement (subject to customary market standoff of no more than six months). Finally, Morton's will use its best efforts to ensure that the Preferred Stock will be listed on an exchange so that there will be a market for trading the Preferred Stock.

27. Moreover, the settlement is of fair value and was reached after fair dealing. As discussed, the underlying matter has been vigorously litigated by both parties, and the parties significantly differ on the merits of the claims and likelihood of success. The parties reached this agreement after arms-length negotiations that spanned several months, where Class Counsel engaged a financial expert to assist her in analyzing Morton's financial position, ability to pay a settlement, and stock-related issues. Morton's financial condition is a matter of public record and Class Counsel has had access to the Morton's recent Form 10K. See In re Cell Pathways, Inc., Securities Litigation II, No. 01-CV-1189, 2002 WL 31528573, at *13 (E.D. Pa. Sept. 23, 2002) (finding securities issued as part of settlement exempt and fair, and taking into account

defendant's ability to pay any greater judgment then settlement amount, disparity between number of potential class members receiving notice and number of objections, as well as risk of establishing liability in fairness determination).

28. Courts have routinely found similar settlements as fair and exempt under Section 3(a)(10). See In re Trade Partners, Inc. Investor Litigation, No. 1:07-md-1846, 2008 WL 4911797, at *2-3 (W.D. Mich. Nov. 13, 2008) (finding conditions of settlement fair within meaning of Section 3(a)(10) where, among other things, defendants had viable defenses to plaintiffs' claim and defendant's financial condition a matter of public record); Krangel v. Golden Rule Resources, Ltd., 194 F.R.D. 501, 512 (E.D. Pa. 2000) (finding settlement as fair to settlement class under Rule 23 and accordingly holds that stock issued in connection with settlement fair and exempt form registration under Section 3(a)(10)); Tripath Technology, Inc., Securities Litigation, No. C 04 4681 SBA, 2006 WL 1009228, at *2 (N.D. Cal. April 18, 2006) (approving settlement as fair, reasonable and adequate, and the settlement shares exempted securities pursuant to Section 3(a)(10)); In re Rite Aid Corporation Securities Litigation, No. 2:99-cv-134 SD, MDL 1360, 2001 WL 35963382, at *2 (E.D. Pa. Aug. 16, 2001) (finding securities exchanged for bona fide claims were exempt pursuant to Section 3(a)(10) where parties had right to appear at fairness hearing and securities were unrestricted and freely tradable). This Court should do the same.

WHEREFORE, the Parties respectfully request that this Court enter an Order confirming the Final Award – Approval of Settlement in the matters of Mark Johnson et al. and Morton's Restaurant Group, Inc. et al., AAA Case No. 11 160 01513 05 and Kasey Esposito et al. and Morton's of Chicago/Boston, Inc., AAA Case No. 11 160 02864 03, approving of the settlement

as fair, and approving of the terms and conditions of the issuance of stock pursuant to the Parties' settlement as fair in accordance with Section 3(a)(10) of the Securities Act of 1933.

Dated: December 22, 2009

Respectfully Submitted,

s/ __Shannon Liss-Riordan__________________
Shannon Liss-Riordan, BBO # 640716
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
Telephone: (617) 994-5800
Facsimile: (617) 994-5801

COUNSEL FOR PLAINTIFFS

s/_ Michael J. Gray________________________
Michael J. Gray, ARDC# 6210880
*Admitted Pro Hac Vice*
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
Telephone: (312) 782-3939
Facsimile: (312) 782-8585

COUNSEL FOR DEFENDANTS